ACCEPTED
14-15-00578-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
7/22/2015 3:45:09 PM
CHRISTOPHER PRINE
CLERK

**NUMBER 14-15-00578-CV**

**IN THE COURT OF APPEALS
FOR THE FOURTEENTH DISTRICT OF TEXAS AT HOUSTON**

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
7/22/2015 3:45:09 PM
CHRISTOPHER A. PRINE
Clerk

**In re MICHELIN N. AM., INC., Relator**

Original Proceeding from the 152nd Judicial District Court of Harris County, Texas, Honorable Robert Schaffer; Trial Court Cause No. 2014-57952

**SUPPLEMENTAL MANDAMUS RECORD**

Tim Riley
State Bar No. 16931300
RILEY LAW FIRM
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007
Telephone: (713) 646-1000
Facsimile: (800) 637-1955
tdr@txtrial.com

Michael Bourland
State Bar No. 24009912
WITT, MCGREGOR & BOURLAND, PLLC
8004 Woodway Drive, Suite 400
Waco, Texas 76712
Telephone: (254) 751-9133
Facsimile: (254) 751-9134
mbourland@wmbwaco.com

John Gsanger
State Bar No. 00786662
Scott Marshall
State Bar No. 24077207
THE EDWARDS LAW FIRM
802 N. Carancahua St., Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-7600
Facsimile: (361) 698-7614
jgsanger@edwardsfirm.com
smarshall@edwardsfirm.com

ORAL ARGUMENT WOULD NOT
LIKELY BENEFIT THE COURT

Attorneys for Robert Coleman, et al.,
Real Parties in Interest

# INDEX TO SUPPLEMENTAL MANDAMUS RECORD

1. SuppR 001-035    Original Petition in Intervention of Robert Coleman and Kimberly Coleman for Blayne Cook and Cameron Cook, 12-19-14

2. SuppR 036-126    Intervenors' Response to Michelin's Motion to Inspect the Failed Tire by Unknown Persons According to an Undisclosed Protocol and Request that Michelin Preserve and Document Evidence, 12-24-14

3. SuppR 127-181    Intervenors' Opposition to Defendant Michelin's Motion for Continuance of Hearing on Motion to Preserve Evidence, 1-23-15

4. SuppR 182-185    Bench Brief on Burden Shifting to Party Seeking Discovery if Resisting Party Proves Trade Secrecy (The Burden Never Shifted But Was Nevertheless Met), 3-16-15

5. SuppR 186-242    Michelin North America, Inc.'s Responses and Objections to Intervening Coleman's First Requests for Admission, Interrogatory, and Requests for Production to Defendant, Michelin North America, Inc., 1-16-15

Respectfully submitted,

THE EDWARDS LAW FIRM

BY: /s/ John Blaise Gsanger
John Blaise Gsanger
State Bar No. 00786662
Scott Marshall
State Bar No. 24077207
802 N. Carancahua St., Suite 1400
Corpus Christi, Texas 78401
Telephone: (361) 698-7600
Facsimile:  (361) 698-7614

Tim Riley
State Bar No. 16931300
Riley Law Firm
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007
Telephone: (713) 646-1000
Facsimile: (800) 637-1955

Michael Bourland
State Bar No. 24009912
Witt, McGregor & Bourland, PLLC
8004 Woodway Drive, Suite 400
Waco, Texas 76712
Telephone: (254) 751-9133
Facsimile: (254) 751-9134

**ATTORNEYS FOR REAL PARTIES IN INTEREST**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record as set forth below via e-service and/or facsimile or e-mail on this 22nd day of July 2015.

BY: /s/ John Blaise Gsanger
John Blaise Gsanger
State Bar No. 00786662

**Via Facsimile: (512) 472-0721**
Thomas M. Bullion III
Chris A. Blackerby
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, Texas 78701
Email: tbullion@germer-austin.com; cblackerby@germer-austin.com

**Via facsimile: (864) 232-2925**
Giles M. Schanen, Jr.
NELSON MULLINS RILEY & SCARBOROUGH, LLP
104 South Main Street, 9th Floor
Greenville, SC 29601
Email: giles.schanen@nelsonmullins.com

**Via Facsimile: (512) 482-5028**
Debora B. Alsup
THOMPSON & KNIGHT LLP
98 San Jacinto Blvd., Suite 1900
Austin, TX 78701-4238
Email: debora.alsup@tklaw.com

**Via Facsimile: (713) 523-4159**
Robert E. Ammons
Bennett A. Midlo
THE AMMONS LAW FIRM, LLP
3700 Montrose Boulevard
Houston, Texas 77006
Email: rob@ammonslaw.com; bennett@ammonslaw.com

# VERIFICATION

STATE OF TEXAS      §
                             §

COUNTY OF NUECES      §

Before me, the undersigned authority, on this day personally appeared John Gsanger, who after having been sworn by me, upon his oath deposed and said the following:

My name is John Gsanger and I am one of the attorneys for Robert Coleman, et al., Real Parties in Interest in this cause. I am of legal age and otherwise competent and authorized to give this affidavit. All documents included within this Electronic Record are true and correct copies of documents filed in and/or discovery served or hearing s conducted in the above-referenced proceeding and the related appellate proceedings.

Further affiant sayeth not.

_____
John Gsanger

Subscribed and sworn to before me on the 22nd day of July, 2015.

DAYNA DIERINGER
Notary Public
STATE OF TEXAS
My Comm. Exp 12-19-201?

_____
Notary Public in and for the
State of Texas

4

**NO. 2014-57952**

| | | |
|---|---|---|
| KOLLYE KILPATRICK, Individually as Heir at Law and Representative of the Estate of BEVERLY ANN KILPATRICK, Deceased; ERIC KILPATRICK; and KAREN KILPATRICK<br>    Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§<br>§ | IN THE DISTRICT COURT |
| AND | §<br>§ | |
| ROBERT DWAYNE COLEMAN, Individually, and KIMBERLY COLEMAN as Next Friend of BLAYNE MICHAEL COOK and CAMERON BAILEY COOK, minors,<br>    Intervening Cross-Claimant and Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| VS. | §<br>§ | HARRIS COUNTY, TEXAS |
| MICHELIN NORTH AMERICA, INC., BF GOODRICH in its assumed or common name, and ROBERT DWAYNE COLEMAN<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§ | 152nd JUDICIAL DISTRICT |

**ORIGINAL PETITION IN INTERVENTION OF ROBERT COLEMAN AND KIMBERLY COLEMAN FOR BLAYNE COOK AND CAMERON COOK**

COME NOW Intervenors, Robert Coleman individually and Kim Coleman for Blayne and Cameron Cook, minors, intervening in their capacity as claimants against Michelin North America, Inc. and BF Goodrich in its assumed or common name, and file their Original Petition in Intervention of Robert Coleman and Kimberly Coleman for Blayne Cook and Cameron Cook in this case, and for cause of action would show the Court the following:

**A. DISCOVERY CONTROL PLAN — LEVEL THREE**

Discovery in this case is requested to be conducted under a Level 3 discovery control plan pursuant to Tex. R. Civ. P. 190.4.

## B. PARTIES — PLAINTIFFS AND CROSS-CLAIMANTS

Intervening Cross-Claimant Robert Coleman is an individual who is a resident of Spring, Harris County, Texas.

Intervening Plaintiff Kim Coleman as Next Friend of Blayne Michael Cook and Cameron Bailey Cook is an individual who is the wife of Robert Coleman and mother of Blayne Michael Cook and Cameron Bailey Cook and is a resident of Spring, Harris County, Texas.

Intervening Plaintiff Blayne Cook is an individual who is the minor child of Robert and Kim Coleman and who is represented by his parents as his next friends and who is a resident of Spring, Harris County, Texas.

Intervening Plaintiff Cameron Cook is an individual who is the minor child of Robert and Kim Coleman and who is represented by his parents as his next friends and who is a resident of Spring, Harris County, Texas.

Robert Coleman, Kim Coleman, Blayne Cook, and Cameron Cook are referred to collectively as "the Coleman family."

Plaintiff Kollye Kilpatrick, Individually as Heir at Law and Representative of the Estate of Beverly Ann Kilpatrick, Deceased, is an individual who is a resident of Texas.

Plaintiff Eric Kilpatrick is an individual who is a resident of Texas.

Plaintiff Karen Kilpatrick is an individual who is a resident of Texas.

## C. PARTIES — DEFENDANTS

Defendant Michelin North America, Inc. ("Michelin") is a foreign corporation existing under the laws of New York with its principal place of business in South Carolina, and does business throughout the United States, including the State of Texas, for profit. Michelin has already been served and has filed an answer in this cause of action and has not contested jurisdiction.

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                                    2

SuppR 002

Defendant BF Goodrich in its assumed or common name is sued under Rule 28 of the Texas Rules of Civil Procedure and includes suit against any and all partnerships, unincorporated associations, private corporations, and individuals doing business under the assumed name "BF Goodrich" which is hereby sued in its partnership, assumed or common name in connection with researching, developing, designing, making, inspecting, selling, marketing, warranting, or any combination of these activities in connection with tires with the lettering "BF Goodrich" on the tire's sidewall. *See* Tex. R. Civ. P. 28. Service on Michelin North America, Inc. constitutes service on BF Goodrich in its assumed or common name.

BF Goodrich in its assumed or common name is referred to collectively with Michelin North America, Inc. as "Michelin."

Defendant Robert Coleman is an individual who is a resident of Spring, Harris County, Texas, who has been sued by Plaintiffs Kollye Kilpatrick, Individually as Heir at Law and Representative of the Estate of Beverly Ann Kilpatrick, Deceased, Eric Kilpatrick, and Karen Kilpatrick. Intervenors assert no claim against Defendant Robert Coleman, who has answered without contesting jurisdiction or venue.

### D. THE ORIGINAL CIVIL ACTION (NO. 2014-57952)

On October 3, 2014, Plaintiffs filed a petition suing Defendant Michelin for negligence and strict products liability and suing Defendant Robert Coleman for negligence. On November 14, 2014, Defendant Robert Coleman filed his answer. On December 8, 2014, Michelin filed its answer.

### E. VENUE AND JURISDICTION

The sale and warranting of the product at issue occurred in Harris County, Texas, and the sale and warranting of the product at issue is a substantial part of the events giving rise to the

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                                                                3

SuppR 003

product liability and breach of warranty claims set forth below.

Venue is proper in Harris County, Texas, pursuant to section 15.002(a)(1) and (2) of the Texas Civil Practice and Remedies Code because (1) a substantial part of the events giving rise to the claims occurred in Harris County and (2) Defendant Robert Coleman is a natural person who resided in Harris County at the time the cause of action accrued.

Harris County is the proper venue chosen and most convenient for Kollye Kilpatrick, the Estate of Beverly Ann Kilpatrick, Eric Kilpatrick, Karen Kilpatrick, Robert Coleman, Kim Coleman, Blayne Cook, and Cameron Cook and maintaining venue in Harris County will cause Michelin no hardship.

The venue facts alleged in Michelin's motion to transfer venue contained within its original answer are specifically denied as factually incorrect because the statement "MNA denies that defendant Robert Dwayne Coleman is a resident of Harris County" cannot be based on the best of Michelin's or its counsel's knowledge, information, and belief formed after reasonable inquiry as required by Texas Rule of Civil Procedure 13.

This Court has jurisdiction over this civil action because the amount in controversy in this civil action exceeds the minimum jurisdictional amount for this Court.

This Court has jurisdiction over the parties to this civil action because Defendant Michelin has purposefully availed itself of the privileges and benefits of doing business in Texas and because all parties have appeared without questioning jurisdiction.

The Coleman family has not pleaded any causes of action that raise a federal question.

Texas resident Defendant Robert Coleman is jurisdictionally non-diverse from Texas resident Plaintiffs Kollye Kilpatrick, Eric Kilpatrick, Karen Kilpatrick, and the Estate of Beverly Ann Kilpatrick, Deceased, who was driving the other vehicle involved in the crash at issue.

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                                    4

SuppR 004

This civil action is not removable to federal court, and the improper removal of this case should be remedied by sanctions and a remand with an award of all costs, expenses, and fees including, but not limited to, attorney fees under 28 U.S.C. § 1447(c).

## F. FACTS AND CLAIMS

On August 24, 2014, Robert Coleman was driving his 2001 Ford F-250 pickup eastbound on Highway 36 (also known as Highway 190) near County Road 112.

Mr. Coleman was traveling within the speed limit and within his lane and was wearing his seatbelt.

Blayne and Cameron Cook as well as Mathew Plum were passengers in the pickup and they were also wearing their seatbelts.

The tread peeled off the left front tire mounted on Mr. Coleman's pickup, which was an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire (DOT BFW802110611).

The failed BF Goodrich Rugged Terrain T/A tire suffered rapid air loss resulting from tread belt separation while Mr. Coleman was still traveling in his lane.

As a result of this tread separation of the BF Goodrich Rugged Terrain T/A tire, the pickup went out of control and crossed into oncoming traffic in the westbound lane where it collided with the 2013 Ford Explorer driven by Beverly Dykes Kilpatrick.

The failed tire is not slick and had ample unused tread depth remaining at the time of the crash, and the Texas Peace Officer's Crash Report identified the "defective or slick" tire as a contributing cause of this crash:

| 37 Vehicle Defects Contributing | | | 37. Vehicle Defects |
|---|---|---|---|
| 12 | | | 5 = Defective or No Headlamps<br>6 = Defective or No Stop Lamps<br>7 = Defective or No Tail Lamps<br>8 = Defective or No Turn Signal Lamps<br>9 = Defective or No Trailer Brakes<br>10 = Defective or No Vehicle Brakes<br>11 = Defective Steering Mechanism<br>12 = Defective or Slick Tires |

SuppR 005

*See Ex. A (with code sheet).*

Mr. Coleman, Blayne Cook, and Cameron Cook were all seriously injured as a result of the tire-failure-induced crash.

In the time before, during, and after the crash, Mr. Coleman exercised due care and, and he was properly and carefully using the pickup for the foreseen purpose and in the intended manner for which it was designed and sold.

In the time before, during, and after the crash, Mr. Coleman exercised due care and was properly and carefully using the failed BF Goodrich Rugged Terrain T/A tire (DOT BFW802110611) for the foreseen purposes and in the intended manner for which it was designed and marketed.

Prior to the crash, the failed tire was in substantially the same condition as it was when manufactured and sold by Michelin except that the defects inherent in the tire had progressed in a foreseeable manner during the foreseeable use of the tire.

All tires legally made and sold in the United States with the lettering "BF Goodrich Rugged Terrain T/A" on the sidewall were placed into the stream of commerce by Michelin.

All tires legally sold in the United States with DOT number BFW802110611 were placed into the stream of commerce by Michelin.

All tires legally sold in the United States with DOT number BFW802110611 were researched, developed, designed, manufactured, inspected, marketed, sold, distributed, tested, and warranted by Michelin.

All tires legally sold in the United States with DOT number BFW802110611 were made at Michelin's Fort Wayne, Indiana tire plant.

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                                                    6

SuppR 006

For all tires legally sold in the United States with DOT number BFW802110611, the culmination of the manufacturing processes by curing the tire was completed in the first week of February of 2011.

The designation "LT" in the size LT265/75R16 associated with the BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used on a light truck such as Mr. Coleman used the tire.

The designation "Rugged Terrain" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used on rugged terrain such as Mr. Coleman used the tire.

The designation "T/A" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used for in situations where a traction advantage was required such as Mr. Coleman used the tire.

The designation "LRE" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used for tasks requiring a heavy load range rating of E such as Mr. Coleman used the tire.

The failed tire was researched, developed, designed, manufactured, tested, inspected, marketed, sold, distributed, warranted, monitored, analyzed, and comparatively evaluated by Michelin.

Michelin, as a part of its business, is engaged in the researching, developing, designing, manufacturing, inspecting, marketing, selling, distributing, testing, warranting, and in-field monitoring of tires for use on passenger cars and light trucks in a manner that included placing such tires in the course of commerce by transactions that are essentially commercial in character.

SuppR 007

When the failed tire at issue was researched and developed, when it was designed, when it was manufactured, and when it was marketed and sold, part of Michelin's business included the researching, developing, designing, manufacturing, inspecting, marketing, selling, distributing, testing, warranting, and in-field monitoring of LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires in a manner that included placing such tires in the course of commerce by transactions that are essentially commercial in character.

For valuable consideration, Michelin sold the subject tire which was on the Coleman family's vehicle at the time of the crash made the basis of this Petition.

Because of its defective nature, the failed tire was unfit and unreasonably dangerous as used in a foreseeable manner, and Michelin knew, or in the exercise of reasonable care should have known, that the subject tire was unreasonably dangerous in this manner and unfit for its warranted purposes.

In accordance with the requirements of the National Traffic and Motor Vehicle Safety Act, Michelin has been required to identify defects which relate to motor vehicle safety in hundreds of thousands of BF Goodrich brand tires pursuant to numerous recalls, including NHTSA Recall Number 12T-019. *See Ex. B.*

Based on such prior recalls of BF Goodrich tires, Michelin has objective and subjective knowledge that drivers who "experience tread loss and/or rapid air loss resulting from tread belt separation" experience foreseen driving conditions that "increase the risk of a vehicle crash" because a defect that manifests in a tread separation is "a defect which relates to motor vehicle safety." *See Ex. B.*

Michelin's objective and subjective knowledge of these extreme risks specifically concerns 16 inch radial light truck load range E T/A BF Goodrich tires. *See Ex. B.*

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                                                      8

SuppR 008

The failed BF Goodrich Rugged Terrain T/A tire (DOT BFW802110611) which resulted in the crash is a 16 inch radial light truck load range E T/A BF Goodrich tire.

Michelin's design and manufacture of the failed tire reflects a disregard of its objective and subjective knowledge of these extreme risks applicable to 16 inch radial light truck load range E T/A BF Goodrich tires.

Michelin undertook to perform the post-sale monitoring and analyzing of early warning data (including warranty returns, property damage claims, law suits and other early warning data) in connection with all sizes of the BF Goodrich Rugged Terrain T/A tire line, and Michelin knew that such monitoring and analysis were necessary for the driving public's safety and the driving public and the U.S. Government were relying on Michelin's performance of that monitoring and analysis.

Michelin undertook to perform the post-sale monitoring and analyzing and comparative evaluation of early warning data (including warranty returns, property damage claims, lawsuits and other early warning data) in connection with the various 265/75R16 size tire lines it makes, and Michelin knew that such monitoring, analysis, and evaluation were necessary for the driving public's safety and the driving public and the U.S. Government were relying on Michelin's performance of that monitoring, analysis, and comparative evaluation.

The failed tire was in an unfit and defective and unreasonably dangerous condition in that:

    (a)    The failed tire was not adequately designed to prevent tread separation despite the fact that such safer designs were technologically feasible at the time the subject tire was made, in use within the industry, and employed by other tire manufacturers as well as Michelin.

    (b)    The failed tire was not reasonably durable for its intended and foreseen uses.

    (c)    The failed tire's components were defectively and inadequately researched, developed, designed, manufactured, and selected without regard to providing adequate strength to prevent a tread separation in foreseeable conditions.

Coleman Orig. Pet. Intervention in Cause No. 2014-57952    9

SuppR 009

(d)     The nylon reinforcement in the failed tire was not designed to adequately reinforce the belt package even though such improved reinforcement technology such as double wrapped nylon and nylon-aramid filament at zero degrees was feasible, used in the industry, and employed by other tire makers and by Michelin.

(e)     The failed tire and its component parts were defective due to Michelin's failure to test or adequately test the tire and its parts to ensure they were reasonably safe and suitable for their intended purpose and use.

(f)     The failed tire and its component parts were defective due to the susceptibility of the internal rubber to oxidation at a level accelerated beyond reasonable expectations for a tire less than four years old at the time of its failure.

(g)     The failed tire was defective in its rubber bonding as indicated by voids built into the tire during the assembly process and observable in the separated surfaces in the tire's failure zone.

(h)     The failed tire was defective in its rubber bonding as indicated by processing marks built into the tire during the assembly process and observable in the separated surfaces in the tire's failure zone.

(i)     The failed tire was defective in its rubber bonding as indicated by bare wires uncoated by rubber as observable in the separated surfaces in the tire's failure zone.

(j)     The failed tire was defective in its assembly as shown by the careless placement and splicing of its components.

At the time Michelin researched, developed, designed, manufactured, inspected or failed to inspect, marketed, sold, distributed, tested or failed to test, warranted, and performed in-field monitoring of the BF Goodrich Rugged Terrain T/A tire line, it had a duty to exercise reasonable care in order to provide a safe product and to research, develop, design, manufacture, inspect, market, sell, distribute, test, warrant, and monitor the product so as not to subject users of the BF Goodrich Rugged Terrain T/A tires, including the Coleman family, to an unreasonable risk of injury or harm. Michelin breached these duties.

Michelin negligently researched, developed, designed, manufactured, inspected or failed to inspect, marketed, sold, distributed, tested or failed to test, warranted, and performed in-field monitoring of the BF Goodrich Rugged Terrain T/A tire line. This negligent conduct of Michelin was a proximate cause of the injuries and damages sustained by the Coleman family.

SuppR 010

At the time it designed and manufactured the failed tire and its components, Michelin had a duty to carefully staff the tire design, manufacturing, and quality control positions and had a duty to carefully train its employees involved in the tire design and manufacturing processes, including the quality control processes at the Fort Wayne plant where the tire was manufactured. Michelin breached these duties.

The failed tire was cured during the first week of February in 2011 and assembled as much as a week prior to that and the components were created up to a week or more prior to assembly so the components and assembled pre-cured tire were exposed to the environment within the Fort Wayne plant during the last week of January and the first week of February of 2011.

It snowed and rained in Fort Wayne, Indiana during the last week of January of 2011 and during the first week of February of 2011.

In 2011, the tire building room at Michelin's Fort Wayne, Indiana tire plant was covered by a large flat roof that leaked when it rained and when the roof had melting snow on it.

Rainwater droplets (and droplets formed by condensation and melting snow droplets and droplets of perspiration from tire builders) on the pre-cured tire components lead to trapped air or steam pockets built into a tire and result in voids or processing marks visible in separated surfaces of a failed tire.

Air or steam trapped in between rubber or rubber-coated tire components creates a void and promotes separation of those components.

A prudent tire company's internal standards would forbid trapped air and trapped moisture built into tires and yet Michelin is aware of manufacturing practices applicable at its Fort Wayne tire plant which have resulted in building tires with trapped air or moisture or both.

SuppR 011

Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne, Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed roof leaks, puddled water, and the use of plastic sheeting to divert leaks on and near tire building operations as well as other negligent manufacturing practices.

When pre-cured rubber and rubber-coated tire components are not used promptly in the tire building process, they lose some of their tack and it is more difficult to stitch down those components without trapping air in between the tire components.

A prudent tire company's internal standards restrict the use of rubber and rubber-coated components that have lost some of their tack and the use of solvents to restore the tackiness of pre-cured rubber and rubber-coated tire components that were not used promptly in the tire building process and yet Michelin is aware of manufacturing practices applicable at its Fort Wayne tire plant which have resulted in the use of solvents in an attempt to restore the diminished tackiness of pre-cured rubber and rubber-coated tire components that were not used promptly in the tire building process.

Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne, Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed the use of rubber and rubber-coated components that lost some of their tack and the use of solvents in an attempt to restore that tack as well as other negligent manufacturing practices.

The misplacement and improper splicing of the steel belts and the rubber and rubber-coated components surrounding the steel belts in the assembly of a tire promote trapped air and increases strain at the belt edges and these factors result in belt edge separation.

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                    12

SuppR 012

A prudent tire company must vigilantly enforce internal standards to avoid misplacement and improper splicing of the steel belts and the rubber and rubber-coated components surrounding the steel belts in the assembly of a tire and yet Michelin is aware of manufacturing practices applicable at its Fort Wayne tire plant which have resulted in the lax enforcement of standards to avoid misplacement and improper splicing of the steel belts and the rubber and rubber-coated components surrounding the steel belts.

Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne, Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed the lax enforcement of standards to avoid misplacement and improper splicing of the steel belts and the rubber and rubber-coated components surrounding the steel belts.

The quality control inspection process in the final finish department is the tire company's principle opportunity to identify defects in cured tires and to scrap or repair those defective tires before they reach the consumer in a defective condition such as the Coleman family's tire.

A prudent tire company must vigilantly enforce internal standards within its final finish room to ensure that all defects are identified so that defective tires do not reach the public yet Michelin is aware of practices applicable at its Fort Wayne tire plant which have resulted in the lax enforcement of standards and falsification of inspections and sexual misconduct at the workplace affecting the final finish inspection process.

Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 have knowledge of relevant facts in so far as they eyewitnessed the lax enforcement of standards and falsification of inspections and on-the-job sexual misconduct affecting the final finish inspection process.

SuppR 013

In connection with Michelin's tire manufacturing practices, the failed tire at issue neglects to meet standards which Michelin has recognized as reflecting the standard of care:

(a) In connection with Michelin's manufacturing practices, the internal standards which Michelin has recognized as appropriate standards to assess tires and tire building practices apply across different passenger tire and light truck tire lines and across different passenger tire and light truck tire sizes and across different tire plants and across time periods spanning the past decade or more.

(b) In connection with Michelin's manufacturing practices, Michelin has documented a Bad Habits List of manufacturing issues which sets forth some of the standards which Michelin has recognized.

(c) The manufacturing practices described on Michelin's Bad Habits List are bad practices regardless of the location of the tire plant where those practices occurred and when those practices occurred.

(d) In connection with Michelin's manufacturing practices, Michelin has possession of documents, testimony, and information which confirm that its practices have included the stacking of rubber components on the unclean floor where those components were subject to contamination.

(e) In connection with Michelin's manufacturing practices, Michelin has Decision Tree documents which set forth some of the standards which Michelin has recognized.

(f) In connection with Michelin's manufacturing practices, Michelin has Aspect Classification documents which set forth some of the standards which Michelin has recognized.

(g) Michelin's Decision Tree and Aspect Classification documents have annexes, glossaries, illustrations, photographs, and attachments with additional information and caveats pertaining to the standards which Michelin has recognized in the past.

(h) The manufacturing practices addressed in Michelin's Decision Tree and Aspect Classification documents and their annexes set forth standards for the assessment of conditions in cured tires and those standards – which have been recognized by Michelin – are suitable to assess tires regardless of where and when they were made.

(i) Michelin's Decision Tree and Aspect Classification documents and their annexes set forth numerous standards which tire inspectors must check when inspecting cured tires, and Michelin negligently understaffed the Fort Wayne tire plant by hiring an insufficient number of tire inspectors and classifiers for the number of tires produced given the breadth of the conditions to be inspected according to the Decision Tree and Aspect Classification documents.

(j) In connection with Michelin's manufacturing practices, Michelin has possession of documents, testimony, and information which confirm that its practices have included having a quality inspection process that failed to prevent air, moisture, and other foreign objects from being cured into tires.

(k) In connection with Michelin's manufacturing practices, Michelin has possession of documents, testimony, and information which confirm that its practices have included paying tire building employees on a bonus incentive system based on

SuppR 014

quantity in production that discouraged the scrapping of bad tires and out-of-specification tire components and undermined the production of safe tires.

(l) In connection with Michelin's manufacturing practices, Michelin has a Product Standards and Guidelines Manual for Required Tire Dimensional Tolerances which sets forth standards which Michelin has recognized.

(m) In connection with Michelin's manufacturing practices, Michelin has work procedures for tire builders which set forth standards which Michelin has recognized.

(n) In connection with Michelin's manufacturing practices, Michelin has training materials including videotapes and tests for tire builders which set forth standards which Michelin has recognized.

(o) In connection with Michelin's manufacturing practices, Michelin has work procedures for tire inspectors which set forth standards which Michelin has recognized.

(p) In connection with Michelin's manufacturing practices, Michelin has training materials including videotapes and tests for tire inspectors which set forth standards which Michelin has recognized.

(q) In connection with Michelin's manufacturing practices, Michelin has reaction limits which set forth some of the standards which Michelin has recognized.

(r) In connection with Michelin's manufacturing practices, Michelin has product tolerance limits which set forth some of the standards which Michelin has recognized.

(s) In connection with Michelin's manufacturing practices, Michelin has possession of documents, testimony, and information which confirm that its practices have included using awls and hot-knives to deflate blisters in tires caused by trapped air and steam.

(t) In connection with Michelin's manufacturing practices, Michelin has possession of documents, testimony, and information which confirm that its practices have included the use of rejected materials to build tires despite the fact that those components had been scrapped.

(u) In connection with Michelin's manufacturing practices, Michelin has possession of documents, testimony, and information which confirm that Michelin hired and trained the tire designers, tire component fabricators, the tire builders, the tire inspectors, and the tire classifiers who participated in making the Coleman family's tire, and Michelin performed these tasks negligently and this negligence was a proximate cause of the damages set forth in this petition.

(v) In connection with Michelin's manufacturing practices, Michelin has possession of documents, testimony, and information which confirm that Michelin inadequately staffed the quality control operations at its Fort Wayne, Indiana plant and assigned too many quality assurance tasks for each of the limited number of quality control personnel and permitted falsification of inspections as well as on-the-job sexual misconduct to interfere with the inspection process.

Coleman Orig. Pet. Intervention in Cause No. 2014-57952          15

SuppR 015

In connection with Michelin's tire design practices, tire design revision practices, and tire failure analysis practices, the failed tire at issue reflects that its design and its as-sold condition made it susceptible to the exact foreseeable failure mode that caused the catastrophic crash:

(a)     Michelin has possession of documents, testimony, and information which confirm that it has established a link between certain cured tire defects and their probable causes.

(b)     Michelin has possession of documents, testimony, and information which confirm that is has established a link between nonconformance to standards and tread separations.

(c)     In connection with Michelin's tire design practices, Michelin has work procedures for tire and tire component designers which set forth standards which Michelin has recognized as means to reduce the risk of tread separations.

(d)     In connection with Michelin's tire design practices, Michelin has training materials including videotapes and tests for tire and tire component designers which set forth standards which Michelin has recognized as means to reduce the risk of tread separations.

(e)     In connection with Michelin's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Michelin performs Failure Modes and Effects Analysis which address tread separation and other failure modes and assess the comparative risk of tread separations.

(f)     In connection with Michelin's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Michelin runs tire endurance tests and tread separation is not the typical failure mode for such test tires regardless of load or inflation pressure.

(g)     In connection with Michelin's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Michelin runs tests with over deflected tires and tread separation is not the typical failure mode for such test tires.

(h)     In connection with Michelin's design, manufacturing, and warranty practices, Michelin has adjustment documents with tire condition descriptions, condition lists, condition codes, and condition pictures and illustrations, and which set forth warranty standards which Michelin has recognized and which the failed tire does not meet.

(i)     In connection with Michelin's design, manufacturing, and warranty practices, Michelin has work procedures for tire adjustment center personnel which set forth standards which Michelin has recognized and which the failed tire does not meet.

(j)     In connection with Michelin's design, manufacturing, and warranty practices, Michelin has training materials including videotapes and tests for tire adjustment center personnel which set forth standards which Michelin has recognized and which the failed tire does not meet.

(k)     In connection with Michelin's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Michelin

SuppR 016

maintains and analyzes warranty return adjustment data which Michelin or the government or both use to assess the risk of catastrophic tread separations.

(l)     In connection with Michelin's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Michelin uses warranty return adjustment data and graphs to chart and compare tire models against other tire models which Michelin or the government or both use to assess the risk of catastrophic tread separations.

(m)     In connection with Michelin's tire design processes, tire re-design and design revision processes, and tire design performance evaluation processes, Michelin uses warranty return adjustment data and graphs to chart and compare tire plants against other tire plants which Michelin or the government or both use to assess the risk of catastrophic tread separations.

(n)     In connection with Michelin's knowledge of the link between its manufacturing practices and designs and tire tread separations, Michelin has a tire adjustment claims procedure and replacement policy administration guidelines which set forth standards that the failed tire did not meet.

Michelin was negligent, malicious, and grossly negligent in designing and manufacturing the subject tire in such a manner that it failed to meet Michelin's own recognized standards and was defective and was unfit for its ordinary uses and was outside of warranted standards.

Michelin is and was aware prior to the design, prior to the manufacture, prior to the sale, and prior to the failure of the subject tire of the magnitude of the risk posed by the tread peeling off of its tires.

Michelin's awareness of this risk and awareness of the magnitude and nature of this risk is confirmed by Michelin's knowledge of prior property damage claims and injury claims and death claims from the tread separation of light truck tires made by Michelin.

The documents and testimony produced in prior litigation asserting fatalities and catastrophic injuries associated with the tread separations of BF Goodrich Rugged Terrain T/A tires confirm Michelin's liability and the nature of its tortious conduct.

There are no applicable mandatory safety standards regarding the risk of tread separations, and the regulations regarding tires are inadequate to protect the public from

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                    17

SuppR 017

unreasonable risks of injury, and one reason for the inadequacy of these regulations is Michelin's lack of candor in connection with the government's determination of the adequacy of tire regulations.

Prior to filing this petition, the Coleman family met all conditions precedent. *See, e.g. Ex. C.*

## G. DAMAGES

As a direct and proximate result of Michelin's wrongful misconduct, the Coleman family has sustained damages in the past which will continue into the future, including (a) physical pain; (b) mental anguish; (c) disfigurement; (d) the loss of the enjoyment of life; (e) physical impairment; (e) lost earnings and earning capacity; (f) medical care costs; (g) the loss of parental consortium; (h) the loss of household services; and (i) and the anguish suffered by one family member who is a bystander witness to the catastrophic injury of another family member. Accordingly, the Coleman family maintains this civil action against Michelin for each of the foregoing elements of damages in a just and reasonable amount, and in addition, the Coleman family ask for judgment against Michelin for exemplary damages, warranty damages, court costs, and for pre-judgment and post judgment interest as authorized by law.

The Coleman family's damages are significant and continue to grow and, given the jury's latitude in assessing both actual and exemplary damages, the evidence will support an actual and exemplary damage award in excess of $1,000,000, and the Coleman family seeks the jury's full award within the jurisdiction of the Court regardless of whether if it exceeds $1,000,000.

## JURY DEMAND

The Coleman family demands a trial by jury for all issues so triable.

WHEREFORE, PREMISES CONSIDERED, the Coleman family prays that Michelin answer the claims set forth above accordingly to law, that this cause be set for trial before a jury,

SuppR 018

and that the Coleman family recover judgment from the Michelin for the actual, compensatory, special, and exemplary damages in such a manner as the evidence may show and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post judgment interest, and such other and further relief to which Plaintiffs may, in law or in equity, show themselves justly entitled.

Respectfully submitted,

**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone No. (361) 698-7600
Facsimile No. (361) 698-7614

**RILEY LAW FIRM**
Timothy D. Riley
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007-2502

By:    /s/ John Blaise Gsanger
       John Blaise Gsanger
       State Bar No. 00786662
       jgsanger@edwardsfirm.com
       Gary Scott Marshall
       State Bar No. 24077207
       smarshall@edwardsfirm.com
       Timothy D. Riley
       State Bar No. 24077207
       tdr@txtrial.com

       ATTORNEYS FOR THE COLEMAN FAMILY

Coleman Orig. Pet. Intervention in Cause No. 2014-57952       19

SuppR 019

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded to the following counsel in the manner indicated on the 19th day of December, 2014.

*Via electronic Service*
*And Via Facsimile: (512) 472-0721*
Thomas M. Bullion III
Germer Beaman & Brown, L.L.P.
301 Congress Avenue, Suite 1700
Austin, Texas 78701

*Via Electronic Service*
*And Facsimile: (713) 523-4159*
Robert E. Ammons
The Ammons Law Firm, LLP
3700 Montrose Boulevard
Houston, Texas 77006

*Via Electronic Service*
*And Facsimile: (800) 637-1955*
Timothy D. Riley
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007-2502

*Via Electronic Service*
*And Facsimile: (254) 751-9133*
Michael Bourland
Witt, McGregor & Bourland, P.L.LC.
8004 Woodway Drive, Suite 400
Waco, Texas 76712-3648


/s/ John Blaise Gsanger
Counsel for Plaintiffs

Coleman Orig. Pet. Intervention in Cause No. 2014-57952                    20

SuppR 020

![Texas Department of Transportation logo] **Texas Department of Transportation**

125 EAST 11TH STREET | AUSTIN, TEXAS 78701-2483 | (512) 463-8700 | WWW.TXDOT.GOV

Wed, 10 Sep 2014

STATE OF TEXAS        §

This is to certify that I, Debra Vermillion, am employed by the Texas Department of Transportation (Department); that I am the Custodian of Motor Vehicle Crash Records for such Department; that the attached is a true and correct copy of the peace officer's report filed with the Department referred to in the attached request with the crash date of __Sun, 24 Aug 2014__ , which occurred in ___Milam___ County; that the investigations of motor vehicle crashes by peace officers are authorized by law; that this Texas Peace Officer's Crash Report is required by law to be completed and filed with this Department; that this report sets forth matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.



Debra Vermillion, Director
Crash Data and Analysis Section
P. O. Box 149349
Austin, Texas 78714
(512) 486-5780

**OUR GOALS**
MAINTAIN A SAFE SYSTEM ▪ ADDRESS CONGESTION ▪ CONNECT TEXAS COMMUNITIES ▪ BEST IN CLASS STATE AGENCY
*An Equal Opportunity Employer*

Law Enforcement and TxDOT Use ONLY

[x] FATAL [x] CMV [ ] SCHOOL BUS [ ] RAILROAD [ ] MAB [ ] SUPPLEMENT [ ] ACTIVE SCHOOL ZONE

| Total Num. Units | 3 | Total Num. Prsns. | 5 | TxDOT Crash ID | 14005009.1 /2014351453 |

**Texas Peace Officer's Crash Report (Form CR-3 1/1/2010)**
Mail to: Texas Department of Transportation, Crash Records, P.O. Box 149349, Austin, TX 78714. Questions? Call (512) 486-5780
Refer to Attached Code Sheet for Numbered Fields
★=These fields are required on all additional sheets submitted for this crash (ex.: additional vehicles, occupants, injured, etc.).

Texas Department of Transportation

Page 1 of 4

## IDENTIFICATION & LOCATION

★Crash Date (MM/DD/YYYY): 08/24/2014
★Crash Time (24HRMM): 1115
Case ID:
Local Use:

★County Name: MILAM
★City Name:
[x] Outside City Limit

In your opinion, did this crash result in at least $1,000 damage to any one person's property? [x] Yes [ ] No
Latitude (decimal degrees): 30.87727
Longitude (decimal degrees): −097.13995

### ROAD ON WHICH CRASH OCCURRED

★1 Rdwy. Sys.: US
★Hwy. Num.: 190
2 Rdwy. Part: 1
Block Num.:
3 Street Prefix:
★Street Name:
4 Street Suffix:

[ ] Crash Occurred on a Private Drive or Road/Private Property/Parking Lot
[ ] Toll Road/ Toll Lane
Speed Limit: 70
Const. Zone: [x] Yes [ ] No
Workers Present: [ ] Yes [x] No
Street Desc.: W. of Buckholts

### INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER

At Int.: [ ] Yes [x] No
1 Rdwy. Sys.: CR
Hwy. Num.: 112
2 Rdwy. Part:
Block Num.:
3 Street Prefix:
Street Name:
4 Street Suffix:

Distance from Int. or Ref. Marker: 0.2
[ ] FT [x] MI
3 Dir. from Int. or Ref. Marker: W
Reference Marker:
Street Desc.:
RRX Num.:

## VEHICLE, DRIVER, & PERSONS

Unit Num.: 1
5 Unit Desc.: 1
[ ] Parked Vehicle
[ ] Hit and Run
LP State: TX
LP Num.: CTS7466
VIN: 1FTNW20F21EB58963

Veh. Year: 2001
6 Veh. Color: BLK
Veh. Make: FORD
Veh. Model: F250
7 Body Style: PK
[ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked)

8 DL/ID Type: 1
DL/ID State: TX
DL/ID Num.: 09243216
9 DL Class: C
10 CDL End.: 96
11 DL Rest.: 96
DOB (MM/DD/YYYY): 02/18/1977

Address (Street, City, State, ZIP): 19707 Centerlake LN Spring, TX 77379

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle (Enter Driver or Primary Person for this Unit on first line) | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | Coleman, Robert Dwayne | A | 37 | W | 1 | 1 | 1 | 2 | 97 | N | 96 | | 96 | 97 | 97 |
| 2 | 2 | 3 | Cook, Cameon Bailey | B | 13 | W | 1 | 1 | 1 | 2 | 97 | N | | | | | |
| 3 | 2 | 4 | Plum, Mathew Alfred | C | 15 | W | 1 | 1 | 1 | 97 | 97 | N | | | | | |
| 4 | 2 | 6 | Cook, Blaine Michael | B | 15 | W | 1 | 1 | 1 | 97 | 97 | N | | | | | |

Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit.

[x] Owner [ ] Lessee
Owner/Lessee Name & Address: Coleman, Robert Dwayne, 19707 Centerlake LN Spring, TX 77379

Proof of Fin. Resp.: [x] Yes [ ] No [ ] Expired [ ] Exempt
26 Fin. Resp. Type: 2
Fin. Resp. Name: State Farm
Fin. Resp. Num.: 1662817D2053D002

Fin. Resp. Phone Num.: (800) 782-8332
27 Vehicle Damage Rating 1: 1-FL-6
27 Vehicle Damage Rating 2: 5-RBQ-3
Vehicle Inventoried: [x] Yes [ ] No

Towed By: Damon's Wrecker Service
Towed To: 2104 W. 4th St., Cameron, TX 76520

---

Unit Num.: 2
5 Unit Desc.: 6
[ ] Parked Vehicle
[ ] Hit and Run
LP State: TX
LP Num.: 206663H
VIN:

Veh. Year: 2010
6 Veh. Color: BLK
Veh. Make: HOMEMADE VEHICLE
Veh. Model: UNKNOWN
7 Body Style: TL
[ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked)

8 DL/ID Type:
DL/ID State:
DL/ID Num.:
9 DL Class:
10 CDL End.:
11 DL Rest.:
DOB (MM/DD/YYYY):

Address (Street, City, State, ZIP):

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle (Enter Driver or Primary Person for this Unit on first line) | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |

Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit.

[x] Owner [ ] Lessee
Owner/Lessee Name & Address: Anzaldua, Aaron L, 4826 Landon LN Baytown, TX 77523

Proof of Fin. Resp.: [x] Yes [ ] No [ ] Expired [ ] Exempt
26 Fin. Resp. Type: 2
Fin. Resp. Name: State Farm
Fin. Resp. Num.: 1662817D2053D002

Fin. Resp. Phone Num.: (800) 782-8332
27 Vehicle Damage Rating 1: F R 1
27 Vehicle Damage Rating 2:
Vehicle Inventoried: [ ] Yes [x] No

Towed By: Damon's Wrecker Service
Towed To: 2104 W. 4th St., Cameron, TX 76520

Copy from Custodial File

SuppR 022

## DISPOSITION OF INJURED/KILLED

| Unit Num. | Prsn. Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HRMM) |
|---|---|---|---|---|---|
| 1 | 1 | Scott & White Hospital, Temple, TX | American Medical Response | / / | |
| 1 | 2 | Scott & White Hospital, Temple, TX | American Medical Response | / / | |
| 1 | 3 | Scott & White Hospital, Temple, TX | American Medical Response | / / | |
| 1 | 4 | Scott & White Hospital, Temple, TX | PHI Air Med | / / | |
| | | | | / / | |
| | | | | / / | |

## CHARGES

| Unit Num. | Prsn. Num. | Charge | Citation/Reference Num. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## DAMAGE

| Damaged Property Other Than Vehicles | Owner's Name | Owner's Address |
|---|---|---|
| | | |
| | | |

## CMV

Unit Num. 1   [x] 10,001+ LBS.   ☐ TRANSPORTING HAZARDOUS MATERIAL   ☐ 9+ CAPACITY   28 Veh. Oper. 5   29 Carrier ID Type 96   Carrier ID Num.

Carrier's Corp. Name Robert Dwayne Coleman   Carrier's Primary Addr. 19707 Centerlake LN Spring, TX 77379

| 30 Rdwy. Access 3 | 31 Veh. Type 7 | [x] RGVW ☐ GVWR 7 6 0 0 | HazMat Released ☐ Yes ☐ No | 32 HazMat Class Num. | HazMat ID Num. | 32 HazMat Class Num. | HazMat ID Num. |
|---|---|---|---|---|---|---|---|

| 33 Cargo Body Style 5 | Trailer 1 Unit Num. 2 | [x] RGVW ☐ GVWR 4 0 0 0 | 34 Trlr. Type 2 | Trailer 2 Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type |
|---|---|---|---|---|---|---|

| Sequence Of Events | 35 Seq. 1 9 | 35 Seq. 2 8 | 35 Seq. 3 13 | 35 Seq. 4 | Total Num. Axles 4 | Total Num. Tires 8 |
|---|---|---|---|---|---|---|

## FACTORS & CONDITIONS

| 38 Contributing Factors (Investigator's Opinion) | | | 37 Vehicle Defects (Investigator's Opinion) | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit Num. | Contributing | May Have Contrib. | Contributing | May Have Contrib. | 38 Weather Cond. | 39 Light Cond. | 40 Entering Roads | 41 Roadway Type | 42 Roadway Alignment | 43 Surface Condition | 44 Traffic Control |
| 1 | | | | 12 | 1 | 1 | 97 | 1 | 5 | 1 | 12 |

## NARRATIVE AND DIAGRAM

### Investigator's Narrative Opinion of What Happened (Attach Additional Sheets If Necessary)

Unit 1 was traveling EB on US 190 towing Unit 2, an empty 16 foot flatbed trailer. Unit 3 was traveling WB on US 190 approaching Unit 1. US 190 was under construction at the time of the crash but the construction company was not working on that day. The driver of Unit 1 stated his left front tire blew out and it caused his vehicle to cross into the WB lane. He continued to say since he did not have control of the vehicle as it went into the WB lane he did the only thing he could do which was to apply the brakes as hard as he could. The WB lane did not have an improved shoulder as the EB lane did but it was just as wide. Judging from the area of impact the driver of Unit 3 attempted to avoid the collision. The collision occurred in the WB lane near the WB bar ditch behind the construction barrels marking the WB lane. Unit 1 struck Unit 3's LP with its FL. Unit 3 spun around and came to rest in the WB bar ditch facing EB after striking a tree with its LP. Unit 1 came to rest facing NW in the WB bar ditch with Unit 2 resting against its RBQ. Evidence on scene indicated Unit 1's left front tire sustained a blowout while still in his lane. Marks left behind from the left front tire showed the tire was wobbling prior to crossing into the WB lane. Evidence showed the rim of the left front tire was digging into the pavement in the WB lane prior to Unit 1 striking Unit 3.

### Field Diagram – Not to Scale

## INVESTIGATOR

Time Notified (24HRMM) 1 1 2 3   How Notified Dispatched   Time Arrived (24HR:MM) 1 1 5 0   Report Date (MM/DD/YYYY) 0 8 / 2 5 / 2 0 1 4

Invest. Comp. ☐ Yes [x] No   Investigator Name (Printed) Del Bosque, Ernest   ID Num. 9545

ORI Num.   Agency DEPARTMENT OF PUBLIC SAFETY, STATE OF TEXAS   District/Area H P 6 A 0 6

Copy from Custodial File

SuppR 023

Law Enforcement and TxDOT Use ONLY

[x] FATAL  [x] CMV  [ ] SCHOOL BUS  [ ] RAILROAD  [ ] MAB  [ ] SUPPLEMENT  [ ] ACTIVE SCHOOL ZONE

Total Num. Units _3_   Total Num. Prsns. _5_   TxDOT 14005009.1  Crash ID /2014351453

**Texas Peace Officer's Crash Report (Form CR-3 1/1/2010)**
Mail to: Texas Department of Transportation, Crash Records, P.O. Box 149349, Austin, TX 78714. Questions? Call (512) 486-5780
Refer to Attached Code Sheet for Numbered Fields
*=These fields are required on all additional sheets submitted for this crash (ex.: additional vehicles, occupants, injured, etc.).

Texas Department of Transportation

Page _3_ of _4_

## IDENTIFICATION & LOCATION

★Crash Date (MM/DD/YYYY) 0 8 / 2 4 / 2 0 1 4   ★Crash Time (24HRMM) 1 1 1 5   Case ID   Local Use

★County Name MILAM   ★City Name   [x] Outside City Limit

In your opinion, did this crash result in at least $1,000 damage to any one person's property? [x] Yes [ ] No   Latitude (decimal degrees) 3 0 . 8 7 7 2 7   Longitude (decimal degrees) — 0 9 7 . 1 3 9 9 5

**ROAD ON WHICH CRASH OCCURRED**

★1 Rdwy. Sys. US   ★Hwy. Num. 190   2 Rdwy. Part 1   Block Num.   3 Street Prefix   ★Street Name   4 Street Suffix

[ ] Crash Occurred on a Private Drive or Road/Private Property/Parking Lot   [ ] Toll Road/Toll Lane   Speed Limit 70   Const. Zone [x] Yes [ ] No   Workers Present [ ] Yes [x] No   Street Desc. W. of Buckholts

**INTERSECTING ROAD, OR IF CRASH NOT AT INTERSECTION, NEAREST INTERSECTING ROAD OR REFERENCE MARKER**

At Int. [ ] Yes [x] No   1 Rdwy. Sys. CR   Hwy. Num. 112   2 Rdwy. Part   Block Num.   3 Street Prefix   Street Name   4 Street Suffix

Distance from Int. or Ref. Marker 0.2   [ ] FT [x] MI   3 Dir. from Int. or Ref. Marker W   Reference Marker   Street Desc.   RRX Num.

## VEHICLE, DRIVER, & PERSONS

Unit Num. 3   5 Unit Desc. 1   [ ] Parked Vehicle   [ ] Hit and Run   LP State TX   LP Num. BFN0694   VIN 1 F M 5 K 7 D 8 7 D G B 2 6 2 7 5

Veh. Year 2 0 1 3   6 Veh. Color RED   Veh. Make FORD   Veh. Model EXPLORER   7 Body Style SV   [ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked)

8 DL/ID Type 1   DL/ID State TX   DL/ID Num. 07084677   9 DL Class C   10 CDL End. 96   11 DL Rest. A   DOB (MM/DD/YYYY) 0 3 / 0 7 / 1 9 5 2

Address (Street, City, State, ZIP) 22804 Laneview RD Hempstead, TX 77445

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle (Enter Driver or Primary Person for this Unit on first line) | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | 1 | Kilpatrick, Beverly Dykes | K | 62 | B | 2 | 1 | 1 | 5 | 97 | N | 96 | | 96 | 97 | 97 |

Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit.

[x] Owner [ ] Lessee   Owner/Lessee Name & Address Kilpatrick, Beverly Dykes, 22804 Laneview RD Hempstead, TX 77445

Proof of Fin. Resp. [x] Yes [ ] No [ ] Expired [ ] Exempt   26 Fin. Resp. Type 2   Fin. Resp. Name Farmers Texas County   Fin. Resp. Num. 43931347

Fin. Resp. Phone Num. (800) 435-7764   27 Vehicle Damage Rating 1 1 0 - L P - 6   27 Vehicle Damage Rating 2 7 - L P - 1   Vehicle Inventoried [x] Yes [ ] No

Towed By C&W Wrecker Service   Towed To 1506 N. Travis, Cameron, TX 76520

Unit Num.   5 Unit Desc.   [ ] Parked Vehicle   [ ] Hit and Run   LP State   LP Num.   VIN

Veh. Year   6 Veh. Color   Veh. Make   Veh. Model   7 Body Style   [ ] Pol., Fire, EMS on Emergency (Explain in Narrative if checked)

8 DL/ID Type   DL/ID State   DL/ID Num.   9 DL Class   10 CDL End.   11 DL Rest.   DOB (MM/DD/YYYY) /

Address (Street, City, State, ZIP)

| Person Num. | 12 Prsn. Type | 13 Seat Position | Name: Last, First, Middle (Enter Driver or Primary Person for this Unit on first line) | 14 Injury Severity | Age | 15 Ethnicity | 16 Sex | 17 Eject. | 18 Restr. | 19 Airbag | 20 Helmet | 21 Sol. | 22 Alc. Spec. | Alc. Result | 23 Drug Spec. | 24 Drug Result | 25 Drug Category |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | | | | |

Not Applicable – Alcohol and Drug Results are only reported for Driver/Primary Person for each Unit.

[ ] Owner [ ] Lessee   Owner/Lessee Name & Address

Proof of Fin. Resp. [ ] Yes [ ] No [ ] Expired [ ] Exempt   26 Fin. Resp. Type   Fin. Resp. Name   Fin. Resp. Num.

Fin. Resp. Phone Num.   27 Vehicle Damage Rating 1   27 Vehicle Damage Rating 2   Vehicle Inventoried [ ] Yes [ ] No

Towed By   Towed To

Copy from Custodial File

SuppR 024

## DISPOSITION OF INJURED/KILLED

| Unit Num. | Prsn. Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HRMM) |
|---|---|---|---|---|---|
| 3 | 1 | Green-Patterson Funeral Home | Green-Patterson Funeral Home | 08/24/2014 | 1235 |
| | | | | / / | |
| | | | | / / | |
| | | | | / / | |
| | | | | / / | |
| | | | | / / | |

## CHARGES

| Unit Num. | Prsn. Num. | Charge | Citation/Reference Num. |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## DAMAGE

| Damaged Property Other Than Vehicles | Owner's Name | Owner's Address |
|---|---|---|
| | | |
| | | |

## CMV

Unit Num. ☐ 10,001+ LBS. ☐ TRANSPORTING HAZARDOUS MATERIAL ☐ 9+ CAPACITY | 28 Veh. Oper. | 29 Carrier ID Type | Carrier ID Num.

Carrier's Corp. Name | Carrier's Primary Addr.

30 Rdwy. Access | 31 Veh. Type | ☐ RGVW ☐ GVWR | HazMat Released ☐ Yes ☐ No | 32 HazMat Class Num. | HazMat ID Num. | 32 HazMat Class Num. | HazMat ID Num.

33 Cargo Body Style | Trailer 1 | Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type | Trailer 2 | Unit Num. | ☐ RGVW ☐ GVWR | 34 Trlr. Type

Sequence Of Events | 35 Seq. 1 | 35 Seq. 2 | 35 Seq. 3 | 35 Seq. 4 | Total Num. Axles | Total Num. Tires

## FACTORS & CONDITIONS

| 36 Contributing Factors (Investigator's Opinion) | | | 37 Vehicle Defects (Investigator's Opinion) | | Environmental and Roadway Conditions | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Unit Num. | Contributing | May Have Contrib. | Contributing | May Have Contrib. | 38 Weather Cond. | 39 Light Cond. | 40 Entering Roads | 41 Roadway Type | 42 Roadway Alignment | 43 Surface Condition | 44 Traffic Control |
| | | | | | | | | | | | |

## NARRATIVE AND DIAGRAM

Investigator's Narrative Opinion of What Happened (Attach Additional Sheets If Necessary)

Field Diagram – Not to Scale

## INVESTIGATOR

Time Notified (24HRMM) 1123 | How Notified Dispatched | Time Arrived (24HR:MM) 1150 | Report Date (MM/DD/YYYY) 08/25/2014

Invest. Comp. ☐ Yes ☒ No | Investigator Name (Printed) Del Bosque, Ernest | ID Num. 9545

ORI Num. | Agency DEPARTMENT OF PUBLIC SAFETY, STATE OF TEXAS | District/Area HP6A06

Copy from Custodial File

SuppR 025

**Texas Peace Officer's Crash Report – Code Sheet**
Numbered Fields on the CR-3 Refer to the Numbered Lists on this Code Sheet. Each list includes the codes that may be entered on the form and the description of each code.

Page 1 of 2
Law Enforcement and TxDOT Use ONLY.
Form CR-3CS 1/1/2010

**IDENTIFICATION AND LOCATION**

### 1. Roadway System
IH = Interstate
US = US Highway
SH = State Highway
FM = Farm to Market
RR = Ranch Road
RM = Ranch to Market
BI = Business Interstate
BU = Business US
BS = Business State
BF = Business FM
SL = State Loop
TL = Toll Road

AL = Alternate
SP = Spur
CR = County Road
PR = Park Road
PV = Private Road
RC = Recreational Road
LR = Local Road/Street (Street, Road, Ave., Blvd., Pl., Trl., Beach, Alley, Boat Ramp, etc.)

### 2. Roadway Part
1 = Main/Proper Lane
2 = Service/Frontage Road
3 = Entrance/On Ramp
4 = Exit/Off Ramp
5 = Connector/Flyover
98 = Other (Explain in Narrative)

### 3. Street Prefix, Direction from Int. or Ref. Marker
N = North
NE = Northeast
E = East
SE = Southeast
S = South
SW = Southwest
W = West
NW = Northwest

### 4. Street Suffix
RD = Road
ST = Street
DR = Drive
AVE = Avenue
BLVD = Boulevard
PKWY = Parkway
LN = Lane
FWY = Freeway
HWY = Highway
WAY = Way
TRL = Trail
LOOP = Loop

EXPY = Expressway
CT = Court
CIR = Circle
PL = Place
PARK = Park
CV = Cove

### 5. Unit Description
1 = Motor Vehicle
2 = Train
3 = Pedalcyclist
4 = Pedestrian
5 = Motorized Conveyance
6 = Towed/Trailer
7 = Non-Contact
98 = Other (Explain in Narrative)

### 6. Vehicle Color
BGE = Beige
BLK = Black
BLU = Blue
BRZ = Bronze
BRO = Brown
CAM = Camouflage
CPR = Copper
GLD = Gold
GRY = Gray
GRN = Green
MAR = Maroon
MUL = Multicolored

ONG = Orange
PNK = Pink
PLE = Purple
RED = Red
SIL = Silver
TAN = Tan
TEA = Teal (green)
TRQ = Turquoise (blue)
WHI = White
YEL = Yellow
98 = Other (Explain in Narrative)
99 = Unknown

### 7. Body Style
P2 = Passenger Car, 2-Door
P4 = Passenger Car, 4-Door
PK = Pickup
AM = Ambulance
BU = Bus
SB = Yellow School Bus
FE = Farm Equipment
FT = Fire Truck
MC = Motorcycle
SV = Sport Utility Vehicle

PC = Police Car/Truck
PM = Police Motorcycle
TL = Trailer, Semi-Trailer, or Pole Trailer
TR = Truck
TT = Truck Tractor
VN = Van
98 = Other (Explain in Narrative)
99 = Unknown

### 8. Driver License/ID Type
1 = Driver License
2 = Commercial Driver Lic.
3 = Occupational
4 = ID Card
5 = Unlicensed
98 = Other
99 = Unknown

### 9. Driver License Class
A = Class A
AM = Class A and M
B = Class B
BM = Class B and M
C = Class C
CM = Class C and M
M = Class M
5 = Unlicensed
98 = Other/Out of State
99 = Unknown

### 10. Commercial Driver License Endorsements
H = Hazardous Materials
N = Tank Vehicles
P = Passengers
S = School Bus
T = Double/Triple Trailer
X = Tank Vehicle with HazMat
5 = Unlicensed
96 = None
98 = Other/Out of State
99 = Unknown

### 11. Driver License Restrictions
A = With Corrective Lenses
B = LOFS Age 21 or Over
C = Daytime Only
D = Not to Exceed 45 MPH
E = No Expressway Driving
F = Must Hold Valid Learner Lic. to MM/DD/YY
G = TRC 545.424 Applies until MM/DD/YY
H = Vehicle Not to Exceed 26,000 lbs GVWR
I = Motorcycle Not to Exceed 250 CC
J = Licensed Motorcycle Operator Age 21 or Over in Sight
K = Moped

L = Vehicle w/o Air Brakes – Applies to Vehicles Requiring CDL
M = CDL Intrastate Commerce Only
N = Ignition Interlock Required
O = Occ./Essent. Need DL-No CMV-See Court Order
P = Stated on License
Q = LOFS 21 or Over Vehicle Above Class B
R = LOFS 21 or Over Vehicle Above Class C
S = Outside Rear View Mirror or Hearing Aid

T = Automatic Transmission
U = Applicable Prosthetic Devices
V = Applicable Vehicle Devices
W = Power Steering
X = Vehicle Not to Exceed Class C
Y = Valid TX Vision or Limb Waiver Req'd.
Z = Valid Fed. Vision or Limb Waiver Req'd.
5 = Unlicensed
96 = None
98 = Other/Out of State
99 = Unknown

**VEHICLE, DRIVER, AND PERSONS**

### 12. Person Type
1 = Driver
2 = Passenger/Occupant
3 = Pedalcyclist
4 = Pedestrian
5 = Driver of Motorcycle Type Vehicle
6 = Passenger/Occupant on Motorcycle Type Vehicle
98 = Other (Explain in Narrative)
99 = Unknown

### 13. Seat Position
1 = Front Left
2 = Front Center
3 = Front Right
4 = Second Seat Left
5 = Second Seat Center
6 = Second Seat Right
7 = Third Seat Left
8 = Third Seat Center
9 = Third Seat Right
10 = Cargo Area
11 = Outside Vehicle
13 = Other in Vehicle
14 = Passenger in Bus
16 = Pedestrian, Pedalcyclist, or Motorized Conveyance
98 = Other (Explain in Narrative)
99 = Unknown

### 14. Injury Severity
A = Incapacitating Injury
B = Non-Incapacitating Injury
C = Possible Injury
K = Killed
N = Not Injured
99 = Unknown

### 15. Ethnicity
W = White
B = Black
H = Hispanic
A = Asian
I = Amer. Indian/Alaskan Native
98 = Other
99 = Unknown

### 16. Sex
1 = Male
2 = Female
99 = Unknown

### 17. Ejected
1 = No
2 = Yes
3 = Yes, Partial
97 = Not Applicable
99 = Unknown

### 18. Restraint Used
1 = Shoulder and Lap Belt
2 = Shoulder Belt Only
3 = Lap Belt Only
4 = Child Seat, Facing Forward
5 = Child Seat, Facing Rear
6 = Child Seat, Unknown
7 = Child Booster Seat
96 = None
97 = Not Applicable
98 = Other (Explain in Narrative)
99 = Unknown

### 19. Airbag
1 = Not Deployed
2 = Deployed, Front
3 = Deployed, Side
4 = Deployed, Rear
5 = Deployed, Multiple
97 = Not Applicable
99 = Unknown

### 20. Helmet Use
1 = Not Worn
2 = Worn, Damaged
3 = Worn, Not Damaged
4 = Worn, Unk. Damage
97 = Not Applicable
99 = Unknown if Worn

### 21. Solicitation
Y = Solicit
N = No Solicit

### 22. Alcohol Specimen Type
1 = Breath
2 = Blood
3 = Urine
4 = Refused
96 = None
98 = Other (Explain in Narrative)

### 23. Drug Specimen Type
2 = Blood
3 = Urine
4 = Refused
96 = None
98 = Other (Explain in Narrative)

### 24. Drug Test Result
1 = Positive
2 = Negative
97 = Not Applicable
99 = Unknown

### 25. Drug Category
2 = CNS Depressants
3 = CNS Stimulants
4 = Hallucinogens
6 = Narcotic Analgesics
7 = Inhalants
8 = Cannabis
10 = Disassociative Anesthetics
11 = Multiple Drugs (Explain in Narrative)
97 = Not Applicable
98 = Other Drugs (Explain in Narrative)
99 = Unknown

### 26. Financial Responsibility Type
1 = Liability Insurance Policy
2 = Proof of Liability Insurance
3 = Insurance Binder
4 = Surety Bond
5 = Certificate of Deposit with Comptroller
6 = Certificate of Deposit with County Judge
7 = Certificate of Self-Insurance

### 27. Vehicle Damage Rating
In most cases, enter in the format
XX-ABC-Y, where
XX is the Direction of Force (1-12),
ABC is the Damage Description 2- or 3-letter code),
and Y is the Damage Severity (0-7).

In special cases, use:
VB-1 = vehicle burned, NOT due to collision
VB-7 = vehicle catches fire due to the collision
TP-0 = top damage only
VX-0 = undercarriage damage only
MC-1 = motorcycle, moped, scooter, etc.
NA = Not Applicable (Farm Tractor, etc.)

**Texas Peace Officer's Crash Report – Code Sheet**
Numbered Fields on the CR-3 Refer to the Numbered Lists on this Code Sheet. Each list includes the codes that may be entered on the form and the description of each code.

Page 2 of 2
Law Enforcement and TxDOT Use ONLY.
Form CR-3CS 1/1/2010

## COMMERCIAL MOTOR VEHICLE

### 28. Vehicle Operation
1 = Interstate Commerce
2 = Intrastate Commerce
3 = Not in Commerce
4 = Government
5 = Personal

### 29. Carrier ID Type
1 = US DOT
2 = TxDOT
3 = ICC/MC
96 = None
98 = Other (Explain in Narrative)

### 30. Roadway Access
1 = Full Access Control
2 = Partial Access Control
3 = No Access Control

### 31. Vehicle Type
1 = Passenger Car
2 = Light Truck
3 = Bus (9-15)
4 = Bus (>15)
5 = Single Unit Truck 2 Axles 6 Tires
6 = Single Unit Truck 3 or More Axles
7 = Truck Trailer
8 = Truck Tractor (Bobtail)
9 = Tractor/Semi Trailer
10 = Tractor/Double Trailer
11 = Tractor/Triple Trailer
98 = Other (Explain in Narrative)
99 = Unknown Heavy Truck

### 32. Hazardous Material Class Number
1 = Explosives
2 = Gases
3 = Flammable Liquids
4 = Flammable Solids
5 = Oxidizers and Organic Peroxides
6 = Toxic Materials and Infectious Substances
7 = Radioactive Materials
8 = Corrosive Materials
9 = Miscellaneous Dangerous Goods

### 33. Cargo Body Style
1 = Bus (9-15)
2 = Bus (>15)
3 = Van/Enclosed Box
4 = Cargo Tank
5 = Flatbed
6 = Dump
7 = Concrete Mixer
8 = Auto Transporter
9 = Garbage Refuse
10 = Grain Chips Gravel
11 = Pole
13 = Intermodal
14 = Logging
15 = Vehicle Towing Another Vehicle
97 = Not Applicable
98 = Other (Explain in Narrative)

### 34. Trailer Type
1 = Full Trailer
2 = Semi-Trailer
3 = Pole Trailer

### 35. Sequence of Events
1 = Non-Collision: Ran Off Road
2 = Non-Collision: Jackknife
3 = Non-Collision: Overturn Rollover
4 = Non-Collision: Downhill Runaway
5 = Non-Collision: Cargo Loss Or Shift
6 = Non-Collision: Explosion Or Fire
7 = Non-Collision: Separation of Units
8 = Non-Collision: Cross Median/Centerline
9 = Non-Collision: Equipment Failure
10 = Non-Collision: Other
11 = Non-Collision: Unknown
12 = Collision Involving Pedestrian
13 = Collision Involving Motor Vehicle in Transport
14 = Collision Involving Parked Motor Vehicle
15 = Collision Involving Train
16 = Collision Involving Pedalcycle
17 = Collision Involving Animal
18 = Collision Involving Fixed Object
19 = Collision With Work Zone Maintenance Equipment
20 = Collision With Other Movable Object
21 = Collision With Unknown Movable Object
98 = Other (Explain in Narrative)

## FACTORS AND CONDITIONS

### 36. Factors and Conditions
1 = Animal on Road - Domestic
2 = Animal on Road - Wild
3 = Backed without Safety
4 = Changed Lane when Unsafe
14 = Disabled in Traffic Lane
15 = Disregard Stop and Go Signal
16 = Disregard Stop Sign or Light
17 = Disregard Turn Marks at Intersection
18 = Disregard Warning Sign at Construction
19 = Distraction in Vehicle
20 = Driver Inattention
21 = Drove Without Headlights
22 = Failed to Control Speed
23 = Failed to Drive in Single Lane
24 = Failed to Give Half of Roadway
25 = Failed to Heed Warning Sign
26 = Failed to Pass to Left Safely
27 = Failed to Pass to Right Safely
28 = Failed to Signal or Gave Wrong Signal
29 = Failed to Stop at Proper Place
30 = Failed to Stop for School Bus
31 = Failed to Stop for Train
32 = Failed to Yield ROW – Emergency Vehicle
33 = Failed to Yield ROW – Open Intersection
34 = Failed to Yield ROW – Private Drive
35 = Failed to Yield ROW – Stop Sign
36 = Failed to Yield ROW – To Pedestrian
37 = Failed to Yield ROW – Turning Left
38 = Failed to Yield ROW – Turn on Red
39 = Failed to Yield ROW – Yield Sign
40 = Fatigued or Asleep
41 = Faulty Evasive Action
42 = Fire in Vehicle
43 = Fleeing or Evading Police
44 = Followed Too Closely
45 = Had Been Drinking
46 = Handicapped Driver (Explain in Narrative)
47 = Ill (Explain in Narrative)
48 = Impaired Visibility (Explain in Narrative)
49 = Improper Start from Parked Position
50 = Load Not Secured
51 = Opened Door Into Traffic Lane
52 = Oversized Vehicle or Load
53 = Overtake and Pass Insufficient Clearance
54 = Parked and Failed to Set Brakes
55 = Parked in Traffic Lane
56 = Parked without Lights
57 = Passed in No Passing Lane
58 = Passed on Right Shoulder
59 = Pedestrian FTYROW to Vehicle
60 = Unsafe Speed
61 = Speeding – (Over Limit)
62 = Taking Medication (Explain in Narrative)
63 = Turned Improperly – Cut Corner on Left
64 = Turned Improperly – Wide Right
65 = Turned Improperly – Wrong Lane
66 = Turned when Unsafe
67 = Under Influence – Alcohol
68 = Under Influence – Drug
69 = Wrong Side – Approach or Intersection
70 = Wrong Side – Not Passing
71 = Wrong Way – One Way Road
72 = Cell/Mobile Phone Use
73 = Road Rage
98 = Other (Explain in Narrative)

### 37. Vehicle Defects
5 = Defective or No Headlamps
6 = Defective or No Stop Lamps
7 = Defective or No Tail Lamps
8 = Defective or No Turn Signal Lamps
9 = Defective or No Trailer Brakes
10 = Defective or No Vehicle Brakes
11 = Defective Steering Mechanism
12 = Defective or Slick Tires
13 = Defective Trailer Hitch
98 = Other (Explain in Narrative)

### 38. Weather Condition
1 = Clear
2 = Cloudy
3 = Rain
4 = Sleet/Hail
5 = Snow
6 = Fog
7 = Blowing Sand/Snow
8 = Severe Crosswinds
98 = Other (Explain in Narrative)
99 = Unknown

### 39. Light Condition
1 = Daylight
2 = Dark, Not Lighted
3 = Dark, Lighted
4 = Dark, Unknown Lighting
5 = Dawn
6 = Dusk
98 = Other (Explain in Narrative)
99 = Unknown

### 40. Entering Roads
2 = Three Entering Roads – T
3 = Three Entering Roads – Y
4 = Four Entering Roads
5 = Five Entering Roads
6 = Six Entering Roads
7 = Traffic Circle
8 = Cloverleaf
97 = Not Applicable
98 = Other (Explain in Narrative)

### 41. Roadway Type
1 = Two-Way, Not Divided
2 = Two-Way, Divided, Unprotected Median
3 = Two-Way, Divided, Protected Median
4 = One-Way
98 = Other (Explain in Narrative)

### 42. Roadway Alignment
1 = Straight, Level
2 = Straight, Grade
3 = Straight, Hillcrest
4 = Curve, Level
5 = Curve, Grade
6 = Curve, Hillcrest
98 = Other (Explain in Narrative)
99 = Unknown

### 43. Surface Condition
1 = Dry
2 = Wet
3 = Standing Water
4 = Snow
5 = Slush
6 = Ice
7 = Sand, Mud, Dirt
98 = Other (Explain in Narrative)
99 = Unknown

### 44. Traffic Control
2 = Inoperative (Explain in Narrative)
3 = Officer
4 = Flagman
5 = Signal Light
6 = Flashing Red Light
7 = Flashing Yellow Light
8 = Stop Sign
9 = Yield Sign
10 = Warning Sign
11 = Center Stripe/Divider
12 = No Passing Zone
13 = RR Gate/Signal
15 = Crosswalk
16 = Bike Lane
17 = Marked Lanes
18 = Signal Light With Red Light Running Camera
96 = None
98 = Other (Explain in Narrative)

SuppR 027



**NHTSA Recall Number 12T-019**

**Date: July 26, 2012**

**Subject:   SAFETY RECALL NOTICE**

Dear BFGoodrich Tire Owner,

This notice is sent to you in accordance with the requirements of the National Traffic and Motor Vehicle Safety Act.

BFGoodrich®, a brand owned and operated by Michelin North America, Inc., has decided that a defect which relates to motor vehicle safety exists in certain BFGoodrich Commercial T/A® A/S brand replacement tires and they are included in a recall of approximately 800,000 tires from the U.S. market. These tires are typically found on commercial light trucks and full size heavy duty vans.

You are receiving this letter because our records indicate that you may have purchased one or more of the recalled tires. It is possible that any one of the tires being recalled may experience tread loss and/or rapid air loss resulting from tread belt separation. This condition may increase the risk of a vehicle crash.

The following list provides the product descriptions, DOT (Department of Transportation) sequence identifiers and DOT production periods of the recalled tires. This DOT information is molded into the sidewall of each tire. The four dashes at the end of the DOT sequence correspond to the DOT date code that is a 2-digit week and 2-digit year of production, which are given in the DOT production period information. For example, "4305" refers to the 43rd week of the year 2005.

| Tire description | DOT sequence | DOT production periods (inclusive) |
|---|---|---|
| LT235/85 R16  120Q LRE<br>BFGoodrich Commercial T/A A/S | BF0R  JD11  - - - - | 1310 to 2912 |
| LT245/75 R16  120Q LRE<br>BFGoodrich Commercial T/A A/S | BE11  JD11  - - - -<br>BF11  JD11  - - - - | 1310 to 0312<br>1311 to 5211 |

Tires matching these descriptions and DOT sequence identifiers, but produced outside of the identified DOT production time periods, are **not** part of this recall. To determine if you have received tires that are included in this recall, please check the DOT information found on the sidewall of the tire as explained on page 4 of this letter.

It is important that all recalled tires be removed from service as soon as possible. The removed tires will be replaced with a similar product at no cost to you.

To return and replace recalled tires without charge, please visit your BFGoodrich retailer who will assist you. To locate a BFGoodrich retailer, please visit the online dealer locator at www.bfgoodrichtires.com. There is also detailed information about this recall available at:

www.bfgoodrichtires.com/voluntarysafetyrecall.

If you still have questions after visiting the website and your BFGoodrich retailer, please contact BFGoodrich Consumer Care at 1-800-637-5527 between 8:00 a.m. and 8:00 p.m. Eastern Time, Monday-Friday, and between 8:30 a.m. and 4:30 p.m. on Saturday.

If your servicing BFGoodrich retailer fails or is unable to provide the service as described above without charge, you may submit a complaint to the Administrator, National Highway Traffic Safety Administration, 1200 New Jersey Avenue, S.E., Washington, DC 20590 or call the toll-free Auto Safety Hotline at 1-888-327-4236 (TTY 1-800-424-9153); or go to www.safercar.gov.

Commitment to safety, quality and respect for the customer are our highest priorities. Please accept our sincerest apology for any inconvenience that replacing these tires may cause you.

Sincerely,

Mike Wischhusen
Technical Director

**Reimbursement to Consumers for Affected Tire Replacements Prior to Recall**

If you have already paid to have your tires replaced due to the condition associated with this recall, you may be eligible to receive reimbursement.

Requests for reimbursement may include parts, labor, fees and taxes. Reimbursement may be limited to the amount the replacement would have cost if completed by an authorized BFGoodrich retailer. The documentation described below must be presented to the BFGoodrich Consumer Care department for review.

Original or clear copy of all receipts, invoices and/or repair orders that show:

- The name and address of the person who paid for the replacement

- The model name and size of the tire that was replaced along with the DOT codes

- What problem occurred, when the tire was replaced, and who replaced it

- The total cost of the replacement that is being claimed

- Proof of payment (copy of front and back of cancelled check, or copy of credit card receipt)

This documentation should be mailed to the following address:

BFGoodrich Consumer Care Department
P.O. Box 19001
Greenville, SC 29602

If your claim is deemed to be valid, reimbursement will be made by check from Michelin North America. Should your claim be denied, you will receive a letter from Michelin North America within 60 days of receipt giving the reason(s) for denial.

# READING DOT TIRE SIDEWALL MARKINGS

DOT tire sidewall markings serve as the tire's fingerprint and signify compliance with U.S. Department of Transportation Minimum Performance Standards. The DOT markings can be found on the sidewall just above the wheel flange.

To find out if a tire is affected by the recall:

1. Determine if it is one of the following products:

| Tire description | DOT sequence | DOT production periods (inclusive) |
|---|---|---|
| LT235/85 R16 120Q LRE<br>BFGoodrich Commercial T/A A/S | BF0R JD11 - - - - | 1310 to 2912 |
| LT245/75 R16 120Q LRE<br>BFGoodrich Commercial T/A A/S | BE11 JD11 - - - -<br>BF11 JD11 - - - - | 1310 to 0312<br>1311 to 5211 |

If it is not one of these products the tire is not part of the recall.
If it is one of these products, check the DOT information to determine if the tire is affected by the recall as follows.

2. The following illustrations show the DOT information on a sample of the affected tires.
If you have any questions concerning the tire's DOT information, please contact BFGoodrich Consumer Care at 1-800-637-5527.

BFGoodrich Commercial T/A A/S   LT235/85 R16 120Q LRE

DOT sequence begins with  BF0R JD11 - - - -



and ends with a date code (2-digit week and 2-digit year) between
1310 and 2912 inclusive.

# THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

(361) 698-7600

JOHN BLAISE GSANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

September 15, 2014

FROST BANK PLAZA
SUITE 1400    78470
FAX: (361) 698-7614

Tom Bullion
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701
Email: tbullion@germer-austin.com

*Via Facsimile: 512/472-0721*

Re: Date of Crash: August 24, 2014
Your Product: LT 265/75R16 BF Goodrich Rugged Terrain T/A
DOT No: BFW802110611

Dear Tom:

I am writing to you in your capacity as counsel for Michelin North America, Inc.

I am investigating a potential claim on behalf of Robert Coleman and his wife, Kim. Mr. Coleman was involved in an August 24, 2014 crash that resulted from the failure of a BF Goodrich Rugged Terrain T/A tire made in February of 2011 by Michelin in Fort Wayne, Indiana. Mr. Coleman was driving on Texas State Highway 36 when the tread separated from his left front tire, precipitating the crash. I will forward the Texas Peace Officer's crash report for your reference when I receive it.

As part of my investigation, I intend to examine the subject tire. To facilitate this examination, I will dismount the failed tire from the wheel rim. I intend to videotape this process. You and any other representatives from Michelin are welcome to attend. As you can see from the attached photo, the front of the F-250 is displaced to the left. I will also fold back or remove the bumper sufficiently to bring the vehicle into my evidence warehouse. Likewise, this process will be videotaped regardless of whether or not your client or its representative are present.

If you, Michelin, or any affiliated companies wish to have a representative present during this dismounting or bumper displacement, please contact me by 12:00 noon on September 18, 2014. If I have not heard from you or another representative of your client by that time, I will proceed to dismount the tire from the wheel and displace the bumper. Please feel free to contact me either to arrange for viewing of the dismounting or bumper displacement or if you have any questions.

This letter also provides notice of breach of warranty and DTPA claims as well as claims for negligence in the tire manufacturing and design process, negligence in the post-sale duties Michelin undertook, and strict products liability. This letter also intended gives notice of anticipated litigation so that Michelin will preserve all evidence relevant to this matter, including

– but certainly not limited to – the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011, contact information for the tire builders and tire inspectors working at the Fort Wayne plant in February of 2011, the trial testimony and depositions and other witness statements of those who have knowledge of the conditions at the Fort Wayne plant, documentation of roof leaks and repairs at the Fort Wayne plant during 2011, documentation of insect and animal infestation at the Fort Wayne plant in 2011, the training and work procedure materials and videotapes for tire builders and tire inspectors working at the Fort Wayne plant in 2011, the training and work procedure materials for Michelin personnel who reviewed tires made in 2011 and returned under warranty, information about property damage claims and injury or death claims involving 16 inch light truck tires, information Michelin reported to any government agency about 16 inch light truck tires, documentation of Michelin's destruction of the Light Truck Task Force documents at a time when light truck claims against Michelin were pending, marketing literature for 16 inch light truck tires sold by Michelin, the complete reaction limits and tolerances and complete tire building manual and aspect classifications and decision trees applicable to BF Goodrich Rugged Terrain T/A tires made at the Fort Wayne plant, the specifications for 265/75R16 tires made by Michelin in 2011 and the alternative design specifications for other tires made by Michelin in 2011 with additional durability-enhancing or tread-separation reducing design features which were omitted from the LT 265/75R16 BF Goodrich Rugged Terrain T/A's design.

Best regards,

THE EDWARDS LAW FIRM

John Gsanger

P.S. I am happy to have you inspect the tire as often as you wish and for as long as you wish provided that this original evidence remains in my custody while your client inspects it pursuant to Rule 196.3(b) of the Texas Rules of Civil Procedure. From past experience, I know you would prefer to take custody of the tire to have it inspected at an unknown location by unidentified persons according to an undisclosed protocol. I cannot agree to that, but I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

Tom Bullion
GERMER BEAMAN & BROWN, LLP
September 15, 2014
Page -2-


cc:
Giles M. Schanen                                           *Via Facsimile: 864/250-2375*
NELSON MULLINS RILEY & SCARBOROUGH LLP
Poinsett Plaza
104 South Main Street, Greenville, SC 29601
Email: giles.schanen@nelsonmullins.com

SuppR 034



| | | |
|---|---|---|
| KOLLYE KILPATRICK, et al., | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| | § | |
| AND | § | |
| | § | |
| ROBERT DWAYNE COLEMAN, et al., | § | |
| Intervening Cross-Claimant and Plaintiffs, | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MICHELIN NORTH AMERICA, INC., et al., | § | |
| | § | |
| | § | |
| Defendants. | § | 152nd JUDICIAL DISTRICT |

---

**INTERVENORS' RESPONSE TO MICHELIN'S MOTION TO INSPECT THE FAILED TIRE BY UNKNOWN PERSONS ACCORDING TO AN UNDISCLOSED PROTOCOL AND REQUEST THAT MICHELIN PRESERVE AND DOCUMENT EVIDENCE**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Robert Coleman and his sons Blayne Cook and Cameron Cook, minors, by and through their mother and next friend Kim Coleman (collectively "the Coleman family") and file Intervenors' Response To Michelin's Motion To Inspect The Failed Tire By Unknown Persons According To An Undisclosed Protocol and would show the Court as follows:

## I. Background

This is a case involving permanent injuries to Robert Coleman and his sons as the result crash caused by the tread separation failure of a tire made by Michelin in February of 2011 at its tire plant in Fort Wayne, Indiana. The failed tire is an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire (DOT BFW802110611) in the custody of the Coleman family.

1

SuppR 036

On September 15, 2014, the Coleman family invited Michelin to inspect the failed tire and asked Michelin to discuss an inspection protocol that would encompass the inspection of the failed tire as well as an inspection of Michelin's tire building machines used to build the tire:

> I am happy to have you inspect the tire as often as you wish and for as long as you wish provided that this original evidence remains in my custody while your client inspects it pursuant to Rule 196.3(b) of the Texas Rules of Civil Procedure. From past experience, I know you would prefer to take custody of the tire to have it inspected at an unknown location by unidentified persons according to an undisclosed protocol. I cannot agree to that, but I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

*Ex. 1.*

Again, on December 10, the Coleman family reiterated this offer to allow Michelin to inspect the tire:

> I understand that your client will want to inspect the original tire evidence rather than a mere copy or photographs of the tire. See Tex. R. Civ. P. 196.3(b). I am happy to produce the original tire as it is kept in the ordinary course of business for inspection either at my office or at my warehouse. Moreover, I am happy for you, Mr. Bullion, your client, and your client's representatives to inspect the tire as often as you want and for as many different inspections as you may want, but preservation of this key piece of evidence in my clients' possession custody and control is of paramount importance. Accordingly, please see the attached inspection protocol previously agreed in this matter. If this protocol is acceptable, please ask Mr. Bullion to sign the agreement below Rob Ammons' signature.

*Ex. 2.*

Michelin has refused even to discuss terms for a protocol for the tire inspection or for preservation of the tire building machines. Unlike Michelin's refusal to agree upon a protocol for the inspection of the tire in the Coleman family's possession, the Coleman family offered a

2

SuppR 037

detailed protocol as part of their request to view the tire building machines in Michelin's possession:

Robert Coleman requests one hour of limited access to particular tire building machines at Continental's Mt. Vernon, Illinois facility at a mutually agreed time and date within 60 days from the date of this request. Robert Coleman requests that his only representatives allowed to attend the observation should be his attorneys, his tire failure analysis experts, and a videographer selected by Robert Coleman. Robert Coleman proposes that all who attend the observation should sign whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts. Robert Coleman proposes that each side should bear its own costs. Robert Coleman proposes that the observation should include the machine or machines used to place the innerliner on the tire building drum and to assemble the belts and nylon reinforcement into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant (or, in the alternative, observation of the most similar tire building machines to be identified by Michelin if the specific tire building machines on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 cannot be identified). Robert Coleman proposes that the observation should include visually inspecting and videotaping the machines while they are in use building light truck car tires, and the scope of the observation should not include any sampling or destructive testing and should include nothing more than a visual observation – including recording by videotape – and be limited to one hour of observation and videotaping the machines while they are in use. Robert Coleman proposes that the observation should include:

(a) 15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(b) 15 minutes of observation of the second stage tire building process conducted in a manner as near as is practical to the second stage tire building processes implemented in LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(c) 15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts in at least two layers and covering a greater portion of the belt package as compared to the portion of the belt package covered by nylon in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 is

3

SuppR 038

being applied to a light truck car tire as similar as practical to LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant, and

(d) 15 minutes of observation of the second stage tire building process where Filament at Zero is being applied to a light truck tire car tire as similar as practical to a LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011.

Robert Coleman proposes that the videotaping should occur while these machines are in normal use. Robert Coleman proposes that his counsel, his tire failure experts, and his videographer who would attend the observation should be identified within seven days of when the inspection protocol is agreed or ordered by the court and should present photographic identification in the form of a driver's license or similar government issues identification before entering the plant, and that all such attendees should wear visitor badges the entire time they are in the plant (if Michelin requests), should be accompanied and escorted by Michelin's personnel at all times they are in the plant (if Michelin requests), should wear hardhats and safety glasses and ear protection and steel toed boots during the observation (if Michelin requests), should not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and should not attempt to speak with any plant personnel except for their escorts. Robert Coleman proposes that his representatives should not be allowed to videotape any other area of the plant except the tire building machines being observed and should not bring recording or photographing or videotaping devices other than the videographer's equipment to the observation. Robert Coleman proposes that Michelin should be allowed to take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Robert Coleman proposes that Michelin should be allowed to conduct its own videotaping of the inspection. Robert Coleman proposes that Michelin should be allowed to all videotapes should be copied and provided to the other side within 10 days after the observation of the tire building machines. Robert Coleman proposes that the videotapes as well as any documentation of the equipment and processes recorded during the inspection should be governed by whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts.

*Ex. 3.*

4

SuppR 039

## II. Argument and Authority

The Coleman family previously produced the original evidence for inspection at his counsel's office in the place and manner in which it is kept in the usual course of business, as is expressly authorized by Rule 196.3:

> Time and place of production. Subject to any objections stated in the response, the responding party **must produce the requested** documents or **tangible things** within the person's possession, custody or control at either the time and place requested or **the time and place stated in the response**, unless otherwise agreed by the parties or ordered by the court, and must provide the requesting party a reasonable opportunity to inspect them.... **If originals are produced, the responding party is entitled to retain the originals while the requesting party inspects and copies them....** The responding party must either **produce** documents and **tangible things as they are kept in the usual course of business** or organize and label them to correspond with the categories in the request.

Tex. R. Civ. P. 196.3(a), (b), (c) (emphasis added). The Coleman Family asks this Court to protect his right "to retain the originals while the requesting party inspects" as expressly set forth in Rule 196.3. The Coleman Family also asks this Court to compel production of the tire building machines for inspection in the same manner authorized by Rule 196.3.

### A. The Coleman Family Requests to Have a Representative Present During Inspection of the Evidence in Their Custody

Allowing a defendant to privately test or inspect a plaintiff's evidence outside of the plaintiff's presence violates Texas Rules of Civil Procedure 196.3(b). In prior tire cases involving the Coleman family's counsel, other courts have provided a means for the plaintiffs to ensure that the tire was not lost, damaged or altered during inspection. *See Idar v. Cooper Tire & Rubber Co.*, No. 2:10-CV-00217 (S.D. Tex. 2010) (*Ex. 6* - agreed tire inspection order requiring videotape of inspection and production of videotape); *Martinez v. Cooper Tire & Rubber Co.*, No. C-1872-10-J (430th Jud. Dist. Court, Hidalgo County, Tex. 2010) (*Ex. 7* - tire

5

inspection order requiring videotape of inspection and production of videotape); *see also Sostenes v. Bridgestone Corp.*, No. 08-L-7574 (Ill. Cir. Ct., Mar. 5, 2010) (*Ex. 9* - tire inspection order allowing plaintiffs' attorney to attend and videotape inspection at plaintiffs' attorneys' facilities); *Heavrin v. Bridgestone Corp.*, No. 06CV5909 (Ga. St. Ct. 2008) (denying Defendant's motion to compel tire inspection "in secret and without plaintiffs' counsel and/or consultant present during this process"); *Hanson v. Ford Motor Co.*, No. TC019911 (Cal. Super. Ct., Dec. 6, 2007) (requiring tire company's inspection to be "open to attendance by representatives" of plaintiff); *Middleton v. Cooper Tire & Rubber Co.*, No. 99-CP-25-214, S.C. Ct. C.P. Hampton Co., Dec. 15, 2000 Order (denying defendant request to inspect tire "in secret and without plaintiffs' counsel and/or consultant(s) present during this process. The Court finds that the subject tire is the property of Plaintiffs, is critical evidence in the case, and that Plaintiffs have a right to be present while their property is being examined."); *Poyer v. Wegman's*, 662 N.Y.S.2d 153, 154 (N.Y. App. Div. 1997) (noting that plaintiffs in a product liability case should be "permitted to have a representative present at all stages of the testing to ensure [the evidence's] integrity"); *Miller v. Goodyear Tire & Rubber Co.*, 40 pa. D. & C.3d 430, 431 (Pa. Ct. C.P. Luzerne Co. 1985) ("although defendant has a right to inspect and test such items of physical evidence, this does not compel plaintiffs to surrender custody or control of the items and reasonable restrictions or conditions may be imposed upon defendant to allow plaintiffs to monitor their whereabouts during the inspections and testing."); *Klick v. R.D. Werner Co., Inc.*, 348 N.E.2d 314, 316-17 (Ill. App. Ct. 1976) ("The object to be tested is plaintiff's evidence, and he has the right and duty to his client to control it so it will not be damaged or tampered with in any way."); *Davis v. Firestone Tire & Rubber Co.*, 72 Pa. D. & C.2d 242, 242 (Pa. Ct. C.P.

SuppR 041

Philadelphia Co. 1975) (refusing to allow Firestone to conduct a secret inspection of the tire outside of plaintiff's counsel's presence).

The *American Law of Products Liability 3d Treatise* confirms that the imposition of safeguards to ensure the integrity of the original evidence is well-established:

> In permitting the nondestructive inspection and testing of products, the courts have typically imposed a number of conditions on the inspection and testing, normally to protect the rights of the party who will be required to produce the product for discovery. Accordingly, one of the most common conditions imposed is that the party with custody and control of the product be given the opportunity to be present during the inspection or testing of the product by the opposing party or to have his or her expert, attorney, or representative present during the inspection or testing. The examining party may also be required, as a condition of any testing, to give reasonable notice of the time and place of the testing to the opposing party and to deliver to the opposing party, upon its request, copies of the reports of all tests and analyses of the product made by or on behalf of the examining party.
>
> In other products liability actions, the courts, in permitting the inspection or testing of a product, have required, among other things, that—
> - the examination or testing not adversely affect the product.
> - the expert and representative of the party required to produce the product have the right to photograph the product before and after each stage of any test conducted.
> - the inspection and testing be completed within a specified time.
> - the defendant assume the plaintiffs reasonable expenses of having a qualified representative present at the defendant's inspection of the product at the defendant's facility and that the expenses be considered a taxable disbursement by the defendant if it ultimately succeeded in the action.

Am. L. Prod. Liab. 3d § 53:107 (Updated 2010) (citing *Stearn v. Ford Motor Co.*, 123 A.D.2d 856, 507 N.Y.S.2d 470 (2d Dep't 1986); *DiGiovanni v. Pepsico, Inc.*, 120 A.D.2d 413, 502 N.Y.S.2d 23 (1st Dep't 1986); *Fullone v. Goodyear Tire and Rubber Co.*, 107 F.R.D. 1, 1 Fed. R. Serv. 3d 338 (W.D.N.Y. 1985); *Klick v. R. D. Werner Co.*, 38 111. App. 3d 575, 348 N.E.2d 314 (1st Dist. 1976); *Canter v. American Cyanamid Co.*, 6 A.D.2d 847, 174 N.Y.S.2d 983 (1958);

7

*Merriam Display Supply Studio v. Harlambides*, 196 Misc. 352, 91 N.Y.S.2d 901 (Mun. Ct. 1949)).

**B. Compromise Tire Inspection Protocols Proposed by The Coleman Family**

Despite the clear authority giving the Coleman family the right to retain custody of his evidence and to have a representative present at any inspection of the evidence in his possession, the Coleman family would agree to inspection protocols agreed with other tire companies or those ordered by other courts. *Ex. 6-13.*

Counsel for the Coleman family is motivated to seek these protections because of counsels' past experiences in other tire cases where inspections of the tire caused damage to the tire that had a significant impact on the case. *See Ex. 14.* In *Martha Rodriguez, et al. v. Firestone Tire & Service Centers et al.,* No. C-115396 (244th Dist. Ct. Ector County Tex.), one defendant's expert claimed that another defendant's expert damaged the bead of the tire dismounting and mounting it after the crash, and this dispute affected the evaluation and trial of the case. *Id.* In *Kimberly Dee Hargrove et al. v. Hankook Tire America Corp. et al.,* No. 42940 (118th Dist. Ct. Howard County Tex.), the plaintiffs' retained expert found no tear in the tire carcass which penetrated the tire's innerliner, and the defense's retained expert found no tear in the tire carcass which penetrated the tire's innerliner, but the third and final inspection by defendant's in-house forensic analyst found a tear in the carcass which penetrated the innerliner. The defense claimed to have found this innerliner puncture – which experts for both sides did not detect in their earlier inspections – by probing a tear in the carcass with a unbent paper clip to explore if that tear penetrated through the innerliner. The question whether the defendant found the innerliner puncture with this probing or created the puncture with this probing became the issue that dominated the case from that point forward. *Id.* In *Sara Cruz et al. v. Michelin North*

8

*America et al.,* No. 2007-CV-0141-A (197th Dist. Ct. Willacy County Tex.), the defense expert identified red paint marks on the detached tire tread as a paint mark transferred from the vehicle to the tire during the crash sequence, and the defense expert then used this transfer mark as evidence to support the defense of the case. Analysis of the photographs taken before the detached tread was shipped to the defendant confirmed that the red paint mark was not on the tread at that time, and analysis of the red paint on the tire as compared with the paint on the red truck confirmed that the two paints were chromatically similar but chemically different. This issue became a significant and time consuming distraction. *Id.* In *Bertha Orozco et al. v. Michelin North America et al.,* No. 06-02-0007-CYL (81st Dist. Ct. La Salle County Tex.), a tire was lost in shipping on its return to the plaintiffs' counsel's office. *Id.* These are just a few examples of the difficulties that can arise from a defense inspection of a tire that is conducted without proper safeguards of the evidence, and counsel for The Coleman Family has personal experience with each of these cases as plaintiffs' counsel. *Id.*

## C. The Coleman Family Requests Michelin's to Preserve The Tire Building Machines

A party has a duty to preserve evidence "when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Wal-Mart Stores v. Johnson,* 106 S.W. 3d 718, 722 (Tex. 2003). Specifically, "a party's duty to preserve arises as soon as the party has notice that evidence in its possession or control may be relevant to the litigation," and this duty encompasses evidence "*potentially* relevant to the claims being asserted." *Adobe Land Corp. v. Griffin, L.L.C.,* 236 S.W.3d 351, 359 (Tex. App.—Fort Worth 2007, pet. denied) (emphasis by the court, citing *Wal-Mart,* 106 S.W. 3d at 722); *see also Miner Dederick Const., LLP v. Gulf Chemical & Metallurgical Corp.,* 403 S.W.3d 451 (Tex. App.—Houston [1st Dist.] 2013, pet.

9

filed) (discussing duty to preserve "potentially relevant evidence"); *Clark v. Randalls Food*, 317 S.W.3d 351, 358 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (discussing duty to preserve "potentially relevant evidence").

On September 15, 2014, Coleman gave Michelin written notice that a claim would be filed and requested Michelin to preserve the evidence in its possession or control relevant to that claim, including the tire building machines used to build the tire. *See Ex. 1.* On December 10, the Coleman family asked Michelin to propose a protocol for a visual observation of the tire building machines. *Ex 2.* Michelin has refused to even discuss the current status of those first and second stage tire building machines used to assemble LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant. Accordingly, the Coleman family now moves this Court to enter an order requiring Michelin to document the current status of first and second stage tire building machines used to assemble LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant and to preserve that evidence in the same manner as would apply to any evidence in West's possession. By this specific request, the Coleman family is not seeking production of documentation about the current status of first and second stage tire building machines used to assemble LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant; the Coleman family is just seeking to have Michelin document and preserve that evidence.

### III. Conclusion and Prayer for Relief

The Coleman family is entitled to have a representative present during inspection of evidence in his custody. Accordingly, the Coleman family respectfully requests this Court deny Michelin's motion to compel a custodial inspection of the failed tire according to an undefined

10

protocol. Furthermore, the Coleman family prays that this Court order Michelin to conduct the inspection of the tire under the conditions specified in *Idar v. Cooper Tire & Rubber Co.*, No. 2:10-cv-00217 (S.D. Tex. 2010) or, in the alternative, according to the tire inspection protocols ordered in *Martinez v. Cooper Tire and Rubber.*, No. C-1872-10-J (430th Jud. Dist. Tx., Hidalgo County 2010) (requiring Cooper to "videotape, at their expense the subject tire" during its inspection and "provide a copy of the videotape to Plaintiff's counsel at the time they return the tire", which must be within 60 days of its receipt), or *Sostenes v. Bridgestone Corp.*, No. 08-L-7574 (Ill. Cir. Ct., Mar. 5, 2010). Additionally, the Coleman family requests that this Court grant his request to require Michelin to document the current state of the tire building machines at issue.

Respectfully submitted this 24 day of December, 2014.

Respectfully submitted,

**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone No. (361) 698-7600
Facsimile No. (361) 698-7614

By:   /s/ John Blaise Gsanger
      John Blaise Gsanger
      State Bar No. 00786662
      jgsanger@edwardsfirm.com
      Gary Scott Marshall
      State Bar No. 24077207
      smarshall@edwardsfirm.com
      ATTORNEYS FOR INTERVENING PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded to the following counsel in the manner indicated on the 24th day of December, 2014.

11

*Facsimile: (512) 472-0721*
Thomas M. Bullion III
Germer Beaman & Brown, L.L.P.
301 Congress Avenue, Suite 1700
Austin, Texas 78701

*Facsimile: (713) 523-4159*
Robert E. Ammons
The Ammons Law Firm, LLP
3700 Montrose Boulevard
Houston, Texas 77006

*Facsimile: (800) 637-1955*
Timothy D. Riley
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007-2502

*Facsimile: (254) 751-9133*
Michael Bourland
Witt, McGregor & Bourland, P.L.LC.
8004 Woodway Drive, Suite 400
Waco, Texas 76712-3648

/s/ John Blaise Gsanger
Counsel for Plaintiffs

12

SuppR 047

# THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

(361) 698-7600

JOHN BLAISE GSANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

September 15, 2014

FROST BANK PLAZA
SUITE 1400    78470
FAX: (361) 698-7614

Tom Bullion
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701
Email: tbullion@germer-austin.com

*Via Facsimile: 512/472-0721*

Re:    Date of Crash: August 24, 2014
       Your Product: LT 265/75R16 BF Goodrich Rugged Terrain T/A
       DOT No: BFW802110611

Dear Tom:

I am writing to you in your capacity as counsel for Michelin North America, Inc.

I am investigating a potential claim on behalf of Robert Coleman and his wife, Kim. Mr. Coleman was involved in an August 24, 2014 crash that resulted from the failure of a BF Goodrich Rugged Terrain T/A tire made in February of 2011 by Michelin in Fort Wayne, Indiana. Mr. Coleman was driving on Texas State Highway 36 when the tread separated from his left front tire, precipitating the crash. I will forward the Texas Peace Officer's crash report for your reference when I receive it.

As part of my investigation, I intend to examine the subject tire. To facilitate this examination, I will dismount the failed tire from the wheel rim. I intend to videotape this process. You and any other representatives from Michelin are welcome to attend. As you can see from the attached photo, the front of the F-250 is displaced to the left. I will also fold back or remove the bumper sufficiently to bring the vehicle into my evidence warehouse. Likewise, this process will be videotaped regardless of whether or not your client or its representative are present.

If you, Michelin, or any affiliated companies wish to have a representative present during this dismounting or bumper displacement, please contact me by 12:00 noon on September 18, 2014. If I have not heard from you or another representative of your client by that time, I will proceed to dismount the tire from the wheel and displace the bumper. Please feel free to contact me either to arrange for viewing of the dismounting or bumper displacement or if you have any questions.

This letter also provides notice of breach of warranty and DTPA claims as well as claims for negligence in the tire manufacturing and design process, negligence in the post-sale duties Michelin undertook, and strict products liability. This letter also intended gives notice of anticipated litigation so that Michelin will preserve all evidence relevant to this matter, including



EXHIBIT

1

tabbies

SuppR 048

– but certainly not limited to – the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011, contact information for the tire builders and tire inspectors working at the Fort Wayne plant in February of 2011, the trial testimony and depositions and other witness statements of those who have knowledge of the conditions at the Fort Wayne plant, documentation of roof leaks and repairs at the Fort Wayne plant during 2011, documentation of insect and animal infestation at the Fort Wayne plant in 2011, the training and work procedure materials and videotapes for tire builders and tire inspectors working at the Fort Wayne plant in 2011, the training and work procedure materials for Michelin personnel who reviewed tires made in 2011 and returned under warranty, information about property damage claims and injury or death claims involving 16 inch light truck tires, information Michelin reported to any government agency about 16 inch light truck tires, documentation of Michelin's destruction of the Light Truck Task Force documents at a time when light truck claims against Michelin were pending, marketing literature for 16 inch light truck tires sold by Michelin, the complete reaction limits and tolerances and complete tire building manual and aspect classifications and decision trees applicable to BF Goodrich Rugged Terrain T/A tires made at the Fort Wayne plant, the specifications for 265/75R16 tires made by Michelin in 2011 and the alternative design specifications for other tires made by Michelin in 2011 with additional durability-enhancing or tread-separation reducing design features which were omitted from the LT 265/75R16 BF Goodrich Rugged Terrain T/A's design.

Best regards,

THE EDWARDS LAW FIRM

John Gsanger

P.S. I am happy to have you inspect the tire as often as you wish and for as long as you wish provided that this original evidence remains in my custody while your client inspects it pursuant to Rule 196.3(b) of the Texas Rules of Civil Procedure. From past experience, I know you would prefer to take custody of the tire to have it inspected at an unknown location by unidentified persons according to an undisclosed protocol. I cannot agree to that, but I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

SuppR 049

Tom Bullion
GERMER BEAMAN & BROWN, LLP
September 15, 2014
Page -2-


cc:
Giles M. Schanen                                          *Via Facsimile: 864/250-2375*
NELSON MULLINS RILEY & SCARBOROUGH LLP
Poinsett Plaza
104 South Main Street, Greenville, SC 29601
Email: giles.schanen@nelsonmullins.com

SuppR 050



SuppR 051

# THE EDWARDS LAW FIRM
### ATTORNEYS AT LAW
P. O. BOX 480
CORPUS CHRISTI, TEXAS 78403-0480
(361) 698-7600

JOHN BLAISE GSANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

FROST BANK PLAZA
SUITE 1400 78470
FAX: (361) 698-7614

December 10, 2014

**VIA FACSIMILE: (512) 472-0721**
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701
Email: tbullion@germer-austin.com

Re: Cause No. 2014-57952; *Kollye Kilpatrick, Individually as Heir at Law and Representative of the Estate of Beverly Ann Kilpatrick, deceased; Eric Kilpatrick; and Karen Kilpatrick v. Michelin North America, Inc. and Robert Dwayne Coleman*; In the 152nd Judicial District, Harris County, Texas.

Dear Kathy:

Michael Bourland and Tim Riley forwarded a copy of your December 9 letter about inspecting the failed Coleman tire to me.

As I mentioned in my prior correspondence with Tom Bullion (attached), I have been investigating the August 24 crash resulting from the failure of the LT265/75R16 BF Goodrich Rugged Terrain T/A tire bearing DOT No. BFW802110611.

I understand that your client will want to inspect the original tire evidence rather than a mere copy or photographs of the tire. See Tex. R. Civ. P. 196.3(b). I am happy to produce the original tire as it is kept in the ordinary course of business for inspection either at my office or at my warehouse. Moreover, I am happy for you, Mr. Bullion, your client, and your client's representatives to inspect the tire as often as you want and for as many different inspections as you may want, but preservation of this key piece of evidence in my clients' possession custody and control is of paramount importance. Accordingly, please see the attached inspection protocol previously agreed in this matter. If this protocol is acceptable, please ask Mr. Bullion to sign the agreement below Rob Ammons' signature.

As I mentioned back in September, I wish to inspect (1) the tire inspection room and the final finish tire inspection process at the Ford Wayne tire plant where the tire was made as well as (2) the tire building machines which were used to assemble the innerliner and the steel belts with their nylon reinforcement into the failed Coleman tire bearing DOT No. BFW802110611. Please send me a proposed protocol for the inspection of the final finish inspection room, the final finish inspection process, and two tire building machines (the first stage machine used to assemble the innerliner and the second stage machine used to assemble the belt package).

Best regards,

THE EDWARDS LAW FIRM

John Gsanger

EXHIBIT
2

Tom Bullion
GERMER BEAMAN & BROWN, LLP
December 10, 2014
Page -2-


cc:

**VIA FACSIMILE: (800) 637-1955**
Tim Riley
Riley Law Firm
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007

**VIA FACSIMILE: (254) 751-9134**
Michael Bourland
Witt, McGregor & Bourland, PLLC
8004 Woodway Drive, Suite 400
Waco, Texas 76712

**VIA FACSIMILE: (713) 523-4159**
Rob Ammons
Bennett Midlo
The Ammons Law Firm
3700 Montrose Blvd.
Houston, Texas 77006

SuppR 053

JOHN BLAISE GSANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

September 15, 2014

FROST BANK PLAZA
SUITE 1400   78470
FAX: (361) 698-7614

Tom Bullion
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701
Email: tbullion@germer-austin.com

*Via Facsimile: 512/472-0721*

Re:    Date of Crash: August 24, 2014
        Your Product: LT 265/75R16 BF Goodrich Rugged Terrain T/A
        DOT No: BFW802110611

Dear Tom:

I am writing to you in your capacity as counsel for Michelin North America, Inc.

I am investigating a potential claim on behalf of Robert Coleman and his wife, Kim. Mr. Coleman was involved in an August 24, 2014 crash that resulted from the failure of a BF Goodrich Rugged Terrain T/A tire made in February of 2011 by Michelin in Fort Wayne, Indiana. Mr. Coleman was driving on Texas State Highway 36 when the tread separated from his left front tire, precipitating the crash. I will forward the Texas Peace Officer's crash report for your reference when I receive it.

As part of my investigation, I intend to examine the subject tire. To facilitate this examination, I will dismount the failed tire from the wheel rim. I intend to videotape this process. You and any other representatives from Michelin are welcome to attend. As you can see from the attached photo, the front of the F-250 is displaced to the left. I will also fold back or remove the bumper sufficiently to bring the vehicle into my evidence warehouse. Likewise, this process will be videotaped regardless of whether or not your client or its representative are present.

If you, Michelin, or any affiliated companies wish to have a representative present during this dismounting or bumper displacement, please contact me by 12:00 noon on September 18, 2014. If I have not heard from you or another representative of your client by that time, I will proceed to dismount the tire from the wheel and displace the bumper. Please feel free to contact me either to arrange for viewing of the dismounting or bumper displacement or if you have any questions.

This letter also provides notice of breach of warranty and DTPA claims as well as claims for negligence in the tire manufacturing and design process, negligence in the post-sale duties Michelin undertook, and strict products liability. This letter also intended gives notice of anticipated litigation so that Michelin will preserve all evidence relevant to this matter, including

— but certainly not limited to — the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011, contact information for the tire builders and tire inspectors working at the Fort Wayne plant in February of 2011, the trial testimony and depositions and other witness statements of those who have knowledge of the conditions at the Fort Wayne plant, documentation of roof leaks and repairs at the Fort Wayne plant during 2011, documentation of insect and animal infestation at the Fort Wayne plant in 2011, the training and work procedure materials and videotapes for tire builders and tire inspectors working at the Fort Wayne plant in 2011, the training and work procedure materials for Michelin personnel who reviewed tires made in 2011 and returned under warranty, information about property damage claims and injury or death claims involving 16 inch light truck tires, information Michelin reported to any government agency about 16 inch light truck tires, documentation of Michelin's destruction of the Light Truck Task Force documents at a time when light truck claims against Michelin were pending, marketing literature for 16 inch light truck tires sold by Michelin, the complete reaction limits and tolerances and complete tire building manual and aspect classifications and decision trees applicable to BF Goodrich Rugged Terrain T/A tires made at the Fort Wayne plant, the specifications for 265/75R16 tires made by Michelin in 2011 and the alternative design specifications for other tires made by Michelin in 2011 with additional durability-enhancing or tread-separation reducing design features which were omitted from the LT 265/75R16 BF Goodrich Rugged Terrain T/A's design.

Best regards,

THE EDWARDS LAW FIRM

John Gsanger

P.S. I am happy to have you inspect the tire as often as you wish and for as long as you wish provided that this original evidence remains in my custody while your client inspects it pursuant to Rule 196.3(b) of the Texas Rules of Civil Procedure. From past experience, I know you would prefer to take custody of the tire to have it inspected at an unknown location by unidentified persons according to an undisclosed protocol. I cannot agree to that, but I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

SuppR 055

Tom Bullion
GERMER BEAMAN & BROWN, LLP
September 15, 2014
Page -2-


cc:
Giles M. Schanen                                              *Via Facsimile: 864/250-2375*
NELSON MULLINS RILEY & SCARBOROUGH LLP
Poinsett Plaza
104 South Main Street, Greenville, SC 29601
Email: giles.schanen@nelsonmullins.com

SuppR 056



SuppR 057

COPY

# THE EDWARDS LAW FIRM

ATTORNEYS AT LAW
P. O. BOX 480
CORPUS CHRISTI, TEXAS 78403-0480
(361) 698-7600

September 9, 2014

FROST BANK PLAZA
SUITE 1400   78470
FAX: (361) 698-7614

JOHN BLAISE GRANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

Rob Ammons
Bennett Midlo
The Ammons Law Firm
3700 Montrose Blvd.
Houston, Texas 77006

RE:    Kilpatrick / Coleman v. MNA
       Inspection protocol re: 2001 Ford F-250; #1FTNW20F21EB58963
       Date of Crash: August 24, 2014

Dear Mr. Ammons:

As we have discussed, the failed tire is a key component of the evidence in this case and maintaining the integrity of this evidence is of utmost importance. We have discussed your proposed inspection protocol in detail and agreed that a representative of Robert Coleman may be present at the inspection and may photograph or videotape the tire during inspection and further agreed that it is a visual and photographic inspection only and the only tools eligible to be used on the tire include a tire crayon or pen, a tread depth gauge, a durometer, and a laser profiler (other inspection methods and other devices to be used on the tire are prohibited unless videotaped and agreed in writing in advance). Please sign this letter to indicate that you understand and agree to these terms regarding your inspection of the subject tire, tire pieces, and wheel:

1.  You will take extraordinary care to preserve the tire and any tire pieces and wheel in their current condition.

2.  You will not conduct destructive testing of the tire or tire pieces or wheel.

3.  You will not wash the tire or use any solvents on the tire or tire pieces (the only potential exception to this rule would be in the event of future dismounting or re-mounting of the tire which you are not permitted to perform at this time and – if it is agreed at any point in the future – your dismount or re-mount will be pursuant to paragraph 11, below).

4.  You will not remove samples from the tire or tire pieces.

5.  You will not attempt to re-inflate or otherwise pressurize the tire or any part of the tire with air, oxygen, nitrogen, or any other gas (if you want to leak test any portion of the tire, you will need to let me know in advance and videotape that process after getting my written approval of the procedure to be used and any potential shearography will br governed by paragraph 9, below).

6.  You will not alter the tire or tire pieces (only tire pen or crayon marks for measurements purposes are acceptable).

7.  You will not use metal tools or other hard objects on the tire or tire pieces (only a tread depth gauge or durometer or laser profiler are acceptable and those tools may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

SEP 0 9 2014

SuppR 058

8. You will not use a tire spreader or other tools to spread or pull apart any part of the tire (if you want to use a tire spreader you must get my advance written approval of the spreader you intend to use and any such spreader may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

9. You will not conduct shearography on the tire (if you want to shearograph the tire, you will need to obtain my advance written approval of the facility and methods to be used and such methods may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

10. You will not x-ray on the tire or tire pieces (if you want to x-ray the tire and tire pieces, you will need to obtain my advance written approval of the facility and methods to be used and such methods may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

11. You will not attempt to dismount or re-mount the tire (if you want to dismount or re-mount the tire, you will need to discuss the proposed protocol with me first, you will need to obtain my written approval in advance, and you will need to videotape the process and such processes may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

12. You will not peel back laminated structures on the tire or tire pieces (if you have any questions, call me first before proceeding and must not proceed without advance written approval).

13. You will not probe the tire or tire pieces with pointed instruments (this is not to preclude measurements of the tread depth).

14. You will not ship the tire with Styrofoam peanuts or other Styrofoam or plastic packing filler and will not ship the tire with any tire pieces stored in the tire cavity.

15. If the tire and tire pieces or wheel rim leave my possession by written agreement, you and your client will be responsible for the tire and tire pieces and wheel rim from the time they leave my possession until they are received by my office upon its return from you or your client.

This protocol is intended to augment our prior agreement about the evidence in this case, and it is not intended that there should be any conflict between this agreement and that prior agreement. Any such conflict (if one exists) should be resolved by deferring to the prior agreement. Please return a signed copy of this agreement to my office.

Best regards,

The Edwards Law Firm

John Blaise Gsanger

AGREED

By: _____   by permission
Rob Ammons

| | | |
|---|---|---|
| KOLLYE KILPATRICK, Individually as Heir at Law and Representative of the Estate of BEVERLY ANN KILPATRICK, Deceased; ERIC KILPATRICK; and KAREN KILPATRICK<br>  Plaintiffs,<br><br>AND<br><br>ROBERT DWAYNE COLEMAN, Individually, and KIMBERLY COLEMAN as Next Friend of BLAYNE MICHAEL COOK and CAMERON BAILEY COOK, minors,<br>  Intervening Plaintiffs and Cross-Claimant,<br><br>VS.<br><br>MICHELIN NORTH AMERICA, INC., BF GOODRICH in its assumed or common name, and ROBERT DWAYNE COLEMAN<br>  Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT<br><br><br><br><br>HARRIS COUNTY, TEXAS<br><br><br><br>152nd JUDICIAL DISTRICT |

## INTERVENING COLEMANS' REQUEST FOR DISCLOSURE, FIRST REQUESTS FOR ADMISSION, INTERROGATORY, AND REQUESTS FOR PRODUCTION TO DEFENDANT, MICHELIN NORTH AMERICA, INC.

*TO:  Defendant, MICHELIN NORTH AMERICA, INC., by and through its attorney Thomas M. Bullion III, Germer Beaman & Brown, L.L.P. 301 Congress Avenue, Suite 1700 Austin, Texas 78701*

COME NOW Intervening Cross-Claimant and Plaintiffs, Robert Dwayne Coleman Individually and Kim Coleman as Next Friend of Blayne Michael Cook and Cameron Bailey Cook, minors, (hereinafter, "The Coleman Family") in the above-styled and numbered cause and file the following Request for Disclosure, First Requests for Admissions, Interrogatory, and Requests for Production to Defendant Michelin North America, Inc., under the provisions of

**EXHIBIT**

**3**

Rules 194, 196, 197, and 198, TEX. R. CIV. P., and require that answers to the same be filed no later than thirty (30) days after the date of service hereof.

Please Note:

Failing to fully respond, giving incomplete or false answers, or abusing the discovery process in any manner may result in the imposition of discovery sanctions against you, including, but not limited to, a default judgment, an order disallowing further discovery, taking facts as established, precluding the introduction of evidence, treating such abuses as contempt of court, and requiring the payment of the Hall family's expenses and attorney's fees. See TEX.R.CIV.P. 215.

The undersigned attorney, as one of the attorneys of record for the Plaintiffs, certifies that true and correct copies of the attached document have been forwarded to the registered agent listed above.

Respectfully submitted,

**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone No. (361) 698-7600
Facsimile No. (361) 698-7614

By: /s/ John Blaise Gsanger
   John Blaise Gsanger
   State Bar No. 00786662
   jgsanger@edwardsfirm.com
   Gary Scott Marshall
   State Bar No. 24077207
   smarshall@edwardsfirm.com
   ATTORNEYS FOR INTERVENING PLAINTIFFS

SuppR 061

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded to the following counsel in the manner indicated on the 19th day of December, 2014.

*Facsimile:  (512) 472-0721*
Thomas M. Bullion III
Germer Beaman & Brown, L.L.P.
301 Congress Avenue, Suite 1700
Austin, Texas 78701

*Facsimile: (713) 523-4159*
Robert E. Ammons
The Ammons Law Firm, LLP
3700 Montrose Boulevard
Houston, Texas 77006

*Facsimile: (800) 637-1955*
Timothy D. Riley
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007-2502

*Facsimile: (254) 751-9133*
Michael Bourland
Witt, McGregor & Bourland, P.L.LC.
8004 Woodway Drive, Suite 400
Waco, Texas 76712-3648

/s/ John Blaise Gsanger
Counsel for Plaintiffs

SuppR 062

## DEFINITIONS

1.  In the context of these discovery requests, "Michelin" refers to defendant Michelin North America, Inc. and includes its counsel, employees, and agents.

2.  The "Fort Wayne plant" refers to Michelin's tire plant in Woodburn, Indiana, and which corresponds to the manufacturing code "BF" in the first two digits of the Department of Transportation Tire Identification Number.

3.  "Filament at Zero" refers to the use of precisely placed polyester and aramid/nylon filaments (FAZ) technology as discussed in Exhibit C.

4.  References to the "failed tire" refer to the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT No. BFW802110611 mounted in the left front of Robert Coleman's pickup on August 24, 2014.

SuppR 063

## REQUEST FOR DISCLOSURE

**REQUEST FOR DISCLOSURE NO. 1:** Pursuant to Rule 194 of the Texas Rules of Civil Procedure, defendant Michelin is requested to disclose, within thirty (30) days of service of this request, the information or material described in Rule 194.2 (a) through (l).

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that on August 24, 2014, Robert Coleman was driving his 2001 Ford F-250 pickup eastbound on Highway 36 near County Road 112.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 2:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Robert Coleman is a resident of Spring, Texas, in Harris County.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 3:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Robert Coleman was a resident of Spring, Texas, in Harris County on August 24, 2014.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 4:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Mr. Coleman was traveling within the speed limit and within his lane when the tread detached from his left front tire on August 24, 2014.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 5:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Mr. Coleman was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.

SuppR 064

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 6:**     Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Blayne Cook, a passenger in the pickup at the time of the crash, was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 7:**     Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Cameron Cook, a passenger in the pickup at the time of the crash, was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.


**RESPONSE:**


**REQUEST FOR ADMISSION NO. 8:**     Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Matthew Plum, a passenger in the pickup at the time of the crash, was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.


**RESPONSE:**


**REQUEST FOR ADMISSION NO. 9:**     Admit that all tires sold in the United States with DOT number BFW802110611 were placed in the stream of commerce by Michelin.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 10:**     Admit that all tires sold in the United States with DOT number BFW802110611 were designed by Michelin.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 11:**     Admit that all tires sold in the United States with DOT number BFW802110611 were made at Michelin's Fort Wayne tire plant.

**RESPONSE:**

SuppR 065

**REQUEST FOR ADMISSION NO. 12:** Admit that the designation "LT" in the size LT265/75R16 associated with the BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used on a light truck.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 13:** Admit that the designation "Rugged Terrain" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used on rugged terrain.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 14:** Admit that the designation "T/A" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used for in situations where a traction advantage was required.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 15:** Admit that the designation "LRE" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used for tasks requiring a heavy load range rating of E.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 16:** Admit that in accordance with the requirements of the National Traffic and Motor Vehicle Safety Act, Michelin has identified defects which relate to motor vehicle safety pursuant to NHTSA Recall Number 12T-019.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 17:** Admit that drivers who experience tread loss and/or rapid air loss resulting from tread belt separation" experience foreseen driving conditions that increase the risk of a vehicle crash.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 18:** Admit that a defect that manifests in a tread

SuppR 066

separation is a defect which relates to motor vehicle safety.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 19:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the failed tire was cured during the first week of February in 2011.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 20:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the failed tire was assembled as a green tire as much as a week prior to the first week of February in 2011.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 21:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the components of the failed tire were created up to a week or more prior to assembly.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 22:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that it snowed in Fort Wayne, Indiana during the period beginning with the last week of January of 2011 and running through the end of the first week of February of 2011.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 23:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that it rained in Fort Wayne, Indiana during the period beginning with the last week of January of 2011 and running through the end of the first week of February of 2011.


**RESPONSE:**


**REQUEST FOR ADMISSION NO. 24:** Admit that the tire building room at Michelin's Fort Wayne, Indiana tire plant is covered by a large flat roof.

**RESPONSE:**

SuppR 067

**REQUEST FOR ADMISSION NO. 25:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the roof on the Fort Wayne plant leaked when it rained in 2011.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 26:** Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the roof on the Fort Wayne plant leaked when it had melting snow on it in 2011.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 27:** Admit that according to information in Michelin's possession, Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed roof leaks.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 28:** Admit that according to information in Michelin's possession, Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed puddled water.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 29:** Admit that according to information in Michelin's possession, Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the use of plastic sheeting to divert leaks.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 30:** Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the use of rubber and rubber-coated components that had lost some of their tack prior to their use in the assembly of a green tire.

**RESPONSE:**

SuppR 068

**REQUEST FOR ADMISSION NO. 31:** Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the use of solvents in an attempt to restore the tack of rubber and rubber-coated components.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 32:** Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the lax enforcement of standards to avoid misplacement and improper splicing of the steel belts.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 33:** Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the lax enforcement of standards to avoid misplacement and improper splicing of rubber and rubber-coated components surround the steel belts.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 34:** Admit that the quality control inspection process in the final finish department is Michelin's principal opportunity to identify defects in cured tires in order to scrap or repair those defective tires before they reach the consumer.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 35:** Admit that according to Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 eye-witnessed the lax enforcement of standards.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 36:** Admit that according to Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 eye-witnessed falsification of inspections.

**RESPONSE:**

SuppR 069

**REQUEST FOR ADMISSION NO. 37:** Admit that according to Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 eye-witnessed on-the-job sexual misconduct.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 38:** Admit that Michelin has Aspect Classification documents which set forth some of the standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 39:** Admit that Michelin's Aspect Classification documents have annexes, glossaries, illustrations, photographs, and attachments with additional information and caveats pertaining to the standards which Michelin has recognized in the past.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 40:** Admit that Michelin has a Product Standards and Guidelines Manual for Required Tire Dimensional Tolerances which sets forth the standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 41:** Admit that Michelin has work procedures for the tire builders which set forth standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 42:** Admit that Michelin has training materials including videotapes and tests for the tire builders which set forth standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 43:** Admit that Michelin has work procedures for tire inspectors which set forth standards which Michelin has recognized.

**RESPONSE:**

SuppR 070

**REQUEST FOR ADMISSION NO. 44:** Admit that Michelin has training materials including videotapes and tests for tire inspectors which set forth standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 45:** Admit that Michelin has reaction limits which set forth some of the standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 46:** Admit that Michelin has product tolerance limits which set forth some of the standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 47:** Admit that Michelin has possession of documents, testimony, and information which assert that quality control personnel falsified inspections at the Fort Wayne plant in 2011.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 48:** Admit that Michelin has possession of documents, testimony, and information which confirm on-the-job sexual misconduct at the Fort Wayne plant in 2011.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 49:** Admit that Michelin has possession of documents, testimony, and information which confirm that it has established a link between certain cured tire defects and their probable causes.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 50:** Admit that Michelin has possession of documents, testimony, and information which confirm that is has established a link between nonconformance to standards and tread separations.

**RESPONSE:**

SuppR 071

**REQUEST FOR ADMISSION NO. 51:** Admit that Michelin has work procedures for tire and tire component designers which set forth standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 52:** Admit that Michelin has training materials including videotapes for tire and tire component designers which set forth standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 53:** Admit that Michelin has training materials including tests for tire and tire component designers which set forth standards which Michelin has recognized.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 54:** Admit that Michelin performs Failure Modes Analysis which address tread separation.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 55:** Admit that Michelin performs Failure Effects Analysis which address tread separation.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 56:** Admit that Michelin runs tire endurance tests and tread separation is not the typical failure mode for such test.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 57:** Admit that Michelin runs tire endurance tests and tread separation is the typical failure mode for such test.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 58:** Admit that Michelin runs tests with over deflected tires and tread separation is not the typical failure mode for such test tires.

Coleman First RFD, RFA, Interrogatories, and RFP to Defendant, Michelin          13

SuppR 072

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 59:**   Admit that Michelin runs tests with over deflected tires and tread separation is the typical failure mode for such test tires.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 60:**   Admit that Michelin has adjustment documents with tire condition descriptions, condition lists, condition codes, and condition pictures and illustrations.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 61:**   Admit that Michelin has work procedures for tire adjustment center personnel which set forth standards which Michelin has recognized.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 62:**   Admit that on or before September 16, 2014, Michelin became aware of the potential for litigation concerning an August 24, 2014, crash reported to involve an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT No. BFW802110611 mounted on Robert Coleman's pickup.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 63:**   Admit that by September 16, 2014, Michelin could reasonably foresee litigation concerning an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 mounted on Robert Coleman's pickup which crashed on August 24, 2014.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 64:**   Admit that on or before September 16, 2014, Michelin became aware of Robert Coleman's notice of anticipated litigation and request that Michelin preserve the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 for evidentiary purposes in that anticipated litigation.

**RESPONSE:**

SuppR 073

**REQUEST FOR ADMISSION NO. 65:** Admit that Michelin has made no efforts to preserve the condition of tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 66:** Admit that Michelin has altered the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 67:** Admit that Michelin has made no efforts to document alterations to the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 68:** Admit that Michelin has made no efforts to preserve the condition of tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 69:** Admit that Michelin has altered the tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 70:** Admit that Michelin has made no efforts to document alterations to the tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

SuppR 074

**REQUEST FOR ADMISSION NO. 71:** Admit that Michelin has made no efforts to preserve the condition of the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 72:** Admit that Michelin has altered the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 73:** Admit that Michelin has made no efforts to document alterations to the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 74:** Admit that no representative of Robert Coleman was present when Michelin altered the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 75:** Admit that, in the time from September 16 of 2014 to the present, the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 have been altered by a person or persons whose identity has not been disclosed to Robert Coleman.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 76:** Admit that Michelin has made no efforts to preserve the condition of the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

SuppR 075

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 77:**   Admit that Michelin has altered the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 78:**   Admit that Michelin has made no efforts to document alterations to the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 79:**   Admit that no representative of Robert Coleman was present when Michelin altered the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 80:**   Admit that no representative of Robert Coleman was invited to attend when Michelin altered the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 81:**   Admit that, in the time from September 16 of 2014 to the present, the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 have been altered by a person or persons whose identity has not been disclosed to Robert Coleman.

**RESPONSE:**

SuppR 076

**REQUEST FOR ADMISSION NO. 82:** Admit Michelin currently has possession of the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 83:** Admit Michelin currently has possession of the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 84:** Admit that, during time period from February 2011 to the present, persons who are not employees of Michelin North America, Inc. have had access to Michelin's Fort Wayne plant which provided those persons an opportunity to see the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 85:** Admit that, during time period from February 2011 to the present, persons who are not employees of Michelin North America, Inc. have had access to Michelin's Fort Wayne plant which provided those persons an opportunity to see the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 86:** Admit that, during time period from February 2011 to the present, persons who are not employees of Michelin North America, Inc. have had access to Michelin's Fort Wayne plant which provided those persons an opportunity to see the final finish inspection process on the same inspection line as used to inspect LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 87:** Admit that in September of 2014 Robert Coleman proposed to Michelin an agreement by which Michelin's access to the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 mounted on Robert Coleman's pickup at the time of the crash should be comparable to Robert Coleman's access to

SuppR 077

Michelin's tire building machines used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A tires in February of 2001 at Michelin's Fort Wayne plant.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 88:** Admit that Michelin refuses to allow Robert Coleman to inspect the first and second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 in the sixth week of 2001 at Michelin's Fort Wayne plant regardless of the confidentiality and regardless of the limitations on access that Robert Coleman will agree to.

**RESPONSE:**

## INTERROGATORY

**INTERROGATORY NO. 1:** Please identify any entity which may be designated as "a responsible third party" as that term is used in section 33.004 of the Texas Civil Practice and Remedies Code by listing (a) the entities' name or names, (b) the entities' addresses and telephone numbers and other contact information, (c) the entities' registered agents for service if any, (d) the county of the entities' principal office in this state if any, (e) the states that the entities are believed to be "citizens" of as that word is used in 28 United States Code section 1332, (f) the duties which such entities are believed to have breached, (g) any acts and omissions and product defects which are believed to have breached those duties, and (h) the contentions about the entities which would confirm that the designation of those entities as a responsible third party would not be groundless to the best of the designating counsel's "knowledge, information, and belief formed after reasonable inquiry" as that phrase is used in Texas Rule of Civil Procedure 13.

**ANSWER:**

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1;** Please produce all written or otherwise recorded statements (this includes audio-recordings, video-recordings, written statements, electronic communications, complaints, affidavits, depositions, and other testimony as well as another "witness statement" as that term is used in Texas Rule of Civil Procedure 192.3(h)) of any Michelin employee or ex-employee or agents or ex-agent who worked for or on behalf of Michelin at the Fort Wayne plant in 2011 which address any of the following issues: (a) leaks in the roof over the rooms where tire building or tire inspection occurred, (b) puddles on the floor in the rooms where tire building or tire inspection occurred, (c) the use of plastic sheeting to divert leaks in the roof over the rooms where tire building or tire inspection occurred, (d) allegations of sexual misconduct alleged to involve personnel whose job responsibilities included tire building or tire inspecting, (e) sexual harassment or discrimination claims of personnel whose job

SuppR 078

responsibilities included tire building or tire inspecting, (f) the falsification of inspections on inspection documentation, (g) allegations of insufficient time for employees to perform quality tire building or quality tire inspecting, (h) the use of out of specification tire components in the tire assembly processes, (i) the use of rubber or rubber-coated tire components which had lost some of their tackiness before being implemented in the tire assembly process, (j) the use of solvent in an attempt to restore tackiness to rubber or rubber-coated tire components which had lost some of their tackiness before being implemented in the tire assembly process, (k) trapped air in tires during the tire assembly or curing or inspection processes, (l) trapped moisture in tires during the tire assembly or curing or inspection processes, (m) voids in tires during the tire assembly or curing or inspection processes, (n) blows in tires during the tire assembly or curing or inspection processes, (o) separations between components in tires during the tire assembly or curing or inspection processes, (p) contamination in tires during the tire assembly or curing or inspection processes, (q) misplacement of tire components as noticed in the tire assembly or curing or inspection processes, (r) improper splicing of tire components as noticed in the tire assembly or curing or inspection processes, and (s) the failure of the cured tire inspection process to detect defects before tires were sold to customers.

**REQUEST FOR ENTRY UPON LAND:** Pursuant to Texas Rule of Civil Procedure 196.7, Robert Coleman requests to enter upon property; specifically, entry upon Michelin's tire plant in Woodburn, Indiana (located near Fort Wayne, Indiana; this plant is hereafter referred to as the "Fort Wayne plant"). In order to obtain substantive evidence of the manufacturing processes most similar to the first and second stage tire manufacturing processes used to assemble the failed LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire at issue and to obtain substantive evidence of the proposed safer alternative design, Robert Coleman requests to visually inspect and videographically document the tire building machines at the plant subject to the following protocol and limitations:

Robert Coleman requests one hour of limited access to particular tire building machines at Continental's Mt. Vernon, Illinois facility at a mutually agreed time and date within 60 days from the date of this request. Robert Coleman requests that his only representatives allowed to attend the observation should be his attorneys, his tire failure analysis experts, and a videographer selected by Robert Coleman. Robert Coleman proposes that all who attend the observation should sign whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts. Robert Coleman proposes that each side should bear its own costs. Robert Coleman proposes that the observation should include the machine or machines used to place the innerliner on the tire building drum and to assemble the belts and nylon reinforcement into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant (or, in the alternative, observation of the most similar tire building machines to be identified by Michelin if the specific tire building machines on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 cannot be identified). Robert Coleman proposes that the observation should include visually inspecting and videotaping the machines while they are in use building light truck car tires, and the scope of the observation should not include any sampling or destructive testing and should

SuppR 079

include nothing more than a visual observation – including recording by videotape – and be limited to one hour of observation and videotaping the machines while they are in use. Robert Coleman proposes that the observation should include:

(a) 15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(b) 15 minutes of observation of the second stage tire building process conducted in a manner as near as is practical to the second stage tire building processes implemented in LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(c) 15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts in at least two layers and covering a greater portion of the belt package as compared to the portion of the belt package covered by nylon in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 is being applied to a light truck car tire as similar as practical to LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant, and

(d) 15 minutes of observation of the second stage tire building process where Filament at Zero is being applied to a light truck tire car tire as similar as practical to a LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011.

Robert Coleman proposes that the videotaping should occur while these machines are in normal use. Robert Coleman proposes that his counsel, his tire failure experts, and his videographer who would attend the observation should be identified within seven days of when the inspection protocol is agreed or ordered by the court and should present photographic identification in the form of a driver's license or similar government issues identification before entering the plant, and that all such attendees should wear visitor badges the entire time they are in the plant (if Michelin requests), should be accompanied and escorted by Michelin's personnel at all times they are in the plant (if Michelin requests), should wear hardhats and safety glasses and ear protection and steel toed boots during the observation (if Michelin requests), should not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and should not attempt to speak with any plant personnel except for their escorts. Robert Coleman proposes that his representatives should not be allowed to videotape any other area of the plant except the tire building machines being observed and should not bring recording or photographing or videotaping devices other than the videographer's equipment to the observation. Robert Coleman proposes that Michelin should be allowed to take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Robert Coleman proposes that Michelin should be allowed to conduct its own videotaping of the inspection. Robert Coleman proposes that Michelin should be allowed to all videotapes should be copied and provided to the other side within 10 days after the observation of the tire building machines. Robert Coleman proposes that

SuppR 080

the videotapes as well as any documentation of the equipment and processes recorded during the inspection should be governed by whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts.

In the alternative, if Michelin would prefer, Robert Coleman would agree to protocols based on the attached order. See Exhibit A and Exhibit B.

If Michelin refuses to allow the entry upon land as requested above, Robert Coleman requests that Michelin preserve and document the evidence by videotaping the same machines and the same processes without Robert Coleman or his representatives being present and further requests that Michelin file such videotapes under seal with the trial court as permitted pursuant Texas Rule of Civil Procedure 76a.

SuppR 081

FILE COPY

FILED

IN THE EIGHTEENTH JUDICIAL DISTRICT
SEDGWICK COUNTY, KANSAS
CIVIL COURT DEPARTMENT

2012 OCT -4 P 3: 56

. . . . . . . . . . . DISTRICT
. . . . . . . . . . . AL DISTRICT
. . . . . . . . . . . NTY, KANSAS

LORENA HERNANDEZ, INDIVIDUALLY, AND )
AS NEXT FRIEND OF ERIKA DELGADILLO )
HERNANDEZ, A MINOR )
)
Plaintiffs, )
)
                                        )        Case No. 11 CV 3904
COOPER TIRE AND RUBBER CO., MARY )
BELLE HERNANDEZ, AND HERIBERTO )
GOMEZ D/B/A GOMEZ CUSTOM WHEELS )
)
Defendants. )

## ORDER GRANTING PLAINTIFFS' MOTION REQUESTING INSPECTION OF THE TIRE BUILDING MACHINES

After considering Plaintiffs' Motion Regarding The Tire, The Tire Building Machines, And The Identity Of The Tire Workers, and Defendant's Response, this Court ORDERS that the request to inspect tire building machines is GRANTED as follows:

Plaintiffs shall be provided one hour of limited access to particular tire building machines at Cooper's Texarkana, Arkansas facility at a mutually agreed time and date or beginning at 9:00 a.m. 60 days from the date of this Order if a mutually agreed upon time and date within the next 60 days cannot be agreed upon in writing by the Plaintiffs' counsel and Cooper's counsel. Plaintiffs' representatives allowed to attend the inspection are limited to Plaintiffs' attorneys (limited to Plaintiffs' counsel as of July 19, 2012), Plaintiffs' experts (tire failure experts only), and a photographer-videographer selected by Plaintiffs' counsel, and all such Plaintiffs' representatives shall sign the protective order in this case before the inspection begins. Each side will bear its own costs.

1



OCT 8 2012

SuppR 082

Inspection of the machines is limited to one hour. The inspection will include videotape for 30 minutes of the operation of first and second stage tire building machines on which 31 x 10.5R15 LT Cooper Discoverer tires were built in February of 2004 (or the most similar first and second stage tire building machine to be identified by Cooper if the specific first and second stage tire building machines on which 31 x 10.5R15 LT Cooper Discoverer tires were built in February of 2004 cannot be identified). Cooper shall that the discretion to select the tire which is being videotaped while being build and shall exercise that discretion to minimize the differences in the tire building process of the tire being videotaped and the tire building processes used to make 31 x 10.5R15 LT Cooper Discoverer tires in February of 2004. The inspection will include videotape for 15 minutes of the tire building machines assembling nylon belt reinforcement (or SNOW) into 15 inch tires and videotape for 15 minutes of the tire building machines assembling belt edge gum strips (or BEGS) into 15 inch tires (with the machines to be selected by Cooper). The videotaping will occur while these machines are in normal use. Plaintiffs' attorneys, Plaintiffs' experts, and the photographer-videographer shall identify themselves before entering the plant, shall wear visitor badges the entire time they are in the plant (if Cooper requests), shall be accompanied and escorted by Cooper's personnel at all times they are in the plant, shall wear hardhats and safety glasses and ear protection and steel toed boots during the inspection, shall not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and shall not attempt to speak with any plant personnel except for their escorts. Plaintiffs' attorneys, Plaintiffs'

2

SuppR 083

experts, and the photographer-videographer shall not be allowed to videotape or photograph any other area of the plant except the tire building machines being inspection and shall not bring recording or photographing or videotaping devices other than the videographer's equipment to the inspection.

Cooper may take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Cooper is also free to conduct its own videotaping and photographing of the inspection. All videotapes and photographs will be copied and provided to the other side within 10 days after the inspection of the tire building machines. The videotapes and photographs as well as any documentation of the equipment and processes recorded during the inspection will be governed by the protective order in this case.

Signed this _____ day of August 2012.

_____
JUDGE PRESIDING

3

SuppR 084



ELECTRONICALLY FILED
1/21/2014 3:23 PM
03-CV-2011-900647.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
TIFFANY B. MCCORD, CLERK

IN THE CIRCUIT COURT IN AND FOR
MONTGOMERY COUNTY, ALABAMA

DEAN LILJEBERG and SHERRY
LILJEBERG;

    Plaintiffs,

v.

CONTINENTAL TIRE THE
AMERICAS, LLC; et al.;

    Defendants.

§
§
§
§
§
§
§
§
§
§
§
§

03-CV-2011-900647.00

## ORDER GRANTING PLAINTIFFS' MOTION REQUESTING INSPECTION OF THE TIRE BUILDING MACHINES

After considering Plaintiffs' Motion To Compel Access To Tire Building Machines, and Defendant's Response, this Court ORDERS that the request to inspect tire building machines is GRANTED as follows:

Plaintiffs shall be provided one hour of limited access to particular tire building machines at Continental's Mt. Vernon, Illinois facility at a mutually agreed time and date or beginning at 9:00 a.m. 60 days from the date of this Order if a mutually agreed upon time and date within the next 60 days cannot be agreed upon in writing by the Plaintiffs' counsel and Continental's counsel. Plaintiffs' representatives allowed to attend the inspection are limited to Plaintiffs' attorneys, Plaintiffs' tire failure experts, and a photographer-videographer selected by Plaintiffs' counsel, and all such Plaintiffs' representatives shall sign the protective order in this case before the inspection begins. Each side will bear its own costs.

1

**EXHIBIT**

**B**

Inspection of the machines is limited to one hour. The inspection will include the machine or machines used to place the innerliner on the tire building drum and to assemble the belts into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 at Continental's Mount Vernon, Illinois tire plant (or, in the alternative, inspection of the most similar tire building machines to be identified by Continental if the specific tire building machines on which P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 cannot be identified). The inspection will include visually inspecting and videotaping the machines while they are in use building passenger car tires, and the scope of the inspection shall not include any sampling or destructive testing and shall include nothing more than a visual inspection – including recording by videotape – and be limited to one hour of inspection and videotaping the machines while they are in use. The inspection will include (a) 15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 at Continental's Mount Vernon tire plant, (b) 15 minutes of observation of the second stage tire building process conducted in a manner as near as is practical to the second stage tire building processes implemented in building P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 at Continental's Mount Vernon tire plant, (c) 15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts is being applied to a

2

SuppR 086

passenger car tire as similar as practical to a P265/70R17 ContiTrac SUV tires, and (d) 15 minutes of observation of the second stage tire building process where a wider nylon cap (either full-crown-width or in strips wider than those used in P265/70R17 ContiTrac SUV tires made in the 17th week of 2006 at Continental's Mount Vernon tire plant) is being applied to a passenger car tire as similar as practical to a P265/70R17 ContiTrac SUV tires. The videotaping will occur while these machines are in normal use.

Plaintiffs' attorneys, Plaintiffs' experts, and the photographer-videographer shall identify themselves before entering the plant, shall wear visitor badges the entire time they are in the plant (if Continental requests), shall be accompanied and escorted by Continental's personnel at all times they are in the plant (if Continental requests), shall wear hardhats and safety glasses and ear protection and steel toed boots during the inspection (provided at Plaintiffs' expense), shall not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and shall not attempt to speak with any plant personnel except for their escorts. Plaintiffs' attorneys, Plaintiffs' experts, and the photographer-videographer shall not be allowed to videotape or photograph any other area of the plant except the tire building machines being inspection and shall not bring recording or photographing or videotaping devices other than the videographer's equipment to the inspection.

Continental may take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Continental is also free to conduct its own videotaping and photographing

3

SuppR 087

of the inspection. All videotapes and photographs will be copied and provided to the other side within 10 days after the inspection of the tire building machines. The videotapes and photographs as well as any documentation of the equipment and processes recorded during the inspection will be governed by the protective order in this case.

This Order will be stayed for 30 days to allow Continental to initiate any appeal it may desire.

ORDERED this 21 day of _____, 2014.

_____
TRUMAN M. HOBBS, JR.
CIRCUIT COURT JUDGE

SuppR 088



# MICHELIN® Latitude® Tour HP

**Our high performance tire for premium crossover vehicles** offers safe, reliable handling and a quiet, comfortable ride.

 **ALL-SEASON TIRE**



| | |
|---|---|
| 7 | WEAR LIFE |
| 8 | FUEL EFFICIENCY |
| 3 | OFF-ROAD |
| 10 | BRAKING |
| 9 | COMFORT |



## BENEFITS OF MICHELIN® LATITUDE® TOUR HP TIRES:

- **Better Handling in Rain and Snow than Leading Competitors.**[1] 2-D Active Sipes help deliver better handling in rain and snow by locking together for greater rigidity.



Tread Block with Normal Sipes          2-D Active Sipes

- **High-Speed Confidence.**[2] Experience a stable feel and crisp steering at high speeds thanks to precisely placed polyester and aramid/nylon filaments (FAZ Technology™) under the tread. Aramid is the material that makes bulletproof vests bulletproof.



FAZ Technology™

- **Fuel-Efficient to Reduce Harmful Emissions.** Reduce fuel consumption thanks to a combination of a fuel-efficient tire shape and tread compounds that reduce unnecessary friction when the tire rolls.

### Popular Replacement Market Fitments:

Porsche Cayenne • Volkswagen Touareg • Mercedes M-Class • Acura MDX

 See pages 10 – 11 for details.

1 Based on third-party snow traction and wet braking test results versus Bridgestone® Dueler™ H/L Alenza™ tires, Continental® 4x4 Contact™ tires and Pirelli® Scorpion STR™ tires.
2 Exceeding the safe, legal speed limit is neither recommended nor endorsed.



**EXHIBIT C**

tabbies®

# EXHIBIT 4

# BLANK



EXHIBIT

4

tabbies

# EXHIBIT 5

# BLANK



**EXHIBIT**

**5**

tabbies

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

GENEVIEVE IDAR, et al.      §
       §
      **Plaintiff,**      §
       §     **CIVIL ACTION NO. 2:10-cv-00217**
       §                 **JURY**
**v.**      §
       §
COOPER TIRE AND RUBBER CO.      §
       §
      **Defendant.**      §

## AGREED TIRE INSPECTION ORDER

The parties in the above-entitled and numbered cause file the following Agreed Tire Inspection Order:

    (1)    There will be no destructive testing of the tire or tire pieces;

    (2)    The tire and tire pieces will be shipped in sealed containers to the following address:

        JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
        919 Milam St., Suite 1700
        Houston, Texas 77002

    (3)    The sealed containers and their contents will be videotaped as the containers are opened, and the videotape will record the tire and tire pieces during the entire time without interruption from the time the containers are opened until the tire and tire pieces are returned into the containers and the containers are resealed;

    (4)    You will make the person responsible for the inspection and the person responsible for the videotaping aware of the terms of this agreement;



EXHIBIT
6

(5)     The tire and tire pieces will be returned to Plaintiffs' counsel in sealed containers along with the videotapes mentioned above within 45 days from the date that the tire and tire pieces are received by Cooper or its counsel; and

(6)     Cooper will bear full responsibility for the tire and tire pieces from the time it leaves Plaintiffs' counsel until it is received by Plaintiffs' counsel upon its return from Cooper.

SIGNED this _17th_ day of _SEPTEMBER_ 2010.

_____
HON. UNITED STATES DISTRICT JUDGE


**AGREED AND APPROVED AS TO FORM:**


By: __/s/ John Blaise Gsanger__
       John Blaise Gsanger
       State Bar No. 00786662
       THE EDWARDS LAW FIRM
       Frost Bank Plaza
       802 N. Carancahua Street, Suite 1400
       Corpus Christi, Texas 78401-0023
       (361) 698-7600 – Telephone
       (361) 698-7614 – Facsimile

**ATTORNEYS FOR PLAINTIFFS**

2

SuppR 093

By: */s/ T. Christopher Trent*
    T. Christopher Trent
    State Bar No.: 20209400
    Raphael C. Taylor
    State Bar No. 00788514
    Jon Paul Hoeslcher
    State Bar No. 24050771
    JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
    919 Milam, Suite 1700
    Houston, Texas 77002
    (713) 222-2323 – Telephone
    (713) 222-2226 – Facsimile

**ATTORNEYS FOR DEFENDANT,
COOPER TIRE & RUBBER COMPANY**

3

SuppR 094

**FILE COPY**

CAUSE NO. C-1872-10-J

| | |
|---|---|
| JESUS GONZALEZ MARTINEZ, INDIVIDUALLY; VERONICA GONZALEZ ZARATE, INDIVIDUALLY, AND AS REPRESENTATIVE OF AND GUARDIAN OF JESUS GONZALEZ MARTINEZ; ADRIANA ALONSO SARABIA, INDIVIDUALLY; AND MARIA F. GALLEGOS, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE ESTATE OF ABRAHAM SALAZAR, DECEASED §§§§§§§§§§§§ | IN THE DISTRICT COURT |
| **Plaintiffs** §§ | |
| V. § | 430TH JUDICIAL DISTRICT |
| COOPER TIRE AND RUBBER CO., AND FUTURA IN ITS ASSUMED OR COMMON NAME; §§§§ | |
| VILLA'S TIRE SERVICE, AND VILLA'S TIRE SERVICE IN ITS ASSUMED OR COMMON NAME; §§§§ | |
| RAUL CAVAZOS d/b/a RAUL'S TIRE SERVICE, AND RAUL'S TIRE SERVICE IN ITS ASSUMED OR COMMON NAME; §§§§§ | |
| **Defendants** § | HIDALGO COUNTY, TEXAS |

## ORDER GRANTING IN PART AND DENYING IN PART COOPER TIRE AND RUBBER COMPANY'S MOTION TO COMPEL PRODUCTION OF THE SUBJECT TIRE FOR NON DESTRUCTIVE CUSTODIAL INSPECTION

Before the Court is Defendant Cooper Tire & Rubber Company's

(hereinafter "Defendant Cooper Tire") Motion to Compel Production of the

*Order on Motion to Compel*
*(C-1872-10-J)*                    1

JAN 1 3 2011

EXHIBIT

**7**

Subject Tire for Nondestructive Custodial Inspection (hereinafter sometimes referred to as "Cooper Tire's Motion")[1] and Plaintiffs' (hereinafter sometimes referred to as the "Martinez family") Response to Cooper Tire's Motion.[2] Defendant Cooper Tire also filed a reply to the Martinez family's response.[3] The Court called the case for hearing on December 16, 2010. The Martinez family appeared by and through attorney at law John Blaise Gsanger. The Defendant Cooper Tire appeared by and through attorney at law, Rafael C. Taylor. Both sides announced ready. For reasons enumerated hereinafter, the Court grants in part and denies in part, Cooper Tire's motion.

## I.

## BACKGROUND

The Martinez family filed a civil lawsuit against Defendant Cooper Tire and other Defendants on June 23, 2010, alleging that on November 7, 2008, while Abraham Salazar was driving a Ford Explorer in Mexico, the tread separated from the right rear tire causing Salazar to lose control of

---

[1]Cooper Tire's Motion was filed on December 1, 2010.

[2]The Martinez family's response was filed on December 3, 2010.

[3]Defendant Cooper Tire filed a reply to the Martinez family's response on December 15, 2010.

*Order on Motion to Compel*
*(C-1872-10-J)*                          2

SuppR 096

the vehicle and crash. The Martinez family further alleges that the tire failed because it was defective resulting in injuries and damages to the Martinez family.[4] Defendant Cooper Tire filed Special Exceptions and its Original Answer[5] urging special exceptions, a general denial, a verified denial and other defenses, reserving its right to further amend its answer in accordance with the Texas Rules of Civil Procedure.

## II.

## DEFENDANT COOPER'S POSITION

Cooper Tire's Motion states that the Martinez family has been unwilling to produce the alleged subject tire for nondestructive custodial inspection by its consultants despite multiple requests, thereby necessitating its Motion to Compel. Cooper Tire's Motion requests that the Court enter an Order compelling the Martinez family to produce the alleged subject tire for a period of up to sixty days for nondestructive, custodial inspection by Defendant Cooper and its consultants at a location, such as a laboratory or office of the consultant, where appropriate tools and equipment can be utilized for the examination.

---

[4] See, Plaintiffs' Original Petition and Request for Disclosure, Paragraph V, Pages 5-8.

[5] Defendant Cooper filed its Original Answer on August 13, 2010.

Order on Motion to Compel
(C-1872-10-J)                          3

SuppR 097

At the pre-trial hearing, Defendant Cooper Tire also explained that sixty days was necessary because of the distance from the Cooper Tire headquarters in Ohio to the location of its experts and due to the experts' schedules. Moreover, Defendant Cooper argued[6] that the Court should not require video taping or the presence of Plaintiff's representatives at the inspection. Counsel for Defendant Cooper submitted proposed orders for the Court's consideration.[7]

### III. THE MARTINEZ FAMILY'S POSITION

Counsel for the Martinez family does not dispute that Defendant Cooper Tire is entitled to the inspection and even several inspections. However, they cite Rule 196.3 of the Texas Rules of Civil Procedure in support of their request to retain the tire in their possession while the requesting party (Cooper) performs the inspection. Further, they propose three different orders[8] – one that allows the inspection at its present location (Martinez family representatives' care, custody, and control) with

---

[6]Defendant Cooper also cited and presented case law where Courts ordered that plaintiffs' representative could not video tape or view the Defendants' inspection because it violated the consulting expert privilege.

[7]A copy of the Defendant Cooper Tire's proposed orders are filed among the papers in this case.

[8]A copy of the Plaintiffs' proposed orders are also filed among the papers in this case.

*Order on Motion to Compel*
*(C-1872-10-J)*                          4

SuppR 098

Plaintiffs' representative present; a second order allowing the Defendant Cooper to remove the tire from its present location but with a requirement that Defendant Cooper pay the transportation costs for Plaintiffs' representatives to bring the tire and witness the inspection and finally a third order where no representative is present but with a requirement that Defendant Cooper video tape the inspection.[9] To avoid Cooper Tire's concerns about the consulting expert privilege, counsel suggested the video not provide the faces or identity of the individuals conducting the inspection.[10]

The Martinez family expresses concern about relinquishing custody of the tire for Cooper Tire's inspection. They argue that they are unable to pursue spoliation remedies if a third party, other than Cooper Tire, loses, damages, or destroys the tire.[11]

---

[9]Counsel for the Martinez family state that Cooper Tire agreed to such an Order in a case with Federal Judge Janis Graham Jack in the federal district court in the Southern District of Texas — Corpus Christi Division.

[10]This offer was made in open court on the record on December 16, 2010.

[11]The Martinez family mention four cases where tire evidence was allegedly mishandled; although none involved Cooper Tire, the Court understands Plaintiffs' concerns.

*Order on Motion to Compel*
*(C-1872-10-J)*              5

## IV.

## DEFENDANT COOPER TIRE'S REPLY

In its reply, Defendant Cooper Tire argues that Plaintiffs' proposals are fundamentally unfair, are unworkable, and violate the attorney work-product and consulting expert privileges. Cooper Tire explains that having plaintiffs' representatives "hover over Cooper's shoulder during the testing is entirely contrary and inconsistent with the well-established principle that discovery is to ensure a fair and level playing field between the parties."[12] (citations omitted).

Defendant Cooper Tire also objects to the videotaping of the inspection of the subject tire as unworkable because "[t]he logistics of the video proposal would demand that the inspection be conducted in a single location over the length of a single video recording." Further, Cooper Tire complains that Cooper or its experts could not stop the video to move the tire to another location for more testing without fearing an allegation by Plaintiffs that Cooper tampered with the evidence while the video camera was off, while videotapes were changed or if any mechanical difficulty

---

[12] Defendant Cooper's Reply to Plaintiffs' Response to Cooper's Motion to Compel Production of the Subject Tire for Nondestructive Custodial Inspection, Paragraph I, page 2-3.

*Order on Motion to Compel*
*(C-1872-10-J)*                    6

occurred.[13]

Finally, Defendant Cooper Tire argues that presently Cooper's retained experts and their work-product are privileged and information concerning consulting experts is not discoverable.[14] The latter privilege "grants the party and its attorney a sphere of protection and privacy in which to develop their case."[15] In the *Gayne* case, the Supreme Court held that allowing Plaintiffs to be present during tests conducted by General Motors' consulting experts violated the consulting expert privilege.

However, as stated in Cooper Tire's reply, in at least one case cited by Plaintiffs alleging possible damage, a video tape supported Defendant's position "that the damage to the tire did not occur during the forensic examination of the tire conducted by defendants."[16] In that case, the video actually assisted the Defendants against claims of misuse by its experts or agents.

_____

[13]Id, at page 4.

[14]See, Tex. R. Civ. P. 195, cmt 1.

[15]Defendant Cooper Tire cited *General Motors Corp. vs. Gayne*, 951 S.W. 2d 469, 474 (Tex. 1997), in support of its position.

[16]See, Cooper Tire's Reply, Paragraph III, pages 7-8, involving the *Martha Rodriguez, et al v. Firestone Tire & Service Centers, et al, case*

*Order on Motion to Compel*
*(C-1872-10-J)*                    7

SuppR 101

## V.

## TIRE INSPECTION ORDER

After carefully reading and considering Cooper Tire & Rubber

Company's Motion to Compel Production of the Subject Tire for

Nondestructive Custodial Inspection, the Martinez Family Response,

Cooper Tire's Reply, the case law submitted, the arguments of counsel and

other in and out of state orders, and after balancing the hardships and

potential adverse results to the parties, the Court ORDERS that

Defendant's Motion to Compel be and it is hereby GRANTED IN PART,

and DENIED in part as follows:

A.    The Motion is granted in part, subject to the following terms and

conditions:

1.    Prior to any delivery or shipping of the subject tire from Plaintiffs' counsel to Defendant's counsel, Plaintiffs, at their expense, shall videotape the subject tire, the sealed containers and their contents and provide Defendant's counsel a copy of this video. The video shall not identify any party who performed the video taping.

2.    Plaintiffs' counsel shall deliver to counsel for Cooper (unless otherwise agreed to, at Johnson, Trent, West & Taylor, L.L.P., 919 Milam St., Suite 1700, Houston, Texas 77002) the tire evidence within fifteen (15) days of the date of receipt of this Order.

3.    Cooper shall be responsible for the safe keeping and

*Order on Motion to Compel*
*(C-1871-10-J)*                              8

maintenance of the tire evidence after it has received the tire evidence and until such time as the tire evidence is returned to Plaintiffs' counsel.

4.  Any examination by Cooper shall be non-destructive and consist of visual, tactile, photographic, video and x-ray examinations only.

5.  No solvents or lubricants shall be applied to the tire evidence.

6.  No punctures, cuts, permanent marks, or scratches are to be made on the tire evidence while performing the inspections.

7.  No samples of any kind may be removed from the tire evidence.

8.  Cooper will demount the subject tire from its rim in order to fully inspect it, if necessary.

9.  Cooper Tire will videotape, at their expense, the subject tire after receipt of the same from Plaintiffs' counsel to catalogue the items received. Cooper Tire will also videotape the entire examination without interruption from the time the containers are open until the tire is returned into the containers and the containers are resealed.

10. Cooper Tire shall provide a copy of the videotape to Plaintiffs' counsel at the time they return the tire.

11. The videotape will be stopped for breaks and the video will resume after the breaks until the conclusion of the examination.

12. Defendant's counsel shall inform the person responsible for the inspection and the person responsible for the videotaping of the terms of this order and assure

*Order on Motion to Compel*
*(C-1872-10-J)*                              9

SuppR 103

compliance with the same.

13. The video shall not identify any faces or identities of any of the individuals performing the inspection to assure compliance with the attorney work product and the consulting expert privileges.

14. The tire evidence will be returned to Plaintiffs' counsel within sixty (60) days of receipt of the tire evidence by Cooper.

15. Neither Plaintiffs nor their counsel or representatives shall be allowed to be present during the inspection, photographing and videotaping of the subject tire.

B. The Motion is DENIED in part as follows:

The Defendants request that the inspection of the tire not be videotaped is denied.

The Court further ORDERS that:

1. It is the mutual obligation of the parties to preserve the Subject Tire and Wheel.

2. A photocopy of the shipping label shall be firmly secured to each item in the package to prevent loss during transport. In the envelope affixed outside of each package, the following shall be included:

   a. The names of the Plaintiffs; and

   b. A complete and detailed list of each item contained in the package. If the Subject Tire and Wheel has more than one part (i.e., tread, sidewalls, etc. are completely detached from the Subject Tire body), this must be reflected. Also, whether the Subject Tire is mounted or demounted to the wheel shall be

*Order on Motion to Compel*
*(C-1872-10-J)*                              10

SuppR 104

noted.

3.  This Order does not affect any parties' right to assert a spoliation claim in the event sufficient grounds support such an allegation.

4.  The parties may, by agreement, modify any provision in this Order that is necessary to effectuate the Court's Order; and

5.  The Court will entertain a motion to modify any provision in the Order if the parties find it unworkable and they cannot agree to modify or change it.

The Hidalgo County District Clerk shall forward forthwith a copy of this Order to all counsel of record by fax.

SIGNED this 13th day of January, 2011.

ISRAEL RAMON, JR., Judge
430TH Judicial District

cc:    Mr. T. Christopher Trent, Mr. Raphael C. Taylor, Mr. Michael A. Pita - Fax No. 713/222-2226

Mr. John Blaise Gsanger - Fax No. 361/698-7614

*Prepared by 430th District Court (mcs)*

*Order on Motion to Compel*
*(C-1872-10-J)*                          11



FILE COPY

Maricela Cortez Salinas
Court Coordinator

Eloy Garcia
Asst. Court Coordinator



Adelaido "Al" Flores, Jr.
Official Court Reporter

Fidel Perez, III
Bailiff / Interpreter

# ISRAEL RAMON, JR.
### Judge, 430th Judicial District Court

DATE:    January 13, 2011

| TO: Mr. Christopher Trent | FAX #: 713/222-2226 |
|---|---|
| TO: Mr. Raphael C. Taylor | FAX #: 713/222-2226 |
| TO: Mr. Michael A. Pita | FAX #: 713/222-2226 |
| TO: Mr. John Blaise Csanger | FAX #: 361/698-7614 |

TO: Mr. J. Michael Moore          FAX #:  956/686-4200
FROM:

☐ ISRAEL RAMON, JR.          ☒ MARICELA CORTEZ SALINAS
   JUDGE                          COURT COORDINATOR

☐ ELOY GARCIA                ☐ FIDEL PEREZ, III
   ASST. COURT COORDINATOR       BAILIFF

☐ AL FLORES                  ☐ _____
   COURT REPORTER

NUMBER OF PAGES: ___12___, INCLUDING COVER PAGE

RE: C-1872-10-J; Jesus Gonzalez Martinez, et al v. Cooper Tire & Rubber Co., et al

## COMMENTS

Order on Motion to Compel is attached.

SuppR 106

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
Case Type:  Products Liability

Pe Chi-A Vang, as guardian of Yee X.
Yang, Blong Van, individually and as parent
and natural guardian of Ladani Vang, a
minor,

Court File No:  27-CV-10-13554
The Honorable Deborah Hedlund

Plaintiffs,

v.

**ORDER**

Cooper Tire & Rubber Company and HVH
Auto Parts, Inc., d/b/a John's Auto,

Defendants.

Defendant Cooper Tire & Rubber Co.'s Motion to Compel Private, Non-Destructive Examination of Physical Evidence having come before this Special Master on November 22, 2010, and the Special Master having considered the arguments and briefs previously submitted to Judge Hedlund and other papers as well as supporting affidavits of the parties, and for good cause shown,

**IT IS HEREBY ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

The Special Master **GRANTS** Cooper Tire's request to nondestructively examine, inspect, and/or test the tire at issue in this case at its facility in Findlay, Ohio, or at another location in the continental U.S. to be determined by Cooper. However, the Special Master **DENIES** Cooper Tire's request to do so without plaintiffs' counsel and/or experts present during this process.



Accordingly, the Special Master hereby **ORDERS** that, on a mutually agreed upon day and time within the next forty-five (45) days, Cooper shall transport the tire from its present location to Cooper's Findlay, Ohio facility or other location for inspection, examination, and/or nondestructive testing by Cooper and/or its consultants. Any such examination, inspection, and/or testing will occur in the presence of and under the observation of other parties' counsel and their experts and shall last no longer than ten (10) hours unless agreed otherwise by all counsel. At the end of the inspection, Cooper will remove the tire and return it to plaintiff's own storage facility, unless all counsel agree upon a different procedure.

Prior to the inspection, all parties and Cooper Tire shall identify to each other all individuals expected to be present. To the extent any party plans anything beyond solely examining, measure, documenting or photographing the tire (such as testing or "stretching" the tire, for example), at least five (5) days prior to the inspection, such party shall provide a protocol of any such testing to the other parties' counsel. If there is objection to such procedure, the objection must be raised within two business days by 5:00 pm CST. If the parties cannot agree upon how to proceed, this Special Master should be notified and will rule before anyone is scheduled to travel.

Any party may record the entire inspection by video camera or by another means agreed upon by all counsel, but must give reasonable prior notice. No audio is permitted unless all parties agree. Once a video recording is commenced, the camera may not be turned off unless all parties agree.

2

SuppR 108

Depositions scheduled for the week of December 13, 2010, shall go forward as scheduled unless continued by mutual agreement.

## MEMORANDUM

All parties agree the subject tire is the crucial piece of evidence. All parties may have reasonable access to the tire or the other tires on the vehicle at the time of the accident. The above rule and procedures apply to all future inspections by any experts.

Whichever party desires the evidence to be moved from one location to another bears the responsibility for the safety and custody of the evidence. Care should be taken with respect to the evidence. Destruction or alteration of the evidence will lead the Special Master to make recommendations on spoilation to Judge Hedlund that would be onerous with respect to the party responsible for the care of the evidence when it was damaged, altered or lost.

With respect to plaintiff's choice to depose Cooper employees prior to Cooper's inspection of the subject tire, it is plaintiff that risks the possibility that the deposed employees may learn something as a result of the inspection which might change an answer or answers. All parties are represented by sophisticated counsel with significant experience in product liability litigation and understand the risks regarding deposition and other discovery timing.

3

SuppR 109

Dated: November 24, 2010

By   _____
        Gregory M. Weyandt, Special Master
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

4

SuppR 110

STATE OF MINNESOTA

COUNTY OF HENNEPIN

Pe Chi-A Vang, as guardian of Yee X.
Yang, Blong Van, individually and as parent
and natural guardian of Ladani Vang, a
minor,

Plaintiffs,

v.

Cooper Tire & Rubber Company and HVH
Auto Parts, Inc., d/b/a John's Auto,

Defendants.

DISTRICT COURT

FOURTH JUDICIAL DISTRICT
Case Type: Products Liability

Court File No: 27-CV-10-13554
The Honorable Deborah Hedlund

**ORDER of Special Master**

Defendant Cooper Tire & Rubber Co.'s ("Cooper") Motion to Compel Private,

Non-Destructive Examination of Physical Evidence came before this Special Master on

November 22, 2010, the Special Master considered the arguments and briefs previously

submitted to Judge Hedlund and other papers as well as supporting affidavits of the

parties, and submitted an Order to the parties. Subsequently on November 29, 2010

Cooper sought clarification, other parties responded and an e-mail clarification was

issued on December 12, 2010. Again, Cooper sought modification and an additional

hearing was held on January 3, 2011.

For good cause shown,

**IT IS HEREBY ORDERED** that the motion is **GRANTED IN PART and**

**DENIED IN PART** as follows:

The Special Master **GRANTS** Cooper Tire's request to nondestructively examine, inspect, and/or test the tires at issue in this case at its facility in Findlay, Ohio, or at other locations in the continental U.S. to be determined by Cooper and approved by the Special Master. The Special Master **DENIES** Cooper Tire's request to do so without plaintiffs' counsel and/or experts present during this process.

Accordingly, the Special Master hereby **ORDERS** that, at mutually agreed upon days and times within the next sixty (60) days, Cooper shall cooperate with plaintiffs and be responsible for transportation of the tires from their present location to Cooper's testing facilities for inspection, examination, and/or nondestructive testing by Cooper and/or its consultants. Any such examination, inspection, and/or testing will occur in the presence of and under the observation of other parties' counsel and their experts if they so choose. At the end of the inspection, which may take place at a number of locations over a number of days, Cooper will remove the tires and return them to plaintiff's own storage facility, unless all counsel agree upon a different procedure.

Prior to the inspection, all parties and Cooper Tire shall identify to each other and the Special master all individuals expected to be present. To the extent any party plans anything beyond solely examining, measure, documenting or photographing the tire (such as testing or "stretching" the tire, for example), at least five (5) days prior to the inspection, such party shall provide a protocol of any such testing to the other parties' counsel. If there is objection to such procedure, the objection must be raised within two business days by 5:00 pm CST. If the parties cannot agree upon how to proceed, this Special Master should be notified and will rule before anyone is scheduled to travel.

2

Any party may record the entire inspection by video camera or by another means agreed upon by all counsel, but must give reasonable prior notice. No audio is permitted unless all parties agree. Once a video recording is commenced, the camera may not be turned off unless all parties agree. At the request of all defendants, the Special Master shall be present for all inspections.

Previously, the parties were informed that depositions scheduled for the week of December 13, 2010, were to go forward as scheduled unless continued by mutual agreement.

## MEMORANDUM

All parties agree the subject tires are crucial evidence. All parties may have reasonable access to the tires on the vehicle at the time of the accident. The above rule and procedures apply to all future inspections by any experts of any party.

Whichever party desires the evidence to be moved from one location to another bears the responsibility for the safety and custody of the evidence. Care should be taken with respect to the evidence. Destruction or alteration of the evidence will lead the Special Master to make recommendations on spoilation to Judge Hedlund that would be onerous with respect to the party responsible for the care of the evidence when it was damaged, altered or lost.

The ongoing dialogue on inspections has centered on the need to have enough time to inspect in a way that allows a proper defense. As we move forward, the hours spent photographing and documenting the inspection must be reasonable and any party may seek leave to end inspections if it appears that the time and expense of the inspection

3

is burdensome and or duplicative. This Special Master understands the point argued by Cooper that no one knows how much time plaintiffs experts have spent with the tires and that rules are now in place that were not in place for plaintiffs. While the arguments did not persuade me that the limitations Cooper sought should be in place, the overarching goal in the process will be fairness to all parties.

There has been discussion of how any video of an inspection will be used in the future. There is no reason to make a determination on that at this time except to say that for the present the video recording or recordings are for use in this case and shall not be disseminated beyond the counsel, their experts in this matter and the parties. How the recordings will be used is left open for the future upon application to the Special Master or the Court.

With respect to plaintiff's choice to depose Cooper employees prior to Cooper's inspection of the subject tire, it is plaintiff that risks the possibility that the deposed employees may learn something as a result of the inspection which might change an answer or answers. All parties are represented by sophisticated counsel with significant experience in product liability litigation and understand the risks regarding deposition and other discovery timing.

4

4823-1161-0376\1

Dated:  January 7, 2010

. By _____
     Gregory M. Weyandt, Special Master
1364 California Ave W.
St. Paul, MN 55108
Telephone:  (612) 375-5723

5

FILE COPY

Order · (2/24/05) CCG N002

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

MARTIN SOTENGS, ET AL.,
PLAINTIFFS

v.

No. 08-L-7574

BRIDGESTONE CORPORATION, ET AL
DEFENDANTS

### ORDER

This matter coming to be heard before this Court on Bridgestone's Motion to Compel Production of the Subject Tire and Plaintiff's Motion for Protective Order, and the Court being fully advised in the premises, IT IS HEREBY ORDERED AS FOLLOWS:

(1) With respect to Defendants' motion to compel production of the subject tire, Plaintiffs' counsel shall permit Defendants and their experts to inspect and photograph the subject tire at Plaintiffs' counsel's facility at a date and time mutually convenient to the parties within the next 60 days; Plaintiffs shall have the right to have their counsel and expert present; there shall be no destructive testing and Plaintiff shall retain the tire & maintain responsibility for the integrity of the tire and no changes shall be made to the tire by either party;

(2) The Court shall issue an Order relative to the Motion for Protective Order on March 25, 2010 at 11:30 am without further notice.

Atty. No.: 22565

Name: G. Bellas / Bellas & Wachowsky

Atty. for: Plaintiffs

Address: 15 N. Northwest Hwy

City/State/Zip: Park Ridge 60068

Telephone: 847-823-9030 x 219

Associate Judge Ronald S. Davis

ENTERED:

MAR 0 5 2010

Dated: March 03, 2010

Judge · Judge's No.

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

EXHIBIT
9

MAR 08 2010

# THE EDWARDS LAW FIRM
ATTORNEYS AT LAW
P.O. Box 480
CORPUS CHRISTI, TEXAS 78403-0480
(361) 698-7600

FROST BANK PLAZA
SUITE 1400 - 78401
FAX: (361) 698-7614

JOHN BLAISE GSANGER

January 4, 2011

Via Facsimile: (949) 474-2060

Mr. David Orr
Gordon & Rees LLP
2211 Michelson Drive, Suite 400
Irvine, CA 92612

Re:   Norbert Ortiz, et al. vs. Yokohama Tire Corp., et al.; Cause No. 30-2010-00408867 in Superior
Court for the State of California, County of Orange, Judge Geoffrey T. Glass, Dept. C33, presiding

Dear Mr. Orr:

This letter will confirm our agreement regarding production of the tires for inspection/non-destructive testing by Yokohama Tire Corp., Yokohama Corp. of America, Yokohama Corp. of North America, and Yokohama Rubber Co., Ltd. and its experts. It is my understanding that I will ship the tire at issue in a sealed box to an address which you will provide to me. We agree that the tire will be videotaped during the entire time that the box is open. The faces of individuals performing the inspection/non-destructive testing need not be shown on the videotape, but the videotape will generally show everything that is being done to the tire. I will be provided a copy of the videotape. I will make the companion tires available to you at the warehouse of Webb, Stokes & Sparks in San Angelo, Texas, where your representative may remove the wheels and tires from the vehicle provided he videotapes the process, and he may ship those wheels and tires to the location of your tire inspection, at which point the inspection and videotape protocol for the tire at issue will apply to the inspection of the companion tires.

You will return the tires to me in sealed boxes immediately after the inspection/non-destructive testing has been completed. You further represent to me that no destructive testing will be performed on the tires, nor will the tires be altered. However, if the tires are dismounted or re-mounted on a wheel to determine whether the tires will retain air, the beads of the tires may be lubricated using standard lubrication solution. This will not be considered an alteration of the tires.

If this letter accurately reflects our agreement, please execute the signature line below and return it to me by facsimile for filing with the Court as an evidence inspection protocol agreed by the parties. I will not ship the tire until you ask so that you can coordinate its delivery with the availability of persons to inspect it.

I look forward to your response.

Best regards,

John Blaise Gsanger
THE EDWARDS LAW FIRM

David Orr, Attorney for Defendants Yokohama Tire
Corp., Yokohama Corp. of America, Yokohama Corp.
of North America, and Yokohama Rubber Co., Ltd.

EXHIBIT
10

**FILE COPY**

## THE EDWARDS LAW FIRM, L.L.P.

ATTORNEYS AT LAW
P. O. BOX 480
CORPUS CHRISTI, TEXAS 78403-0480
(361) 698-7600

JOHN BLAISE GRANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

FROST BANK PLAZA
SUITE 1400 78470
FAX: (361) 698-7614

May 14, 2004

Mr. Richard K. Hines, V
Nelson Mullins Riley & Scarborough, LLP
999 Peachtreet Street, N.E., Ste. 1400
Atlanta, Georgia 30309
*Via Facsimile: 404/817-6050*

Re: Cause No. C-737-01-B; Margarita Barrios Toscano, et al, v. Toyota Motor Sales, U.S.A., Inc., et al.; In the 93rd Judicial District Court, Hidalgo County, Texas.

Dear Richard

As we discussed, I will send you the tire and tire pieces, bearing our document numbers 8500-K000019/0020 and 8500-K000027/0028, for your client's inspection upon the following conditions:

1. There will be no destructive testing of the tire or tire pieces;

2. The tire and tire pieces will be shipped in sealed containers to the following address:

   Jonathan Wade
   Michelin North America, Inc.
   1785 New Cut Road
   Spartanburg, SC 29303

3. The sealed containers and their contents will be videotaped as the containers are opened, and the videotape will record the tire and tire pieces during the entire time without interruption from the time the containers are opened until the tire and tire pieces are returned into the containers and the containers are resealed;

4. You will make the person responsible for the inspection and the person responsible for the videotaping aware of the terms of this agreement;



MAY 17 2004

EXHIBIT
tabbies
11

SuppR 118

May 14, 2004
Page 2

5.   The tire and tire pieces will be returned to me in sealed containers along with the videotapes mentioned above for receipt at my office immediately after Joe Grant's deposition;

6.   Michelin North America, Inc. will bear full responsibility for the tire and tire pieces from the time it leaves my office until it is received by my office upon its return from Michelin North America, Inc.

If this letter reflects our agreement, please sign this letter and return the executed coy to me by facs mile.

Best regards,

THE EDWARDS LAW FIRM, L.L.P.

John Blaise Gsanger

JBS/vs

Richard K. Hines, V

No Transmission Information Available for 1S8084164 ················· VDAK6RV1 printed image B00200A8 on AUG 13 11:18AM
    08/13/99  11:17 FAX 512 883 7821        EDWARDS,PERRY,HAAS LLP                          @003

# EDWARDS, PERRY & HAAS, L.L.P.

### ATTORNEYS AT LAW

John Blaine Granger
Board Certified
Civil Appellate Law
Texas Board of Legal Specialization

1400 Frost Bank Plaza
Corpus Christi, Texas 78470
Direct Dial: (361) 491-7610
Email: jgranger@edwardsperryhaas.com

August 13, 1999

Mr. John W. Weber, Jr.                          **FACSIMILE: (210) 270-7205**
Fulbright & Jaworski, L.L.P.
300 Convent Street, Suite 2200
San Antonio, Texas  78205-3792

Re:    Cause No. C-6376-98-F; *Estaban Martinez et al. vs. Ford Motor Company,
       et al.*; In the 332nd Judicial District, Hidalgo County, Texas.

Dear John:

This letter will confirm our agreement regarding production of the accident tire for
inspection/non-destructive testing by Continental General Tire, Inc. and its experts. It is my
understanding that I will ship the accident tire in a sealed box to an address which you will
provide to me.  We agree that the tire will be videotaped during the entire time that the box
is open.  The faces of individuals performing the inspection/non-destructive testing need not
be shown on the videotape, but the videotape will generally show everything that is being
done to the tire.  I will be provided a copy of the videotape.

You will return the accident tire to me in the sealed box immediately after the
inspection/non-destructive testing has been completed.  You further represent to me that no
destructive testing will be performed on the accident tire, nor will the accident tire be altered.
However, if the tire is placed on a wheel to determine whether the tire will retain air, the
beads of the tire may be lubricated using standard lubrication solution.  This will not be
considered an alteration of the tire.

802 N. CARANCAHUA, SUITE 1400 • CORPUS CHRISTI, TEXAS 78470-0100        •       P. O. BOX 480 • CORPUS CHRISTI, TEXAS 78403-0480
                    TELEPHONE (361) 810-7100 • 21st FLOOR FAX (361) 887-6101 • 14th FLOOR FAX (361) 883-7221

EDWARDS, PERRY & HAAS IS A LIMITED LIABILITY PARTNERSHIP THAT INCLUDES PROFESSIONAL CORPORATIONS

**EXHIBIT**
**12**

AUG 1 3 1999

Mr. Steven D. Jansma
August 13, 1999
Page 2

     If this letter accurately reflects our agreement, please execute the signature line below and return same to me by facsimile for filing with the Court as a Rule 11 Agreement. I will not ship the tire until you ask so that you can coordinate its delivery with the availability of persons to inspect it.

     I look forward to your response.

          Best regards,

          EDWARDS, PERRY & HAAS, L. L. P.

          John Blaise Gsanger

JBG/sb

John W. Weber, Jr.

FILE COPY

CAUSE NO. DC-11-501

| | | |
|---|---|---|
| RICHARD CHAVEZ and ESTEVAN CASAS, | ) | IN THE DISTRICT COURT |
| | ) | |
| PLAINTIFFS, | ) | |
| | ) | |
| VS. | ) | |
| | ) | 381" JUDICIAL DISTRICT |
| KUMHO TIRE CO., KUMHO TIRE U.S.A., | ) | |
| INC., and KUMHO IN ITS ASSUMED OR | ) | |
| COMMON NAME; and | ) | |
| | ) | |
| VERONICA LOPEZ TREVINO, | ) | |
| INDIVIDUALLY, and VERONICA LOPEZ | ) | |
| TREVINO d/b/a SCORPION TRUCKING, | ) | |
| | ) | |
| DEFENDANTS. | ) | STARR COUNTY, TEXAS |

## TIRE INSPECTION ORDER

After a hearing on November 28, 2012, the parties in the above-entitled and numbered cause submit the following Tire Inspection Order reflecting the Court's ruling:

(1)     There will be no destructive testing of the tire or tire pieces;

(2)     The tire and tire pieces will be shipped in sealed containers to the following address:

Germer Gertz Beaman & Brown, LLP
301 Congress Ave., Suite 1700
Austin, Texas 78701

(3)     The sealed containers and their contents will be videotaped without sound as the containers are opened, and the videotape will record the tire and tire pieces during the entire time without interruption from the time the containers are opened until the tire and tire pieces are returned into the containers and the containers are resealed; the video shall not identify any faces or identities of the individuals performing the inspection;

(4)     Kumho Tire Co., Inc. and Kumho Tire U.S.A., Inc. ("Kumho") will make the person responsible for the inspection and the videotaping aware of the terms of this Order;

EXHIBIT
13

1

DEC 20 2012

(5) The tire and tire pieces will be returned to Plaintiffs' counsel in sealed containers along with the videotapes mentioned above within 60 days from the date that the tire and tire pieces are received by Kumho or its counsel; and

(6) Kumho will bear full responsibility for the tire and tire pieces from the time it leaves Plaintiffs' counsel until it is received by Plaintiffs' counsel upon its return from Kumho.

SIGNED this the ⅃⅃ day of November, 2012.

_____
Hon. Jose Luis Garza, Presiding Judge

**APPROVED AS TO FORM:**

By: _____
John Blaise Gsanger
The Edwards Law Firm
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401-0480

ATTORNEYS FOR PLAINTIFFS
RICHARD CHAVEZ and ESTEVAN CASAS

By: _____
Chris Pearson          w/ permission
Germer Gertz Beaman & Brown, LLP
301 Congress Ave., Suite 1700
Austin, Texas 78701
ATTORNEYS FOR DEFENDANTS
KUMHO TIRE CO., INC. and KUMHO TIRE U.S.A., INC.

FILED
AT 3:33 O'CLOCK P M

DEC 14 2012

ELOY R. GARCIA
DISTRICT CLERK STARR CO, TX
BY _____ DEPUTY

2

| | | |
|---|---|---|
| KYLE ALLEN WEST, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | 112th JUDICIAL DISTRICT |
| | § | |
| COOPER TIRE AND RUBBER CO., | § | |
| ELDORADO TIRE IN ITS ASSUMED OR | § | |
| COMMON NAME, and CANDICE | § | |
| BUCKNER; | § | |
| | § | |
| Defendants. | § | REAGAN COUNTY, TEXAS |

## AFFIDAVIT OF JOHN GSANGER

BEFORE ME, the undersigned authority, on this day personally appeared John Blaise Gsanger, who, being by me duly sworn, deposed and stated as follows:

1.    "My name is John Blaise Gsanger. I am of sound mind. I am over eighteen years of age, and have never been convicted of a felony crime or other crime involving moral turpitude. I am fully competent to make this affidavit. The following facts are true and correct and are within my personal knowledge.

2.    I am an attorney licensed to practice law in the State of Texas, and I am a partner with The Edwards Law Firm. I am counsel of record representing the Plaintiff in Cause No. 1721 styled as *West v. Cooper Tire and Rubber Co. et al.,* in the 112th Judicial District, District Court, Reagan County, Texas.

3.    I have served as counsel in *Martha Rodriguez, et al. v. Firestone Tire & Service Centers et al.,* No. C-115396 (244th Dist. Ct. Ector County Tex.), where various experts claimed that



EXHIBIT
14

other experts damaged the bead of the tire dismounting and mounting it after the crash, and this dispute affected the trial strategy of the case.[1]

4.      I have also served as counsel in *Kimberly Dee Hargrove et al. v. Hankook Tire America Corp. et al.*, No. 42940 (118th Dist. Ct. Howard County Tex.), where the plaintiffs' retained expert found no tear in the tire carcass which penetrated the tire's innerliner,[2] and the defense's retained expert found no tear in the tire carcass which penetrated the tire's innerliner,[3] but the third and final inspection by defendant's in-house forensic analyst found a tear in the carcass which penetrated the innerliner.[4] The defense claimed to have found this innerliner puncture – which experts for both sides did not detect in their earlier inspections – by probing a tear in the carcass with an unbent paper clip[5] to explore if that tear penetrated through the innerliner. The question whether the defendant found the innerliner puncture with this probing or created the puncture with this probing became the issue that dominated the case from that point forward.

5.      I have also served as counsel in *Sara Cruz et al. v. Michelin North America et al.*, No. 2007-CV-0141-A (197th Dist. Ct. Willacy County Tex.), where the defense expert (Joe Grant) identified red paint marks on the detached tire tread as a paint mark transferred from the vehicle

---

[1] Please see Exhibit 14-A (excerpt from report of James Gardner, retained for Pirelli, who claimed the bead damage preexisted the tire failure and caused air to permeate the carcass which contributed to the tire failure); Exhibit 14-B (excerpts from the deposition of James Gardner first claiming that bead damage caused the failure, and then expressing uncertainty); Exhibit 14-C (excerpts from the deposition of Joe Grant, retained for the tire service center, claiming that the bead damage was most likely caused, probably by Roger Wilson, dismounting and remounting the tire after the crash); Exhibit 14-D (excerpt of the report of David Osborne, retained for the plaintiffs, who initially claimed the bead damage was post-crash damage which did not contribute to the tire failure); Exhibit 14-E (excerpts from the deposition of David Osborne, revising his initial opinion to claim that he is not certain when the damage occurred); Exhibit 14-F (email correspondence from Sherry Bankhead, counsel for the tire service center, documenting the confusion about who may have dismounted the tire and when the damage to the bead may have occurred); Exhibit 14-G (excerpts from the closing arguments at trial, where some of the evidence presented during trial regarding the origin of the bead damage was addressed).

[2] Please see Exhibit 14-H (excerpt from the report of David Osborne confirming that he found no puncture in the tire); Exhibit 14-I (excerpt from the deposition of David Osborne confirming that he found no puncture in the tire).

[3] Please see Exhibit 14-J (excerpts from the deposition of Charles Gold, retained by Hankook, confirming that his inspection of the tire revealed no puncture).

[4] Please see Exhibit 14-K (excerpts from the deposition of Charles Gold confirming that a puncture was first noted at a third inspection with Hankook's in-house analyst).

[5] Please see Exhibit 14-L (excerpts from the deposition of Charles Gold discussing probing the tire by pushing a paper clip between components of the tire).

2

to the tire during the crash sequence, and the defense expert then used this transfer mark as evidence to support the defense of the case.[6] Analysis of the photographs taken before the detached tread was shipped to the defendant confirmed that the red paint mark was not on the tread at that time, and analysis of the red paint on the tire as compared with the paint on the red truck confirmed that the two paints were chromatically similar but chemically different.[7] This issue became a significant and time consuming distraction which affected the trial strategy of the case.

6.      I have also served as counsel in *Bertha Orozco et al. v. Michelin North America et al.,* No. 06-02-0007-CYL (81st Dist. Ct. La Salle County Tex.), where a tire was lost in shipping on its return to the plaintiffs' counsel's office, and it was eventually found (separated from its shipping container) and returned in the condition as depicted in the attached photograph.[8]

Further affiant sayeth not."



John Blaise Gsanger

SWORN AND SUBSCRIBED TO on this 1st day of May, 2013, as witness whereof is set my hand and seal of office.

DAYNA D. DIERINGER
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-19-2013

_____
Notary Public in and for the State of Texas

---

[6] Please see Exhibit 14-M (excerpt from report of Joe Grant, retained for Michelin, who initially claimed that red paint on a piece of detached tread supported his tire-failure opinion); Exhibit 14-N (excerpts from the initial deposition of Joe Grant, where he attributed the red paint to the localized impact with a red pickup truck); Exhibit 14-O (excerpts from Joe Grant's third deposition conducted on the eve of trial where he further revised his opinion about the red paint).

[7] Please see Exhibit 14-P (excerpts from the second deposition of Joe Grant, where he revised his initial opinion about the red paint to claim the red marks were placed on the tread at some time after the accident).

[8] Please see Exhibit 14-Q, a photograph of the tire exactly as it was received from the shipping agent.

3

**NO. 2014-57952**

| | | |
|---|---|---|
| KOLLYE KILPATRICK, et al., Plaintiffs, | § § § § § | IN THE DISTRICT COURT |
| AND | § § | |
| ROBERT DWAYNE COLEMAN, et al., Intervening Cross-Claimant and Plaintiffs, | § § § | |
| VS. | § § § | HARRIS COUNTY, TEXAS |
| MICHELIN NORTH AM., INC., et al., Defendants. | § § | 152nd JUDICIAL DISTRICT |

---

### INTERVENORS' OPPOSITION TO DEFENDANT MICHELIN'S MOTION FOR CONTINUANCE OF HEARING ON MOTION TO PRESERVE EVIDENCE

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Intervenors, Robert Coleman and his sons Blayne Cook and Cameron Cook, minors, by and through their mother and next friend Kim Coleman (collectively "the Coleman family") and file their opposition to the motion for continuance of hearing filed by Michelin North America, Inc. (hereafter "Michelin"), and would show the Court as follows:

### I. Summary

For months, Michelin has been aware of the Coleman family's request to preserve the evidence (the two specifically identified tire building machines used to build the failed tire at issue) and to allow access to those two machines. *See, e.g., Ex. 1 – 6.*

In fact, on January 2, 2015, at the last hearing in this case, the Coleman family raised its concern about Michelin's unwillingness to preserve the evidence the family has asked Michelin to preserve, and the Court asked us to come back at another time to address that issue.

1

Now that the parties have re-set that matter for consideration on January 30, Michelin wishes to postpone that hearing despite the fact that all parties will be appearing before the Court on another matter (the hearing on Kilpatrick's Motion to Compel is set for January 30). When Michelin asked for additional time to respond to the Coleman family's motion, the Coleman family offered Michelin additional time to respond to the motion and also offered to postpone the hearing on the motion to compel if Michelin would agree to preserve the evidence:

> If you will agree to my request for preservation of evidence (i.e., if you will videotape the machines and processes I have requested to observe for in camera tender to the trial court), I can agree to postpone the hearing on the motion to compel.

> Alternatively, if you would rather just have an extra four days to respond to the motion to compel (i.e., if you want to serve your affidavits three days before the hearing instead of the seven days required by Tex. R. Civ. P. 193.4(a)), I can agree to that if you will serve those affidavits by email so that they are received by me at least 72 hours before the hearing.

> For months, you have been aware of both my discovery request and also my request for the preservation of evidence, and yet you have not even agreed to preserve the evidence let alone provided any response to my request for a protocol to observe the two tires building machines at issue. Under these circumstances, we cannot agree to put off the hearing unless you will agree to preserve the evidence as requested above.

*Ex. 6.* Michelin rejected these offers to provide Michelin with extra time to respond to the discovery matter which Michelin has known about for several months, and Michelin will not even agree to preserve the evidence which has been requested.

## II. Chronology of Requests for Preservation of Evidence and Access to that Evidence

On September 15, 2014, the Coleman family first informed Michelin of their request to observe the specific tire building machines used to build the failed subject tire at Michelin's Fort Wayne, Indiana plant:

> … I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in

2

your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

*See Ex. 1.* Again, on December 10, 2014, the Coleman family requested to observe this original evidence in Michelin's possession, and invited Michelin to propose a protocol to govern this process:

> As I mentioned back in September, I wish to inspect (1) the tire inspection room and the final finish tire inspection process at the Ford Wayne tire plant where the tire was made as well as (2) the tire building machines which were used to assemble the innerliner and the steel belts with their nylon reinforcement into the failed Coleman tire bearing DOT No. BFW802110611. Please send me a proposed protocol for the inspection of the final finish inspection room, the final finish inspection process, and two tire building machines (the first stage machine used to assemble the innerliner and the second stage machine used to assemble the belt package).

*See Ex. 2.*

On December 19, 2014, the Coleman family formally requested to observe the specific tire building machines at issue:

> Robert Coleman proposes that the observation should include the machine or machines used to place the innerliner on the tire building drum and to assemble the belts and nylon reinforcement into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant … and the scope of the observation should not include any sampling or destructive testing and should include nothing more than a visual observation – including recording by videotape – and be limited to one hour of observation and videotaping the machines while they are in use.

*See Ex. 3.* On December 19, the Coleman family also served Michelin with Requests for Admission regarding the tire building machines at issue; Michelin confirmed that it was in possession of the specified machines:

> **REQUEST FOR ADMISSION NO. 82:** Admit Michelin currently has possession of the first stage tire building machines used to build LT265/75R16 BF

Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011.

**RESPONSE:**

Admitted.

…

**REQUEST FOR ADMISSION NO. 83:** Admit Michelin currently has possession of the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011.

**RESPONSE:**

Admitted.

*See Ex. 4.*

On December 24, 2014, in response to Michelin's motion to compel production of the failed tire, the Coleman family once again notified Michelin of their request that Michelin preserve the tire building machine evidence at issue so that it might be observed at a later date:

> By this specific request, the Coleman family is not seeking production of documentation about the current status of first and second stage tire building machines used to assemble LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant; the Coleman family is just seeking to have Michelin document and preserve that evidence.

*See Ex. 5.* This issue regarding the specified tire building machines was briefly discussed at the January 2, 2015 hearing on Michelin's motion to compel.

Four months have passed since the Coleman family provided Michelin with notice of their intent to observe specific tire building machines.[1] In those four months, Michelin has refused to discuss a protocol for preservation or observation of this critical evidence.

---

[1] Michelin's motion for continuance mischaracterizes the discovery dispute at issue by stating that "intervenors are actually seeking … an inspection of the Fort Wayne plant." To the contrary, the Coleman family only seeks one hour of limited observation of two machines at the plant, but Michelin's attempt to mischaracterize the dispute is immaterial to the motion for continuance so it will be more fully addressed as part of the discovery response.

4

### III. Michelin Rejected Compromises Proposed by the Coleman Family

The Coleman family offered to continue the hearing on their motion to compel access to the tire building machines if Michelin would agree to videotape the specifically-identified machines and processes at issue:

> If you will agree to my request for preservation of evidence (i.e., if you will videotape the machines and processes I have requested to observe for in camera tender to the trial court), I can agree to postpone the hearing on the motion to compel. Alternatively, if you would rather just have an extra four days to respond to the motion to compel (i.e., if you want to serve your affidavits three days before the hearing instead of the seven days required by Tex. R. Civ. P. 193.4(a)), I can agree to that if you will serve those affidavits by email so that they are received by me at least 72 hours before the hearing. For months, you have been aware of both my discovery request and also my request for the preservation of evidence, and yet you have not even agreed to preserve the evidence let alone provided any response to my request for a protocol to observe the two tires building machines at issue. Under these circumstances, we cannot agree to put off the hearing unless you will agree to preserve the evidence as requested above.

*See Ex. 6.* Michelin did not agree to videographically preserve the evidence, and Michelin rejected the Coleman family's offer to extend Michelin's deadline to serve a responsive affidavit.

The Coleman family again offered to postpone the hearing on their motion to compel if Michelin would merely agree to the request for preservation of evidence:

> I am willing to offer you two options to accommodate your request for additional time to respond to the motion to compel:
> > 1. If you want an extra four days to respond to the motion to compel (i.e., if you want to serve your affidavits three days before the hearing instead of the seven days required by Tex. R. Civ. P. 193.4(a)), I can agree to that if you will serve those affidavits by email so that they are received by me at least 72 hours before the hearing.
> > 2. If you will agree to my request for preservation of evidence (i.e., if you will videotape the machines and processes I have requested to observe for in camera tender to the trial court), I can agree to postpone the hearing on the motion to compel.
> This is far more consideration than you offered me when you scheduled your motion to compel on January 2 after I specifically told that I was unavailable.

5

*See Ex. 7*. Michelin again refused. Furthermore, Michelin again rejected the Coleman family's proposed extension of time during which Michelin is allowed to serve its affidavit in response to the motion to compel. Because Michelin rejected the Coleman family's efforts to compromise, the Coleman family must oppose continuation of the hearing.

### IV. Continuation Would Frustrate Judicial Economy and Waste Parties' Resources

The Court has already set Plaintiffs' Motion to Compel Defendant Michelin North America, Inc. to Comply with Rule 194 for hearing on January 30, 2014 – the same day on which the hearing on the Coleman family's motion to preserve is also set. Continuation of the hearing on the Coleman family's motion to a separate date would unnecessarily burden the Court, would frustrate judicial economy, and would waste the parties' resources because separate hearings would necessitate additional travel for the parties' counsel.

### V. Conclusion and Prayer for Relief

The Coleman family requests that this Court deny Michelin′s motion for continuance of the hearing on the Coleman family′s motion to compel access to specifically-identified tire building machine, or, in the alternative, motion for entry of an order preserving this evidence.

Respectfully submitted,

_____/s/John Blaise Gsanger_____
John Blaise Gsanger   TX #00786662
THE EDWARDS LAW FIRM
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone:  (361) 698-7600
Facsimile:  (361) 698-7614
jgsanger@edwardsfirm.com

ATTORNEY FOR PLAINTIFFS

6

## CERTIFICATE OF CONFERENCE

The parties have conferred regarding continuation and have been unable to reach an agreement.

_____/s/John Blaise Gsanger_____
JOHN BLAISE GSANGER


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded to the following counsel in the manner indicated on the 23rd day of January, 2015.

*Facsimile: (512) 472-0721*
Thomas M. Bullion III
GERMER BEAMAN & BROWN, L.L.P.
301 Congress Avenue, Suite 1700
Austin, Texas 78701

*Facsimile: (713) 523-4159*
Robert E. Ammons
THE AMMONS LAW FIRM, LLP
3700 Montrose Boulevard
Houston, Texas 77006

*Facsimile: (800) 637-1955*
Timothy D. Riley
THE CIVIL JUSTICE CENTER
112 East 4th Street
Houston, Texas 77007-2502

*Facsimile: (254) 751-9133*
Michael Bourland
WITT, MCGREGOR & BOURLAND, P.L.LC.
8004 Woodway Drive, Suite 400
Waco, Texas 76712-3648

_____/s/John Blaise Gsanger_____
Counsel for Plaintiffs

7

SuppR 133

JOHN BLAISE GSANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

September 15, 2014

FROST BANK PLAZA
SUITE 1400   78470
FAX: (361) 698-7614

Tom Bullion
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701
Email: tbullion@germer-austin.com

*Via Facsimile: 512/472-0721*

Re:   Date of Crash: August 24, 2014
      Your Product: LT 265/75R16 BF Goodrich Rugged Terrain T/A
      DOT No: BFW802110611

Dear Tom:

I am writing to you in your capacity as counsel for Michelin North America, Inc.

I am investigating a potential claim on behalf of Robert Coleman and his wife, Kim. Mr. Coleman was involved in an August 24, 2014 crash that resulted from the failure of a BF Goodrich Rugged Terrain T/A tire made in February of 2011 by Michelin in Fort Wayne, Indiana. Mr. Coleman was driving on Texas State Highway 36 when the tread separated from his left front tire, precipitating the crash. I will forward the Texas Peace Officer's crash report for your reference when I receive it.

As part of my investigation, I intend to examine the subject tire. To facilitate this examination, I will dismount the failed tire from the wheel rim. I intend to videotape this process. You and any other representatives from Michelin are welcome to attend. As you can see from the attached photo, the front of the F-250 is displaced to the left. I will also fold back or remove the bumper sufficiently to bring the vehicle into my evidence warehouse. Likewise, this process will be videotaped regardless of whether or not your client or its representative are present.

If you, Michelin, or any affiliated companies wish to have a representative present during this dismounting or bumper displacement, please contact me by 12:00 noon on September 18, 2014. If I have not heard from you or another representative of your client by that time, I will proceed to dismount the tire from the wheel and displace the bumper. Please feel free to contact me either to arrange for viewing of the dismounting or bumper displacement or if you have any questions.

This letter also provides notice of breach of warranty and DTPA claims as well as claims for negligence in the tire manufacturing and design process, negligence in the post-sale duties Michelin undertook, and strict products liability. This letter also intended gives notice of anticipated litigation so that Michelin will preserve all evidence relevant to this matter, including



EXHIBIT

1

– but certainly not limited to – the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011, contact information for the tire builders and tire inspectors working at the Fort Wayne plant in February of 2011, the trial testimony and depositions and other witness statements of those who have knowledge of the conditions at the Fort Wayne plant, documentation of roof leaks and repairs at the Fort Wayne plant during 2011, documentation of insect and animal infestation at the Fort Wayne plant in 2011, the training and work procedure materials and videotapes for tire builders and tire inspectors working at the Fort Wayne plant in 2011, the training and work procedure materials for Michelin personnel who reviewed tires made in 2011 and returned under warranty, information about property damage claims and injury or death claims involving 16 inch light truck tires, information Michelin reported to any government agency about 16 inch light truck tires, documentation of Michelin's destruction of the Light Truck Task Force documents at a time when light truck claims against Michelin were pending, marketing literature for 16 inch light truck tires sold by Michelin, the complete reaction limits and tolerances and complete tire building manual and aspect classifications and decision trees applicable to BF Goodrich Rugged Terrain T/A tires made at the Fort Wayne plant, the specifications for 265/75R16 tires made by Michelin in 2011 and the alternative design specifications for other tires made by Michelin in 2011 with additional durability-enhancing or tread-separation reducing design features which were omitted from the LT 265/75R16 BF Goodrich Rugged Terrain T/A's design.

Best regards,

THE EDWARDS LAW FIRM

John Gsanger

P.S. I am happy to have you inspect the tire as often as you wish and for as long as you wish provided that this original evidence remains in my custody while your client inspects it pursuant to Rule 196.3(b) of the Texas Rules of Civil Procedure. From past experience, I know you would prefer to take custody of the tire to have it inspected at an unknown location by unidentified persons according to an undisclosed protocol. I cannot agree to that, but I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

Tom Bullion
GERMER BEAMAN & BROWN, LLP
September 15, 2014
Page -2-


cc:
Giles M. Schanen                                    *Via Facsimile: 864/250-2375*
NELSON MULLINS RILEY & SCARBOROUGH LLP
Poinsett Plaza
104 South Main Street, Greenville, SC 29601
Email: giles.schanen@nelsonmullins.com



# THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

(361) 698-7600

JOHN BLAISE GSANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

FROST BANK PLAZA
SUITE 1400   78470
FAX: (361) 698-7614

December 10, 2014

**VIA FACSIMILE: (512) 472-0721**
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, TX 78701
Email: tbullion@germer-austin.com

> Re: Cause No. 2014-57952; *Kollye Kilpatrick, Individually as Heir at Law and Representative of the Estate of Beverly Ann Kilpatrick, deceased; Eric Kilpatrick; and Karen Kilpatrick v. Michelin North America, Inc. and Robert Dwayne Coleman*; In the 152nd Judicial District, Harris County, Texas.

Dear Kathy:

Michael Bourland and Tim Riley forwarded a copy of your December 9 letter about inspecting the failed Coleman tire to me.

As I mentioned in my prior correspondence with Tom Bullion (attached), I have been investigating the August 24 crash resulting from the failure of the LT265/75R16 BF Goodrich Rugged Terrain T/A tire bearing DOT No. BFW802110611.

I understand that your client will want to inspect the original tire evidence rather than a mere copy or photographs of the tire. See Tex. R. Civ. P. 196.3(b). I am happy to produce the original tire as it is kept in the ordinary course of business for inspection either at my office or at my warehouse. Moreover, I am happy for you, Mr. Bullion, your client, and your client's representatives to inspect the tire as often as you want and for as many different inspections as you may want, but preservation of this key piece of evidence in my clients' possession custody and control is of paramount importance. Accordingly, please see the attached inspection protocol previously agreed in this matter. If this protocol is acceptable, please ask Mr. Bullion to sign the agreement below Rob Ammons' signature.

As I mentioned back in September, I wish to inspect (1) the tire inspection room and the final finish tire inspection process at the Ford Wayne tire plant where the tire was made as well as (2) the tire building machines which were used to assemble the innerliner and the steel belts with their nylon reinforcement into the failed Coleman tire bearing DOT No. BFW802110611. Please send me a proposed protocol for the inspection of the final finish inspection room, the final finish inspection process, and two tire building machines (the first stage machine used to assemble the innerliner and the second stage machine used to assemble the belt package).

Best regards,

THE EDWARDS LAW FIRM

John Gsanger

EXHIBIT
2

SuppR 138

Tom Bullion
GERMER BEAMAN & BROWN, LLP
December 10, 2014
Page -2-

cc:

**VIA FACSIMILE: (800) 637-1955**
Tim Riley
Riley Law Firm
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007

**VIA FACSIMILE: (254) 751-9134**
Michael Bourland
Witt, McGregor & Bourland, PLLC
8004 Woodway Drive, Suite 400
Waco, Texas 76712

**VIA FACSIMILE: (713) 523-4159**
Rob Ammons
Bennett Midlo
The Ammons Law Firm
3700 Montrose Blvd.
Houston, Texas 77006

# THE EDWARDS LAW FIRM

ATTORNEYS AT LAW

P. O. BOX 480

CORPUS CHRISTI, TEXAS 78403-0480

(361) 698-7600

JOHN BLAISE GSANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

FROST BANK PLAZA
SUITE 1400   78470
FAX: (361) 698-7614

September 15, 2014

Tom Bullion

GERMER BEAMAN & BROWN, LLP

301 Congress Avenue, Suite 1700

Austin, TX 78701

Email: tbullion@germer-austin.com

*Via Facsimile: 512/472-0721*

Re:    Date of Crash: August 24, 2014
       Your Product: LT 265/75R16 BF Goodrich Rugged Terrain T/A
       DOT No: BFW802110611

Dear Tom:

I am writing to you in your capacity as counsel for Michelin North America, Inc.

I am investigating a potential claim on behalf of Robert Coleman and his wife, Kim. Mr. Coleman was involved in an August 24, 2014 crash that resulted from the failure of a BF Goodrich Rugged Terrain T/A tire made in February of 2011 by Michelin in Fort Wayne, Indiana. Mr. Coleman was driving on Texas State Highway 36 when the tread separated from his left front tire, precipitating the crash. I will forward the Texas Peace Officer's crash report for your reference when I receive it.

As part of my investigation, I intend to examine the subject tire. To facilitate this examination, I will dismount the failed tire from the wheel rim. I intend to videotape this process. You and any other representatives from Michelin are welcome to attend. As you can see from the attached photo, the front of the F-250 is displaced to the left. I will also fold back or remove the bumper sufficiently to bring the vehicle into my evidence warehouse. Likewise, this process will be videotaped regardless of whether or not your client or its representative are present.

If you, Michelin, or any affiliated companies wish to have a representative present during this dismounting or bumper displacement, please contact me by 12:00 noon on September 18, 2014. If I have not heard from you or another representative of your client by that time, I will proceed to dismount the tire from the wheel and displace the bumper. Please feel free to contact me either to arrange for viewing of the dismounting or bumper displacement or if you have any questions.

This letter also provides notice of breach of warranty and DTPA claims as well as claims for negligence in the tire manufacturing and design process, negligence in the post-sale duties Michelin undertook, and strict products liability. This letter also intended gives notice of anticipated litigation so that Michelin will preserve all evidence relevant to this matter, including

— but certainly not limited to — the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011, contact information for the tire builders and tire inspectors working at the Fort Wayne plant in February of 2011, the trial testimony and depositions and other witness statements of those who have knowledge of the conditions at the Fort Wayne plant, documentation of roof leaks and repairs at the Fort Wayne plant during 2011, documentation of insect and animal infestation at the Fort Wayne plant in 2011, the training and work procedure materials and videotapes for tire builders and tire inspectors working at the Fort Wayne plant in 2011, the training and work procedure materials for Michelin personnel who reviewed tires made in 2011 and returned under warranty, information about property damage claims and injury or death claims involving 16 inch light truck tires, information Michelin reported to any government agency about 16 inch light truck tires, documentation of Michelin's destruction of the Light Truck Task Force documents at a time when light truck claims against Michelin were pending, marketing literature for 16 inch light truck tires sold by Michelin, the complete reaction limits and tolerances and complete tire building manual and aspect classifications and decision trees applicable to BF Goodrich Rugged Terrain T/A tires made at the Fort Wayne plant, the specifications for 265/75R16 tires made by Michelin in 2011 and the alternative design specifications for other tires made by Michelin in 2011 with additional durability-enhancing or tread-separation reducing design features which were omitted from the LT 265/75R16 BF Goodrich Rugged Terrain T/A's design.

Best regards,

THE EDWARDS LAW FIRM

John Gsanger

P.S. I am happy to have you inspect the tire as often as you wish and for as long as you wish provided that this original evidence remains in my custody while your client inspects it pursuant to Rule 196.3(b) of the Texas Rules of Civil Procedure. From past experience, I know you would prefer to take custody of the tire to have it inspected at an unknown location by unidentified persons according to an undisclosed protocol. I cannot agree to that, but I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

Tom Bullion
GERMER BEAMAN & BROWN, LLP
September 15, 2014
Page -2-


cc:
Giles M. Schanen                                    *Via Facsimile: 864/250-2375*
NELSON MULLINS RILEY & SCARBOROUGH LLP
Poinsett Plaza
104 South Main Street, Greenville, SC 29601
Email: giles.schanen@nelsonmullins.com

SuppR 142



COPY

# THE EDWARDS LAW FIRM

ATTORNEYS AT LAW
P. O. BOX 480
CORPUS CHRISTI, TEXAS 78403-0480
(361) 698-7600

JOHN BLAISE GRANGER
BOARD CERTIFIED
CIVIL APPELLATE LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

September 9, 2014

FROST BANK PLAZA
SUITE 1400   78470
FAX: (361) 698-7614

Rob Ammons
Bennett Midlo
The Ammons Law Firm
3700 Montrose Blvd.
Houston, Texas 77006

RE:     Kilpatrick / Coleman v. MNA
        Inspection protocol re: 2001 Ford F-250; #1FTNW20F21EB58963
        Date of Crash: August 24, 2014

Dear Mr. Ammons:

As we have discussed, the failed tire is a key component of the evidence in this case and maintaining the integrity of this evidence is of utmost importance. We have discussed your proposed inspection protocol in detail and agreed that a representative of Robert Coleman may be present at the inspection and may photograph or videotape the tire during inspection and further agreed that it is a visual and photographic inspection only and the only tools eligible to be used on the tire include a tire crayon or pen, a tread depth gauge, a durometer, and a laser profiler (other inspection methods and other devices to be used on the tire are prohibited unless videotaped and agreed in writing in advance). Please sign this letter to indicate that you understand and agree to these terms regarding your inspection of the subject tire, tire pieces, and wheel:

1.  You will take extraordinary care to preserve the tire and any tire pieces and wheel in their current condition.

2.  You will not conduct destructive testing of the tire or tire pieces or wheel.

3.  You will not wash the tire or use any solvents on the tire or tire pieces (the only potential exception to this rule would be in the event of future dismounting or re-mounting of the tire which you are not permitted to perform at this time and – if it is agreed at any point in the future – your dismount or re-mount will be pursuant to paragraph 11, below).

4.  You will not remove samples from the tire or tire pieces.

5.  You will not attempt to re-inflate or otherwise pressurize the tire or any part of the tire with air, oxygen, nitrogen, or any other gas (if you want to leak test any portion of the tire, you will need to let me know in advance and videotape that process after getting my written approval of the procedure to be used and any potential shearography will br governed by paragraph 9, below).

6.  You will not alter the tire or tire pieces (only tire pen or crayon marks for measurements purposes are acceptable).

7.  You will not use metal tools or other hard objects on the tire or tire pieces (only a tread depth gauge or durometer or laser profiler are acceptable and those tools may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

SEP 09 2014

8.  You will not use a tire spreader or other tools to spread or pull apart any part of the tire (if you want to use a tire spreader you must get my advance written approval of the spreader you intend to use and any such spreader may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

9.  You will not conduct shearography on the tire (if you want to shearograph the tire, you will need to obtain my advance written approval of the facility and methods to be used and such methods may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

10. You will not x-ray on the tire or tire pieces (if you want to x-ray the tire and tire pieces, you will need to obtain my advance written approval of the facility and methods to be used and such methods may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

11. You will not attempt to dismount or re-mount the tire (if you want to dismount or re-mount the tire, you will need to discuss the proposed protocol with me first, you will need to obtain my written approval in advance, and you will need to videotape the process and such processes may only be used in the presence of the representative of Robert Coleman or while being videotaped with the videotapes disclosed to Robert Coleman's representative within 7 days).

12. You will not peel back laminated structures on the tire or tire pieces (if you have any questions, call me first before proceeding and must not proceed without advance written approval).

13. You will not probe the tire or tire pieces with pointed instruments (this is not to preclude measurements of the tread depth).

14. You will not ship the tire with Styrofoam peanuts or other Styrofoam or plastic packing filler and will not ship the tire with any tire pieces stored in the tire cavity.

15. If the tire and tire pieces or wheel rim leave my possession by written agreement, you and your client will be responsible for the tire and tire pieces and wheel rim from the time they leave my possession until they are received by my office upon its return from you or your client.

This protocol is intended to augment our prior agreement about the evidence in this case, and it is not intended that there should be any conflict between this agreement and that prior agreement. Any such conflict (if one exists) should be resolved by deferring to the prior agreement. Please return a signed copy of this agreement to my office.

Best regards,

The Edwards Law Firm

John Blaise Gsanger

AGREED
By: _____
Rob Ammons            by permission

### NO. 2014-57952

| | | |
|---|---|---|
| KOLLYE KILPATRICK, Individually as Heir at Law and Representative of the Estate of BEVERLY ANN KILPATRICK, Deceased; ERIC KILPATRICK; and KAREN KILPATRICK<br>    Plaintiffs,<br><br>AND<br><br>ROBERT DWAYNE COLEMAN, Individually, and KIMBERLY COLEMAN as Next Friend of BLAYNE MICHAEL COOK and CAMERON BAILEY COOK, minors,<br>    Intervening Plaintiffs and Cross-Claimant,<br><br>VS.<br><br>MICHELIN NORTH AMERICA, INC., BF GOODRICH in its assumed or common name, and ROBERT DWAYNE COLEMAN<br>    Defendants. | § § § § § § § § § § § § § § § § § § § § § § § | IN THE DISTRICT COURT<br><br><br><br><br><br><br><br>HARRIS COUNTY, TEXAS<br><br><br><br>152nd JUDICIAL DISTRICT |

## INTERVENING COLEMANS' REQUEST FOR DISCLOSURE, FIRST REQUESTS FOR ADMISSION, INTERROGATORY, AND REQUESTS FOR PRODUCTION TO DEFENDANT, MICHELIN NORTH AMERICA, INC.

*TO:    Defendant, MICHELIN NORTH AMERICA, INC., by and through its attorney Thomas M. Bullion III, Germer Beaman & Brown, L.L.P. 301 Congress Avenue, Suite 1700 Austin, Texas 78701*

COME NOW Intervening Cross-Claimant and Plaintiffs, Robert Dwayne Coleman Individually and Kim Coleman as Next Friend of Blayne Michael Cook and Cameron Bailey Cook, minors, (hereinafter, "The Coleman Family") in the above-styled and numbered cause and file the following Request for Disclosure, First Requests for Admissions, Interrogatory, and Requests for Production to Defendant Michelin North America, Inc., under the provisions of



EXHIBIT
3

Rules 194, 196, 197, and 198, TEX. R. CIV. P., and require that answers to the same be filed no later than thirty (30) days after the date of service hereof.

Please Note:

Failing to fully respond, giving incomplete or false answers, or abusing the discovery process in any manner may result in the imposition of discovery sanctions against you, including, but not limited to, a default judgment, an order disallowing further discovery, taking facts as established, precluding the introduction of evidence, treating such abuses as contempt of court, and requiring the payment of the Hall family's expenses and attorney's fees. See TEX.R.CIV.P. 215.

The undersigned attorney, as one of the attorneys of record for the Plaintiffs, certifies that true and correct copies of the attached document have been forwarded to the registered agent listed above.

Respectfully submitted,

**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone No. (361) 698-7600
Facsimile No. (361) 698-7614

By:     /s/ John Blaise Gsanger
        John Blaise Gsanger
        State Bar No. 00786662
        jgsanger@edwardsfirm.com
        Gary Scott Marshall
        State Bar No. 24077207
        smarshall@edwardsfirm.com
        ATTORNEYS FOR INTERVENING PLAINTIFFS

SuppR 147

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded to the following counsel in the manner indicated on the 19th day of December, 2014.

*Facsimile: (512) 472-0721*
Thomas M. Bullion III
Germer Beaman & Brown, L.L.P.
301 Congress Avenue, Suite 1700
Austin, Texas 78701

*Facsimile: (713) 523-4159*
Robert E. Ammons
The Ammons Law Firm, LLP
3700 Montrose Boulevard
Houston, Texas 77006

*Facsimile: (800) 637-1955*
Timothy D. Riley
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007-2502

*Facsimile: (254) 751-9133*
Michael Bourland
Witt, McGregor & Bourland, P.L.LC.
8004 Woodway Drive, Suite 400
Waco, Texas 76712-3648

/s/ John Blaise Gsanger
Counsel for Plaintiffs

Coleman First RFD, RFA, Interrogatories, and RFP to Defendant, Michelin

3

responsibilities included tire building or tire inspecting, (f) the falsification of inspections on inspection documentation, (g) allegations of insufficient time for employees to perform quality tire building or quality tire inspecting, (h) the use of out of specification tire components in the tire assembly processes, (i) the use of rubber or rubber-coated tire components which had lost some of their tackiness before being implemented in the tire assembly process, (j) the use of solvent in an attempt to restore tackiness to rubber or rubber-coated tire components which had lost some of their tackiness before being implemented in the tire assembly process, (k) trapped air in tires during the tire assembly or curing or inspection processes, (l) trapped moisture in tires during the tire assembly or curing or inspection processes, (m) voids in tires during the tire assembly or curing or inspection processes, (n) blows in tires during the tire assembly or curing or inspection processes, (o) separations between components in tires during the tire assembly or curing or inspection processes, (p) contamination in tires during the tire assembly or curing or inspection processes, (q) misplacement of tire components as noticed in the tire assembly or curing or inspection processes, (r) improper splicing of tire components as noticed in the tire assembly or curing or inspection processes, and (s) the failure of the cured tire inspection process to detect defects before tires were sold to customers.

**REQUEST FOR ENTRY UPON LAND:** Pursuant to Texas Rule of Civil Procedure 196.7, Robert Coleman requests to enter upon property; specifically, entry upon Michelin's tire plant in Woodburn, Indiana (located near Fort Wayne, Indiana; this plant is hereafter referred to as the "Fort Wayne plant"). In order to obtain substantive evidence of the manufacturing processes most similar to the first and second stage tire manufacturing processes used to assemble the failed LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire at issue and to obtain substantive evidence of the proposed safer alternative design, Robert Coleman requests to visually inspect and videographically document the tire building machines at the plant subject to the following protocol and limitations:

Robert Coleman requests one hour of limited access to particular tire building machines at Continental's Mt. Vernon, Illinois facility at a mutually agreed time and date within 60 days from the date of this request. Robert Coleman requests that his only representatives allowed to attend the observation should be his attorneys, his tire failure analysis experts, and a videographer selected by Robert Coleman. Robert Coleman proposes that all who attend the observation should sign whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts. Robert Coleman proposes that each side should bear its own costs. Robert Coleman proposes that the observation should include the machine or machines used to place the innerliner on the tire building drum and to assemble the belts and nylon reinforcement into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant (or, in the alternative, observation of the most similar tire building machines to be identified by Michelin if the specific tire building machines on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 cannot be identified). Robert Coleman proposes that the observation should include visually inspecting and videotaping the machines while they are in use building light truck car tires, and the scope of the observation should not include any sampling or destructive testing and should

SuppR 149

include nothing more than a visual observation – including recording by videotape – and be limited to one hour of observation and videotaping the machines while they are in use. Robert Coleman proposes that the observation should include:

(a) 15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(b) 15 minutes of observation of the second stage tire building process conducted in a manner as near as is practical to the second stage tire building processes implemented in LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(c) 15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts in at least two layers and covering a greater portion of the belt package as compared to the portion of the belt package covered by nylon in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 is being applied to a light truck car tire as similar as practical to LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant, and

(d) 15 minutes of observation of the second stage tire building process where Filament at Zero is being applied to a light truck tire car tire as similar as practical to a LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011.

Robert Coleman proposes that the videotaping should occur while these machines are in normal use. Robert Coleman proposes that his counsel, his tire failure experts, and his videographer who would attend the observation should be identified within seven days of when the inspection protocol is agreed or ordered by the court and should present photographic identification in the form of a driver's license or similar government issues identification before entering the plant, and that all such attendees should wear visitor badges the entire time they are in the plant (if Michelin requests), should be accompanied and escorted by Michelin's personnel at all times they are in the plant (if Michelin requests), should wear hardhats and safety glasses and ear protection and steel toed boots during the observation (if Michelin requests), should not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and should not attempt to speak with any plant personnel except for their escorts. Robert Coleman proposes that his representatives should not be allowed to videotape any other area of the plant except the tire building machines being observed and should not bring recording or photographing or videotaping devices other than the videographer's equipment to the observation. Robert Coleman proposes that Michelin should be allowed to take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Robert Coleman proposes that Michelin should be allowed to conduct its own videotaping of the inspection. Robert Coleman proposes that Michelin should be allowed to all videotapes should be copied and provided to the other side within 10 days after the observation of the tire building machines. Robert Coleman proposes that

SuppR 150

the videotapes as well as any documentation of the equipment and processes recorded during the inspection should be governed by whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts.

In the alternative, if Michelin would prefer, Robert Coleman would agree to protocols based on the attached order. See Exhibit A and Exhibit B.

If Michelin refuses to allow the entry upon land as requested above, Robert Coleman requests that Michelin preserve and document the evidence by videotaping the same machines and the same processes without Robert Coleman or his representatives being present and further requests that Michelin file such videotapes under seal with the trial court as permitted pursuant Texas Rule of Civil Procedure 76a.

SuppR 151

FILE COPY

FILED

IN THE EIGHTEENTH JUDICIAL DISTRICT
SEDGWICK COUNTY, KANSAS
CIVIL COURT DEPARTMENT

2012 OCT -4 P 3: 56

DISTRICT
AL DISTRICT
NTY, KANSAS

LORENA HERNANDEZ, INDIVIDUALLY, AND )
AS NEXT FRIEND OF ERIKA DELGADILLO )
HERNANDEZ, A MINOR )
                                )
    Plaintiffs, )
                                 )      Case No. 11 CV 3904
COOPER TIRE AND RUBBER CO., MARY )
BELLE HERNANDEZ, AND HERIBERTO )
GOMEZ D/B/A GOMEZ CUSTOM WHEELS )
                                 )
    Defendants. )

### ORDER GRANTING PLAINTIFFS' MOTION REQUESTING INSPECTION OF THE TIRE BUILDING MACHINES

After considering Plaintiffs' Motion Regarding The Tire, The Tire Building Machines, And The Identity Of The Tire Workers, and Defendant's Response, this Court ORDERS that the request to inspect tire building machines is GRANTED as follows:

Plaintiffs shall be provided one hour of limited access to particular tire building machines at Cooper's Texarkana, Arkansas facility at a mutually agreed time and date or beginning at 9:00 a.m. 60 days from the date of this Order if a mutually agreed upon time and date within the next 60 days cannot be agreed upon in writing by the Plaintiffs' counsel and Cooper's counsel. Plaintiffs' representatives allowed to attend the inspection are limited to Plaintiffs' attorneys (limited to Plaintiffs' counsel as of July 19, 2012), Plaintiffs' experts (tire failure experts only), and a photographer-videographer selected by Plaintiffs' counsel, and all such Plaintiffs' representatives shall sign the protective order in this case before the inspection begins. Each side will bear its own costs.

1



EXHIBIT
**A**

OCT 8 2012

Inspection of the machines is limited to one hour. The inspection will include videotape for 30 minutes of the operation of first and second stage tire building machines on which 31 x 10.5R15 LT Cooper Discoverer tires were built in February of 2004 (or the most similar first and second stage tire building machine to be identified by Cooper if the specific first and second stage tire building machines on which 31 x 10.5R15 LT Cooper Discoverer tires were built in February of 2004 cannot be identified). Cooper shall that the discretion to select the tire which is being videotaped while being build and shall exercise that discretion to minimize the differences in the tire building process of the tire being videotaped and the tire building processes used to make 31 x 10.5R15 LT Cooper Discoverer tires in February of 2004. The inspection will include videotape for 15 minutes of the tire building machines assembling nylon belt reinforcement (or SNOW) into 15 inch tires and videotape for 15 minutes of the tire building machines assembling belt edge gum strips (or BEGS) into 15 inch tires (with the machines to be selected by Cooper). The videotaping will occur while these machines are in normal use. Plaintiffs' attorneys, Plaintiffs' experts, and the photographer-videographer shall identify themselves before entering the plant, shall wear visitor badges the entire time they are in the plant (if Cooper requests), shall be accompanied and escorted by Cooper's personnel at all times they are in the plant, shall wear hardhats and safety glasses and ear protection and steel toed boots during the inspection, shall not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and shall not attempt to speak with any plant personnel except for their escorts. Plaintiffs' attorneys, Plaintiffs'

2

SuppR 153

experts, and the photographer-videographer shall not be allowed to videotape or photograph any other area of the plant except the tire building machines being inspection and shall not bring recording or photographing or videotaping devices other than the videographer's equipment to the inspection.

Cooper may take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Cooper is also free to conduct its own videotaping and photographing of the inspection. All videotapes and photographs will be copied and provided to the other side within 10 days after the inspection of the tire building machines. The videotapes and photographs as well as any documentation of the equipment and processes recorded during the inspection will be governed by the protective order in this case.

Signed this _____ day of August 2012.

_____
JUDGE PRESIDING

3

SuppR 154

ELECTRONICALLY FILED
1/21/2014 3:23 PM
03-CV-2011-900647.00
CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA
TIFFANY B. MCCORD, CLERK

IN THE CIRCUIT COURT IN AND FOR
MONTGOMERY COUNTY, ALABAMA

DEAN LILJEBERG and SHERRY §
LILJEBERG; §
§
§
Plaintiffs, §
§
v. § 03-CV-2011-900647.00
§
CONTINENTAL TIRE THE §
AMERICAS, LLC; et al.; §
§
§
Defendants. §

## ORDER GRANTING PLAINTIFFS' MOTION REQUESTING INSPECTION OF THE TIRE BUILDING MACHINES

After considering Plaintiffs' Motion To Compel Access To Tire Building Machines, and Defendant's Response, this Court ORDERS that the request to inspect tire building machines is GRANTED as follows:

Plaintiffs shall be provided one hour of limited access to particular tire building machines at Continental's Mt. Vernon, Illinois facility at a mutually agreed time and date or beginning at 9:00 a.m. 60 days from the date of this Order if a mutually agreed upon time and date within the next 60 days cannot be agreed upon in writing by the Plaintiffs' counsel and Continental's counsel. Plaintiffs' representatives allowed to attend the inspection are limited to Plaintiffs' attorneys, Plaintiffs' tire failure experts, and a photographer-videographer selected by Plaintiffs' counsel, and all such Plaintiffs' representatives shall sign the protective order in this case before the inspection begins. Each side will bear its own costs.

1



EXHIBIT
B

Inspection of the machines is limited to one hour. The inspection will include the machine or machines used to place the innerliner on the tire building drum and to assemble the belts into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 at Continental's Mount Vernon, Illinois tire plant (or, in the alternative, inspection of the most similar tire building machines to be identified by Continental if the specific tire building machines on which P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 cannot be identified). The inspection will include visually inspecting and videotaping the machines while they are in use building passenger car tires, and the scope of the inspection shall not include any sampling or destructive testing and shall include nothing more than a visual inspection – including recording by videotape – and be limited to one hour of inspection and videotaping the machines while they are in use. The inspection will include (a) 15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 at Continental's Mount Vernon tire plant, (b) 15 minutes of observation of the second stage tire building process conducted in a manner as near as is practical to the second stage tire building processes implemented in building P265/70R17 ContiTrac SUV tires were built in the 17th week of 2006 at Continental's Mount Vernon tire plant, (c) 15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts is being applied to a

2

SuppR 156

passenger car tire as similar as practical to a P265/70R17 ContiTrac SUV tires, and (d) 15 minutes of observation of the second stage tire building process where a wider nylon cap (either full-crown-width or in strips wider than those used in P265/70R17 ContiTrac SUV tires made in the 17th week of 2006 at Continental's Mount Vernon tire plant) is being applied to a passenger car tire as similar as practical to a P265/70R17 ContiTrac SUV tires. The videotaping will occur while these machines are in normal use.

Plaintiffs' attorneys, Plaintiffs' experts, and the photographer-videographer shall identify themselves before entering the plant, shall wear visitor badges the entire time they are in the plant (if Continental requests), shall be accompanied and escorted by Continental's personnel at all times they are in the plant (if Continental requests), shall wear hardhats and safety glasses and ear protection and steel toed boots during the inspection (provided at Plaintiffs' expense), shall not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and shall not attempt to speak with any plant personnel except for their escorts. Plaintiffs' attorneys, Plaintiffs' experts, and the photographer-videographer shall not be allowed to videotape or photograph any other area of the plant except the tire building machines being inspection and shall not bring recording or photographing or videotaping devices other than the videographer's equipment to the inspection.

Continental may take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Continental is also free to conduct its own videotaping and photographing

3

of the inspection. All videotapes and photographs will be copied and provided to the other side within 10 days after the inspection of the tire building machines. The videotapes and photographs as well as any documentation of the equipment and processes recorded during the inspection will be governed by the protective order in this case.

This Order will be stayed for 30 days to allow Continental to initiate any appeal it may desire.

ORDERED this 21 day of _____, 2014.

_____
TRUMAN M. HOBBS, JR.
CIRCUIT COURT JUDGE



# MICHELIN® Latitude® Tour HP

**Our high performance tire for premium crossover vehicles** offers safe, reliable handling and a quiet, comfortable ride.

 **ALL-SEASON TIRE**



| | |
|---|---|
| 7 | WEAR LIFE |
| 8 | FUEL EFFICIENCY |
| 3 | OFF-ROAD |
| 10 | BRAKING |
| 9 | COMFORT |



## BENEFITS OF MICHELIN® LATITUDE® TOUR HP TIRES:

- **Better Handling in Rain and Snow than Leading Competitors.**[1] 2-D Active Sipes help deliver better handling in rain and snow by locking together for greater rigidity.



Tread Block with Normal Sipes     2-D Active Sipes

- **High-Speed Confidence.**[2] Experience a stable feel and crisp steering at high speeds thanks to precisely placed polyester and aramid/nylon filaments (FAZ Technology™) under the tread. Aramid is the material that makes bulletproof vests bulletproof.



FAZ Technology™

- **Fuel-Efficient to Reduce Harmful Emissions.** Reduce fuel consumption thanks to a combination of a fuel-efficient tire shape and tread compounds that reduce unnecessary friction when the tire rolls.

### Popular Replacement Market Fitments:

Porsche Cayenne • Volkswagen Touareg • Mercedes M-Class • Acura MDX

 See pages 10 – 11 for details.

[1] Based on third-party snow traction and wet braking test results versus Bridgestone® Dueler™ H/L Alenza™ tires, Continental® 4x4 Contact™ tires and Pirelli® Scorpion STR™ tires.
[2] Exceeding the safe, legal speed limit is neither recommended nor endorsed.



EXHIBIT
C



CAUSE NO. 2014-57952

| | |
|---|---|
| KOLLYE KILPATRICK, INDIVIDUALLY, )<br>AS HEIR AT LAW AND REPRESENTATIVE )<br>OF THE ESTATE OF BEVERLY ANN )<br>KILPATRICK, DECEASED; ERIC )<br>KILPATRICK; AND KAREN KILPATRICK, )<br>)<br>PLAINTIFFS, )<br>)<br>AND )<br>)<br>ROBERT DWAYNE COLEMAN, )<br>INDIVIDUALLY, AND KIMBERLY )<br>COLEMAN AS NEXT FRIEND OF B M C )<br>AND C B C, MINORS )<br>)<br>INTERVENING CROSS-CLAIMANT )<br>AND PLAINTIFFS )<br>)<br>VS. )<br>)<br>MICHELIN NORTH AMERICA, INC. AND )<br>ROBERT DWAYNE COLEMAN, )<br>)<br>DEFENDANTS. )<br>) | IN THE DISTRICT COURT OF<br><br><br><br><br><br>HARRIS COUNTY, TEXAS<br><br><br><br><br>152ND JUDICIAL DISTRICT |

<u>MICHELIN NORTH AMERICA, INC.'S RESPONSES AND OBJECTIONS TO
INTERVENING COLEMANS' FIRST REQUESTS FOR ADMISSION,
INTERROGATORY, AND REQUESTS FOR PRODUCTION TO
DEFENDANT, MICHELIN NORTH AMERICA, INC.</u>

TO:    Intervening Colemans', by and through their counsel of record, John Blaise Gsanger, Gary Scott Marshall, The Edwards Law Firm, 802 N. Carancahua, Suite 1400, Corpus Christi, Texas 78401.

COMES NOW Michelin North America, Inc. ("MNA"), defendant in the above-styled

and numbered cause, and submits these, its responses and objections to Intervening Colemans'

First Requests for Admission, Interrogatory, and Requests for Production to Defendant, Michelin

North America, Inc.

**EXHIBIT**

**4**

JAN 2 0 2015

Respectfully submitted,

GERMER BEAMAN & BROWN, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile

By: _Tom Bullion w/ permission_ _by Ryan C. Bird_
    Thomas M. Bullion III
    State Bar No. 03331005
    Chris A. Blackerby
    State Bar No. 00787091

ATTORNEYS FOR DEFENDANT
MICHELIN NORTH AMERICA, INC.

SuppR 161

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record as set forth below on this 16th day of January, 2015.

John Gsanger                                    *Via Certified Mail, Return Receipt Requested*
The Edwards Law Firm
802 N. Carancahua, Ste. 1400
Frost Bank Plaza
Corpus Christi, Texas 78401

Robert E. Ammons                                *Via Regular Mail*
Jacquelyn W. Blott
The Ammons Law Firm, LLP
3700 Montrose Boulevard
Houston, Texas 77006

Michael E. Bourland                             *Via Regular Mail*
Witt, McGregor & Bourland, PLLC
8004 Woodway Drive, Suite 400
Waco, Texas 76712

Timothy D. "Tim" Riley                          *Via Regular Mail*
Riley Law Firm
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007

Thomas M. Bullion III/Chris A. Blackerby

4517897

3

## INTRODUCTION

The tire at issue in this case is a LT265/75R16 BFGoodrich Rugged Terrain T/A LRE tire bearing DOT number BFW802110611 (the "tire in question"). The tire in question was designed by MNA and manufactured by MNA during the 6th week of 2011 at its Fort Wayne, Indiana plant. MNA's responses are limited to information concerning the tire in question and tires manufactured to the specification in place for the tire in question by MNA at its Fort Wayne, Indiana plant during the six months before and the six months after the date of manufacture of the tire in question. There are no tires common green to the tire in question.

## TRADE SECRETS OBJECTION

MNA objects to many of the discovery requests because they seek information and/or documents that are of a confidential, proprietary or commercially sensitive nature to MNA, exempt from discovery under notions of constitutional privacy and/or that may be covered by or be the subject of express or implied confidentiality, secrecy or nonpublication agreements or understandings. To the extent necessary, MNA objects to the discovery requests in that they seek the discovery of trade secret information and documents, including confidential research, development and technical information. MNA states that information and documents responsive to some of the discovery requests may have been withheld because these discovery requests seek privileged information and privileged documents that constitute the trade secrets of MNA. Disclosure of these trade secrets would result in substantial prejudice and harm to MNA. Therefore, MNA contends it is essential to MNA's operations that its work and documents remain confidential.

Texas law protects the disclosure of MNA's trade secrets. A trade secret may consist of any trade formula, pattern, device or compilation of information that is used in one's business and gives one an opportunity to obtain an advantage over competitors who do not know or use it.

4517897

4

SuppR 163

**REQUEST FOR ADMISSIONS NO. 82:** Admit Michelin currently has possession of the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011.

**RESPONSE:**

Admitted. MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR ADMISSIONS NO. 83:** Admit Michelin currently has possession of the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFWS02110611 at the Fort Wayne plant in the sixth week of 2011.

**RESPONSE:**

Admitted. MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

4517897

43

| | | |
|---|---|---|
| KOLLYE KILPATRICK, et al., <br> Plaintiffs, | § <br> § <br> § | IN THE DISTRICT COURT |
| AND | § <br> § <br> § | |
| ROBERT DWAYNE COLEMAN, et al., <br> Intervening Cross-Claimant and Plaintiffs, | § <br> § <br> § | |
| VS. | § <br> § | HARRIS COUNTY, TEXAS |
| MICHELIN NORTH AMERICA, INC., et al., | § <br> § <br> § | |
| Defendants. | § | 152nd JUDICIAL DISTRICT |

## INTERVENORS' RESPONSE TO MICHELIN'S MOTION TO INSPECT THE FAILED TIRE BY UNKNOWN PERSONS ACCORDING TO AN UNDISCLOSED PROTOCOL AND REQUEST THAT MICHELIN PRESERVE AND DOCUMENT EVIDENCE

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Robert Coleman and his sons Blayne Cook and Cameron Cook, minors, by and through their mother and next friend Kim Coleman (collectively "the Coleman family") and file Intervenors' Response To Michelin's Motion To Inspect The Failed Tire By Unknown Persons According To An Undisclosed Protocol and would show the Court as follows:

### I. Background

This is a case involving permanent injuries to Robert Coleman and his sons as the result crash caused by the tread separation failure of a tire made by Michelin in February of 2011 at its tire plant in Fort Wayne, Indiana. The failed tire is an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire (DOT BFW802110611) in the custody of the Coleman family.

1

**EXHIBIT**

**5**

On September 15, 2014, the Coleman family invited Michelin to inspect the failed tire and asked Michelin to discuss an inspection protocol that would encompass the inspection of the failed tire as well as an inspection of Michelin's tire building machines used to build the tire:

> I am happy to have you inspect the tire as often as you wish and for as long as you wish provided that this original evidence remains in my custody while your client inspects it pursuant to Rule 196.3(b) of the Texas Rules of Civil Procedure. From past experience, I know you would prefer to take custody of the tire to have it inspected at an unknown location by unidentified persons according to an undisclosed protocol. I cannot agree to that, but I agree that your client should have the same access to original evidence in my clients' possession (such as the tire) as my client has access to original evidence in your client's possession (such as the tire building and tire inspecting rooms at the Fort Wayne plant and the tire building machines at that plant used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A's in February of 2011 at the Fort Wayne plant).

*Ex. 1.*

Again, on December 10, the Coleman family reiterated this offer to allow Michelin to inspect the tire:

> I understand that your client will want to inspect the original tire evidence rather than a mere copy or photographs of the tire. See Tex. R. Civ. P. 196.3(b). I am happy to produce the original tire as it is kept in the ordinary course of business for inspection either at my office or at my warehouse. Moreover, I am happy for you, Mr. Bullion, your client, and your client's representatives to inspect the tire as often as you want and for as many different inspections as you may want, but preservation of this key piece of evidence in my clients' possession custody and control is of paramount importance. Accordingly, please see the attached inspection protocol previously agreed in this matter. If this protocol is acceptable, please ask Mr. Bullion to sign the agreement below Rob Ammons' signature.

*Ex. 2.*

Michelin has refused even to discuss terms for a protocol for the tire inspection or for preservation of the tire building machines. Unlike Michelin's refusal to agree upon a protocol for the inspection of the tire in the Coleman family's possession, the Coleman family offered a

2

detailed protocol as part of their request to view the tire building machines in Michelin's possession:

> Robert Coleman requests one hour of limited access to particular tire building machines at Continental's Mt. Vernon, Illinois facility at a mutually agreed time and date within 60 days from the date of this request. Robert Coleman requests that his only representatives allowed to attend the observation should be his attorneys, his tire failure analysis experts, and a videographer selected by Robert Coleman. Robert Coleman proposes that all who attend the observation should sign whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts. Robert Coleman proposes that each side should bear its own costs. Robert Coleman proposes that the observation should include the machine or machines used to place the innerliner on the tire building drum and to assemble the belts and nylon reinforcement into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant (or, in the alternative, observation of the most similar tire building machines to be identified by Michelin if the specific tire building machines on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 cannot be identified). Robert Coleman proposes that the observation should include visually inspecting and videotaping the machines while they are in use building light truck car tires, and the scope of the observation should not include any sampling or destructive testing and should include nothing more than a visual observation – including recording by videotape – and be limited to one hour of observation and videotaping the machines while they are in use. Robert Coleman proposes that the observation should include:
> (a) 15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,
> (b) 15 minutes of observation of the second stage tire building process conducted in a manner as near as is practical to the second stage tire building processes implemented in LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,
> (c) 15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts in at least two layers and covering a greater portion of the belt package as compared to the portion of the belt package covered by nylon in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 is

3

being applied to a light truck car tire as similar as practical to LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant, and

(d) 15 minutes of observation of the second stage tire building process where Filament at Zero is being applied to a light truck tire car tire as similar as practical to a LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011.

Robert Coleman proposes that the videotaping should occur while these machines are in normal use. Robert Coleman proposes that his counsel, his tire failure experts, and his videographer who would attend the observation should be identified within seven days of when the inspection protocol is agreed or ordered by the court and should present photographic identification in the form of a driver's license or similar government issues identification before entering the plant, and that all such attendees should wear visitor badges the entire time they are in the plant (if Michelin requests), should be accompanied and escorted by Michelin's personnel at all times they are in the plant (if Michelin requests), should wear hardhats and safety glasses and ear protection and steel toed boots during the observation (if Michelin requests), should not interrupt or interfere with the equipment or the normal operations of the plant or plant employees, and should not attempt to speak with any plant personnel except for their escorts. Robert Coleman proposes that his representatives should not be allowed to videotape any other area of the plant except the tire building machines being observed and should not bring recording or photographing or videotaping devices other than the videographer's equipment to the observation. Robert Coleman proposes that Michelin should be allowed to take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Robert Coleman proposes that Michelin should be allowed to conduct its own videotaping of the inspection. Robert Coleman proposes that Michelin should be allowed to all videotapes should be copied and provided to the other side within 10 days after the observation of the tire building machines. Robert Coleman proposes that the videotapes as well as any documentation of the equipment and processes recorded during the inspection should be governed by whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts.

*Ex. 3.*

4

## II. Argument and Authority

The Coleman family previously produced the original evidence for inspection at his counsel's office in the place and manner in which it is kept in the usual course of business, as is expressly authorized by Rule 196.3:

> Time and place of production. Subject to any objections stated in the response, the responding party *must produce the requested* documents or *tangible things* within the person's possession, custody or control at either the time and place requested or *the time and place stated in the response*, unless otherwise agreed by the parties or ordered by the court, and must provide the requesting party a reasonable opportunity to inspect them.... *If originals are produced, the responding party is entitled to retain the originals while the requesting party inspects and copies them....* The responding party must either *produce* documents and *tangible things as they are kept in the usual course of business* or organize and label them to correspond with the categories in the request.

Tex. R. Civ. P. 196.3(a), (b), (c) (emphasis added). The Coleman Family asks this Court to protect his right "to retain the originals while the requesting party inspects" as expressly set forth in Rule 196.3. The Coleman Family also asks this Court to compel production of the tire building machines for inspection in the same manner authorized by Rule 196.3.

### A. The Coleman Family Requests to Have a Representative Present During Inspection of the Evidence in Their Custody

Allowing a defendant to privately test or inspect a plaintiff's evidence outside of the plaintiff's presence violates Texas Rules of Civil Procedure 196.3(b). In prior tire cases involving the Coleman family's counsel, other courts have provided a means for the plaintiffs to ensure that the tire was not lost, damaged or altered during inspection. *See Idar v. Cooper Tire & Rubber Co.*, No. 2:10-CV-00217 (S.D. Tex. 2010) (*Ex. 6* - agreed tire inspection order requiring videotape of inspection and production of videotape); *Martinez v. Cooper Tire & Rubber Co.*, No. C-1872-10-J (430th Jud. Dist. Court, Hidalgo County, Tex. 2010) (*Ex. 7* - tire

5

inspection order requiring videotape of inspection and production of videotape); *see also Sostenes v. Bridgestone Corp.*, No. 08-L-7574 (Ill. Cir. Ct., Mar. 5, 2010) (*Ex. 9* - tire inspection order allowing plaintiffs' attorney to attend and videotape inspection at plaintiffs' attorneys' facilities); *Heavrin v. Bridgestone Corp.*, No. 06CV5909 (Ga. St. Ct. 2008) (denying Defendant's motion to compel tire inspection "in secret and without plaintiffs' counsel and/or consultant present during this process"); *Hanson v. Ford Motor Co.*, No. TC019911 (Cal. Super. Ct., Dec. 6, 2007) (requiring tire company's inspection to be "open to attendance by representatives" of plaintiff); *Middleton v. Cooper Tire & Rubber Co.*, No. 99-CP-25-214, S.C. Ct. C.P. Hampton Co., Dec. 15, 2000 Order (denying defendant request to inspect tire "in secret and without plaintiffs' counsel and/or consultant(s) present during this process. The Court finds that the subject tire is the property of Plaintiffs, is critical evidence in the case, and that Plaintiffs have a right to be present while their property is being examined."); *Poyer v. Wegman's*, 662 N.Y.S.2d 153, 154 (N.Y. App. Div. 1997) (noting that plaintiffs in a product liability case should be "permitted to have a representative present at all stages of the testing to ensure [the evidence's] integrity"); *Miller v. Goodyear Tire & Rubber Co.*, 40 pa. D. & C.3d 430, 431 (Pa. Ct. C.P. Luzerne Co. 1985) ("although defendant has a right to inspect and test such items of physical evidence, this does not compel plaintiffs to surrender custody or control of the items and reasonable restrictions or conditions may be imposed upon defendant to allow plaintiffs to monitor their whereabouts during the inspections and testing."); *Klick v. R.D. Werner Co., Inc.*, 348 N.E.2d 314, 316-17 (Ill. App. Ct. 1976) ("The object to be tested is plaintiff's evidence, and he has the right and duty to his client to control it so it will not be damaged or tampered with in any way."); *Davis v. Firestone Tire & Rubber Co.*, 72 Pa. D. & C.2d 242, 242 (Pa. Ct. C.P.

6

Philadelphia Co. 1975) (refusing to allow Firestone to conduct a secret inspection of the tire outside of plaintiff's counsel's presence).

The *American Law of Products Liability 3d Treatise* confirms that the imposition of safeguards to ensure the integrity of the original evidence is well-established:

> In permitting the nondestructive inspection and testing of products, the courts have typically imposed a number of conditions on the inspection and testing, normally to protect the rights of the party who will be required to produce the product for discovery. Accordingly, one of the most common conditions imposed is that the party with custody and control of the product be given the opportunity to be present during the inspection or testing of the product by the opposing party or to have his or her expert, attorney, or representative present during the inspection or testing. The examining party may also be required, as a condition of any testing, to give reasonable notice of the time and place of the testing to the opposing party and to deliver to the opposing party, upon its request, copies of the reports of all tests and analyses of the product made by or on behalf of the examining party.
>
> In other products liability actions, the courts, in permitting the inspection or testing of a product, have required, among other things, that—
>
> - the examination or testing not adversely affect the product.
> - the expert and representative of the party required to produce the product have the right to photograph the product before and after each stage of any test conducted.
> - the inspection and testing be completed within a specified time.
> - the defendant assume the plaintiffs reasonable expenses of having a qualified representative present at the defendant's inspection of the product at the defendant's facility and that the expenses be considered a taxable disbursement by the defendant if it ultimately succeeded in the action.

Am. L. Prod. Liab. 3d § 53:107 (Updated 2010) (citing *Stearn v. Ford Motor Co.*, 123 A.D.2d 856, 507 N.Y.S.2d 470 (2d Dep't 1986); *DiGiovanni v. Pepsico, Inc.*, 120 A.D.2d 413, 502 N.Y.S.2d 23 (1st Dep't 1986); *Fullone v. Goodyear Tire and Rubber Co.*, 107 F.R.D. 1, 1 Fed. R. Serv. 3d 338 (W.D.N.Y. 1985); *Klick v. R. D. Werner Co.*, 38 Ill. App. 3d 575, 348 N.E.2d 314 (1st Dist. 1976); *Canter v. American Cyanamid Co.*, 6 A.D.2d 847, 174 N.Y.S.2d 983 (1958);

7

*Merriam Display Supply Studio v. Harlambides*, 196 Misc. 352, 91 N.Y.S.2d 901 (Mun. Ct. 1949)).

### B. Compromise Tire Inspection Protocols Proposed by The Coleman Family

Despite the clear authority giving the Coleman family the right to retain custody of his evidence and to have a representative present at any inspection of the evidence in his possession, the Coleman family would agree to inspection protocols agreed with other tire companies or those ordered by other courts. *Ex. 6-13.*

Counsel for the Coleman family is motivated to seek these protections because of counsels' past experiences in other tire cases where inspections of the tire caused damage to the tire that had a significant impact on the case. *See Ex. 14.* In *Martha Rodriguez, et al. v. Firestone Tire & Service Centers et al.*, No. C-115396 (244th Dist. Ct. Ector County Tex.), one defendant's expert claimed that another defendant's expert damaged the bead of the tire dismounting and mounting it after the crash, and this dispute affected the evaluation and trial of the case. *Id.* In *Kimberly Dee Hargrove et al. v. Hankook Tire America Corp. et al.*, No. 42940 (118th Dist. Ct. Howard County Tex.), the plaintiffs' retained expert found no tear in the tire carcass which penetrated the tire's innerliner, and the defense's retained expert found no tear in the tire carcass which penetrated the tire's innerliner, but the third and final inspection by defendant's in-house forensic analyst found a tear in the carcass which penetrated the innerliner. The defense claimed to have found this innerliner puncture – which experts for both sides did not detect in their earlier inspections – by probing a tear in the carcass with a unbent paper clip to explore if that tear penetrated through the innerliner. The question whether the defendant found the innerliner puncture with this probing or created the puncture with this probing became the issue that dominated the case from that point forward. *Id.* In *Sara Cruz et al. v. Michelin North*

8

*America et al.,* No. 2007-CV-0141-A (197th Dist. Ct. Willacy County Tex.), the defense expert identified red paint marks on the detached tire tread as a paint mark transferred from the vehicle to the tire during the crash sequence, and the defense expert then used this transfer mark as evidence to support the defense of the case. Analysis of the photographs taken before the detached tread was shipped to the defendant confirmed that the red paint mark was not on the tread at that time, and analysis of the red paint on the tire as compared with the paint on the red truck confirmed that the two paints were chromatically similar but chemically different. This issue became a significant and time consuming distraction. *Id.* In *Bertha Orozco et al. v. Michelin North America et al.,* No. 06-02-0007-CYL (81st Dist. Ct. La Salle County Tex.), a tire was lost in shipping on its return to the plaintiffs' counsel's office. *Id.* These are just a few examples of the difficulties that can arise from a defense inspection of a tire that is conducted without proper safeguards of the evidence, and counsel for The Coleman Family has personal experience with each of these cases as plaintiffs' counsel. *Id.*

C.     **The Coleman Family Requests Michelin's to Preserve The Tire Building Machines**

A party has a duty to preserve evidence "when a party knows or reasonably should know that there is a substantial chance that a claim will be filed and that evidence in its possession or control will be material and relevant to that claim." *Wal-Mart Stores v. Johnson,* 106 S.W. 3d 718, 722 (Tex. 2003). Specifically, "a party's duty to preserve arises as soon as the party has notice that evidence in its possession or control may be relevant to the litigation," and this duty encompasses evidence "*potentially* relevant to the claims being asserted." *Adobe Land Corp. v. Griffin, L.L.C.,* 236 S.W.3d 351, 359 (Tex. App.—Fort Worth 2007, pet. denied) (emphasis by the court, citing *Wal-Mart,* 106 S.W. 3d at 722); *see also Miner Dederick Const., LLP v. Gulf Chemical & Metallurgical Corp.,* 403 S.W.3d 451 (Tex. App.—Houston [1[st] Dist.] 2013, pet.

9

filed) (discussing duty to preserve "potentially relevant evidence"); *Clark v. Randalls Food*, 317 S.W.3d 351, 358 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (discussing duty to preserve "potentially relevant evidence").

On September 15, 2014, Coleman gave Michelin written notice that a claim would be filed and requested Michelin to preserve the evidence in its possession or control relevant to that claim, including the tire building machines used to build the tire. *See Ex. 1.* On December 10, the Coleman family asked Michelin to propose a protocol for a visual observation of the tire building machines. *Ex 2.* Michelin has refused to even discuss the current status of those first and second stage tire building machines used to assemble LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant. Accordingly, the Coleman family now moves this Court to enter an order requiring Michelin to document the current status of first and second stage tire building machines used to assemble LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant and to preserve that evidence in the same manner as would apply to any evidence in West's possession. By this specific request, the Coleman family is not seeking production of documentation about the current status of first and second stage tire building machines used to assemble LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant; the Coleman family is just seeking to have Michelin document and preserve that evidence.

### III. Conclusion and Prayer for Relief

The Coleman family is entitled to have a representative present during inspection of evidence in his custody. Accordingly, the Coleman family respectfully requests this Court deny Michelin's motion to compel a custodial inspection of the failed tire according to an undefined

10

protocol. Furthermore, the Coleman family prays that this Court order Michelin to conduct the inspection of the tire under the conditions specified in *Idar v. Cooper Tire & Rubber Co.*, No. 2:10-cv-00217 (S.D. Tex. 2010) or, in the alternative, according to the tire inspection protocols ordered in *Martinez v. Cooper Tire and Rubber.*, No. C-1872-10-J (430th Jud. Dist. Tx., Hidalgo County 2010) (requiring Cooper to "videotape, at their expense the subject tire" during its inspection and "provide a copy of the videotape to Plaintiff's counsel at the time they return the tire", which must be within 60 days of its receipt), or *Sostenes v. Bridgestone Corp.*, No. 08-L-7574 (Ill. Cir. Ct., Mar. 5, 2010). Additionally, the Coleman family requests that this Court grant his request to require Michelin to document the current state of the tire building machines at issue.

Respectfully submitted this 24 day of December, 2014.

Respectfully submitted,

**THE EDWARDS LAW FIRM**
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone No. (361) 698-7600
Facsimile No. (361) 698-7614

By:     /s/ John Blaise Gsanger
        John Blaise Gsanger
        State Bar No. 00786662
        jgsanger@edwardsfirm.com
        Gary Scott Marshall
        State Bar No. 24077207
        smarshall@edwardsfirm.com
        ATTORNEYS FOR INTERVENING PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded to the following counsel in the manner indicated on the 24th day of December, 2014.

11

*Facsimile: (512) 472-0721*
Thomas M. Bullion III
Germer Beaman & Brown, L.L.P.
301 Congress Avenue, Suite 1700
Austin, Texas 78701

*Facsimile: (713) 523-4159*
Robert E. Ammons
The Ammons Law Firm, LLP
3700 Montrose Boulevard
Houston, Texas 77006

*Facsimile: (800) 637-1955*
Timothy D. Riley
The Civil Justice Center
112 East 4th Street
Houston, Texas 77007-2502

*Facsimile: (254) 751-9133*
Michael Bourland
Witt, McGregor & Bourland, P.L.L.C.
8004 Woodway Drive, Suite 400
Waco, Texas 76712-3648

/s/ John Blaise Gsanger
Counsel for Plaintiffs

12

SuppR 176

**From:** Gsanger, John
**To:** "Tom Bullion"
**Cc:** Chris Blackerby; Kathy Lindsay
**Subject:** RE: Kilpatrick and Coleman v. Michelin
**Date:** Thursday, January 22, 2015 9:23:36 AM

Tom:

If you will agree to my request for preservation of evidence (i.e., if you will videotape the machines and processes I have requested to observe for in camera tender to the trial court), I can agree to postpone the hearing on the motion to compel.

Alternatively, if you would rather just have an extra four days to respond to the motion to compel (i.e., if you want to serve your affidavits three days before the hearing instead of the seven days required by Tex. R. Civ. P. 193.4(a)), I can agree to that if you will serve those affidavits by email so that they are received by me at least 72 hours before the hearing.

For months, you have been aware of both my discovery request and also my request for the preservation of evidence, and yet you have not even agreed to preserve the evidence let alone provided any response to my request for a protocol to observe the two tires building machines at issue. Under these circumstances, we cannot agree to put off the hearing unless you will agree to preserve the evidence as requested above.

John

**From:** Tom Bullion [mailto:tbullion@germer-austin.com]
**Sent:** Monday, December 22, 2014 3:28 PM
**To:** Gsanger, John
**Cc:** Chris Blackerby; Kathy Lindsay
**Subject:** RE: Kilpatrick and Coleman v. Michelin

We'll go ahead and set it on January 2, then, and hopefully you can get Billy or Chip to attend the hearing. If January 9 works better for whatever lawyer you find to attend, though, let us know. We cannot agree to wait any longer than that.

**From:** Gsanger, John [mailto:jgsanger@edwardsfirm.com]
**Sent:** Monday, December 22, 2014 3:23 PM
**To:** Tom Bullion
**Cc:** Chris Blackerby; Kathy Lindsay
**Subject:** RE: Kilpatrick and Coleman v. Michelin

I'm not available on the 2nd or the 9th, but you are welcome to see and inspect the tire any time you want.

John

-------- Original message --------
From: Tom Bullion <tbullion@germer-austin.com>



EXHIBIT

6

Date: 12/22/2014 3:03 PM (GMT-06:00)
To: "Gsanger, John" <jgsanger@edwardsfirm.com>
Cc: Chris Blackerby <cblackerby@germer-austin.com>, Kathy Lindsay <klindsay@germer-austin.com>
Subject: Kilpatrick and Coleman v. Michelin

We are filing our motion to compel the accident tire today and would like to schedule it for hearing on either January 2 at 11 a.m. or January 9 at 11 a.m., the next two times the court has available. Please let me know whether those dates work for you and which you prefer.

This message has been scanned for malware by Websense. www.websense.com

**From:** Gsanger, John
**To:** "Tom Bullion"
**Cc:** Chris Blackerby; Kathy Lindsay
**Subject:** RE: Kilpatrick and Coleman v. Michelin
**Date:** Thursday, January 22, 2015 9:27:00 AM

Tom:

The court set the motion for hearing and I served the notice of that hearing before your email below (I believe you knew that). Nevertheless, as I suggested in my prior email this morning, I am willing to offer you two options to accommodate your request for additional time to respond to the motion to compel:

1. If you want an extra four days to respond to the motion to compel (i.e., if you want to serve your affidavits three days before the hearing instead of the seven days required by Tex. R. Civ. P. 193.4(a)), I can agree to that if you will serve those affidavits by email so that they are received by me at least 72 hours before the hearing.

2. If you will agree to my request for preservation of evidence (i.e., if you will videotape the machines and processes I have requested to observe for in camera tender to the trial court), I can agree to postpone the hearing on the motion to compel.

This is far more consideration than you offered me when you scheduled your motion to compel on January 2 after I specifically told that I was unavailable. Please refer back to my 3:23 pm email of December 22, 2014 ("I'm not available on the 2nd or the 9th, but you are welcome to see and inspect the tire any time you want") and your response at 3:28 pm December 22, 2014 ("We'll go ahead and set it on January 2, then, and hopefully you can get Billy or Chip to attend the hearing. If January 9 works better for whatever lawyer you find to attend, though, let us know. We cannot agree to wait any longer than that. ").

John


**From:** Tom Bullion [mailto:tbullion@germer-austin.com]
**Sent:** Thursday, January 22, 2015 6:47 AM
**To:** Gsanger, John
**Cc:** Chris Blackerby; Kathy Lindsay
**Subject:** RE: Kilpatrick and Coleman v. Michelin

Please don't set your plant inspection motion for hearing on the same day as Ammons' motion to compel is set as we will need more time than that to respond and MNA will likely bring in a heavy hitter who will need to get up to speed. Thanks.

**From:** Gsanger, John [mailto:jgsanger@edwardsfirm.com]
**Sent:** Wednesday, January 21, 2015 2:27 PM
**To:** Tom Bullion
**Cc:** Chris Blackerby; Kathy Lindsay



EXHIBIT
7

**Subject:** RE: Kilpatrick and Coleman v. Michelin

Thanks.

**From:** Tom Bullion [mailto:tbullion@germer-austin.com]
**Sent:** Wednesday, January 21, 2015 2:26 PM
**To:** Gsanger, John
**Cc:** Chris Blackerby; Kathy Lindsay
**Subject:** Re: Kilpatrick and Coleman v. Michelin

We often don't know when we are required to file our answer where a defendant lives. Based on your representation that Mr. Coleman lives in Harris County, though, we will not pursue our motion to transfer venue.

On Jan 21, 2015, at 2:22 PM, Gsanger, John <jgsanger@edwardsfirm.com> wrote:

> Robert Coleman lives in Harris County. Your venue allegations deny that venue fact, but your request for admissions responses confirm that you have no basis for denying that fact. I'm sure your pleading was an oversight.
>
> **From:** Tom Bullion [mailto:tbullion@germer-austin.com]
> **Sent:** Wednesday, January 21, 2015 2:19 PM
> **To:** Gsanger, John
> **Cc:** Chris Blackerby; Kathy Lindsay
> **Subject:** Re: Kilpatrick and Coleman v. Michelin
>
> 1. Correct
>
> 2. If your guy lives in Harris County, yes.
>
> On Jan 21, 2015, at 1:32 PM, Gsanger, John <jgsanger@edwardsfirm.com> wrote:
>
>> Tom, Chris:
>>
>> Two quick questions:
>>
>> 1. Am I correct that we have conferred more than sufficiently and you (1) will not be agreeing to allow me and my expert one hour of observation of first and second stage tire building processes on the machines as similar as practical to the first and second stage tire building used to assemble the type of tire at issue and (2) you will not agree to videotape the processes I have requested to observe in my request for entry upon land and tender that video to the court?
>>
>> 2. Will you be withdrawing your venue allegations in your answer?

John


This message has been scanned for malware by Websense. www.websense.com

| KOLLYE KILPATRICK, et al., | § | IN THE DISTRICT COURT |
| Plaintiffs, | § | |
| | § | |
| AND | § | |
| | § | |
| ROBERT COLEMAN, et al., | § | |
| Intervenors, | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| MICHELIN N. AM., INC., et al, | § | |
| Defendants. | § | 152nd JUDICIAL DISTRICT |

## BENCH BRIEF ON BURDEN SHIFTING TO PARTY SEEKING DISCOVERY IF RESISTING PARTY PROVES TRADE SECRECY (THE BURDEN NEVER SHIFTED BUT WAS NEVERTHELESS MET)

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Intervenors, Robert Coleman and his sons Blayne Cook and Cameron Cook, minors, by and through their mother and next friend Kim Coleman (collectively "the Coleman family") in the above-captioned cause and file Bench Brief on Burden Shifting to Party Seeking Discovery If Resisting Party Proves Trade Secrecy (The Burden Never Shifted But Was Nevertheless Met):

Michelin failed to prove that one hour of access to the tire building machines would violate any trade secrecy privilege. If – but only if – Michelin had met this burden, the Coleman family would need to show that

the discovery requested was reasonably necessary for a fair adjudication of this case:

> "[W]hen trade secret privilege is asserted as the basis for resisting production, the trial court must determine **[(1)] whether the requested production constitutes a trade secret**; [(2)] **if so**, the court must require the party seeking production to show **reasonable necessity for the requested materials**." *In re Bass*, 113 S.W.3d 735, 738 (Tex. 2003). … **Once trade secret status has been established, the burden shifts** to [the party seeking the discovery] to establish that the information is "necessary or essential to the fair adjudication of the case, weighing the requesting party's need for the information against the potential of harm to the resisting party from disclosure." *Bridgestone/Firestone*, 106 S.W.3d at 732. We have not "state[d] conclusively what would or would not be considered necessary for a fair adjudication, indicating instead that the application of the test would depend on the circumstances presented." *Id*. "[T]he degree to which information is necessary in a case depends on the nature of the information and the context of the case." *Id*.

*In re Union Pac. R.R. Co.*, 294 S.W.3d 589, 591-92 (Tex. 2009) (orig. proceeding).

The Texas Supreme Court has expressly rejected the idea that the burden to show reasonable necessity for the requested materials means showing "the requesting party cannot prevail without" that discovery. *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex. 2003). Instead, a party the "reasonable necessity" burden is met where it is "possible for a party to prevail without access to trade secret information and yet be unfair

to put him to much weaker proof without the information." *Id.* The "requesting party must describe with particularity how the protected information is required to reach conclusions in the case." *John Paul Mitchell Sys. v. Randalls Food Markets, Inc.*, 17 S.W.3d 721, 739 (Tex. App. - Austin 2000, pet. denied). The Coleman family met this burden with the affidavits of Troy Cottles, Dennis Carlson, John Daws, and the deposition testimony of Joe Grant. Based on this evidence, the "trial court's role [is] to weigh the degree of the requesting party's need for the information against the potential harm of disclosure to the resisting party." *Id.* at 738.

WHEREFORE, PREMISES CONSIDERED, the Coleman family respectfully requests that the Court overrule Michelin's objections and claims of privilege and grant the motion to compel.

Respectfully submitted,

/s/John Blaise Gsanger
John Blaise Gsanger    TX #00786662
THE EDWARDS LAW FIRM
802 N. Carancahua, Suite 1400
Corpus Christi, Texas 78401
Telephone:  (361) 698-7600
Facsimile:  (361) 698-7614
jgsanger@edwardsfirm.com

ATTORNEY FOR PLAINTIFFS

3

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was forwarded to the following counsel in attendance by hand delivery on16th day of March, 2015.

Thomas M. Bullion III
Chris A. Blackerby
GERMER BEAMAN & BROWN, LLP
301 Congress Avenue, Suite 1700
Austin, Texas 78701

Giles M. Schanen, Jr.
NELSON MULLINS RILEY &
 SCARBOROUGH, LLP
104 South Main Street, 9th Floor
Greenville, SC 29601

Robert E. Ammons
Bennett A. Midlo
THE AMMONS LAW FIRM, LLP
3700 Montrose Boulevard
Houston, Texas 77006

Timothy D. Riley
THE CIVIL JUSTICE CENTER
112 East 4th Street
Houston, Texas 77007-2502

Michael Bourland
WITT, MCGREGOR & BOURLAND, P.L.LC.
8004 Woodway Drive, Suite 400
Waco, Texas 76712-3648

/s/John Blaise Gsanger
Counsel for Intervenors

4



| | |
|---|---|
| KOLLYE KILPATRICK, INDIVIDUALLY, ) <br> AS HEIR AT LAW AND REPRESENTATIVE ) <br> OF THE ESTATE OF BEVERLY ANN ) <br> KILPATRICK, DECEASED; ERIC ) <br> KILPATRICK; AND KAREN KILPATRICK, ) <br> ) <br> PLAINTIFFS, ) <br> ) <br> AND ) <br> ) <br> ROBERT DWAYNE COLEMAN, ) <br> INDIVIDUALLY, AND KIMBERLY ) <br> COLEMAN AS NEXT FRIEND OF B M C ) <br> AND C B C, MINORS ) <br> ) <br> INTERVENING CROSS-CLAIMANT ) <br> AND PLAINTIFFS ) <br> ) <br> VS. ) <br> ) <br> MICHELIN NORTH AMERICA, INC. AND ) <br> ROBERT DWAYNE COLEMAN, ) <br> ) <br> DEFENDANTS. ) <br> ) | IN THE DISTRICT COURT OF <br><br><br><br><br><br><br><br><br> HARRIS COUNTY, TEXAS <br><br><br><br><br><br><br><br><br><br><br> 152ND JUDICIAL DISTRICT |

### MICHELIN NORTH AMERICA, INC.'S RESPONSES AND OBJECTIONS TO INTERVENING COLEMANS' FIRST REQUESTS FOR ADMISSION, INTERROGATORY, AND REQUESTS FOR PRODUCTION TO DEFENDANT, MICHELIN NORTH AMERICA, INC.

TO:    Intervening Colemans', by and through their counsel of record, John Blaise Gsanger, Gary Scott Marshall, The Edwards Law Firm, 802 N. Carancahua, Suite 1400, Corpus Christi, Texas 78401.

COMES NOW Michelin North America, Inc. ("MNA"), defendant in the above-styled and numbered cause, and submits these, its responses and objections to Intervening Colemans' First Requests for Admission, Interrogatory, and Requests for Production to Defendant, Michelin North America, Inc.

Respectfully submitted,

GERMER BEAMAN & BROWN, PLLC
301 Congress Avenue, Suite 1700
Austin, Texas 78701
(512) 472-0288 Telephone
(512) 472-0721 Facsimile

By: _Tom Bullion w/ permission_
     Thomas M. Bullion III
     State Bar No. 03331005 _by Kevin C. Bur_
     Chris A. Blackerby
     State Bar No. 00787091

ATTORNEYS FOR DEFENDANT
MICHELIN NORTH AMERICA, INC.

4517897

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record as set forth below on this 16th day of January, 2015.

John Gsanger  
The Edwards Law Firm  
802 N. Carancahua, Ste. 1400  
Frost Bank Plaza  
Corpus Christi, Texas 78401  

*Via Certified Mail, Return Receipt Requested*

Robert E. Ammons  
Jacquelyn W. Blott  
The Ammons Law Firm, LLP  
3700 Montrose Boulevard  
Houston, Texas 77006  

*Via Regular Mail*

Michael E. Bourland  
Witt, McGregor & Bourland, PLLC  
8004 Woodway Drive, Suite 400  
Waco, Texas 76712  

*Via Regular Mail*

Timothy D. "Tim" Riley  
Riley Law Firm  
The Civil Justice Center  
112 East 4th Street  
Houston, Texas 77007  

*Via Regular Mail*

_____
Thomas M. Bullion III/Chris A. Blackerby

SuppR 188

## INTRODUCTION

The tire at issue in this case is a LT265/75R16 BFGoodrich Rugged Terrain T/A LRE tire bearing DOT number BFW802110611 (the "tire in question"). The tire in question was designed by MNA and manufactured by MNA during the 6th week of 2011 at its Fort Wayne, Indiana plant. MNA's responses are limited to information concerning the tire in question and tires manufactured to the specification in place for the tire in question by MNA at its Fort Wayne, Indiana plant during the six months before and the six months after the date of manufacture of the tire in question. There are no tires common green to the tire in question.

## TRADE SECRETS OBJECTION

MNA objects to many of the discovery requests because they seek information and/or documents that are of a confidential, proprietary or commercially sensitive nature to MNA, exempt from discovery under notions of constitutional privacy and/or that may be covered by or be the subject of express or implied confidentiality, secrecy or nonpublication agreements or understandings. To the extent necessary, MNA objects to the discovery requests in that they seek the discovery of trade secret information and documents, including confidential research, development and technical information. MNA states that information and documents responsive to some of the discovery requests may have been withheld because these discovery requests seek privileged information and privileged documents that constitute the trade secrets of MNA. Disclosure of these trade secrets would result in substantial prejudice and harm to MNA. Therefore, MNA contends it is essential to MNA's operations that its work and documents remain confidential.

Texas law protects the disclosure of MNA's trade secrets. A trade secret may consist of any trade formula, pattern, device or compilation of information that is used in one's business and gives one an opportunity to obtain an advantage over competitors who do not know or use it.

4517897                                    4

Computer Assoc. Int'l, Inc. v. Altai, Inc., 918 S.W.2d 453, 453 (Tex. 1996) (citing Hyde Corp. v. Huffines, 314 S.W.2d 763, 776 (1958)).

MNA's confidential policies, research, development and technical information are valuable and crucial trade secrets of MNA that give it an advantage over its competitors in a highly competitive and secretive industry. Moreover, MNA makes reasonable efforts to maintain the secrecy of this information, the information is of substantial value to MNA, the information would be very valuable to MNA's competitors, and the information derives its value by virtue of the effort of its creation and lack of dissemination. Accordingly MNA believes such information constitutes a trade secret and should be protected from disclosure.

Unless otherwise stated in its responses, MNA is not withholding any privileged documents/information within the relevant scope. However, to the extent intervenors do not agree with the scope of MNA's discovery responses, MNA reserves the right to have its objections to scope ruled upon prior to expanding the scope of its responses and its search for responsive and/or privileged documents/information.

Subject to the foregoing, MNA hereby answers the individual requests as follows:

## RESPONSES TO REQUESTS FOR ADMISSION

REQUEST FOR ADMISSIONS NO. 1: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that on August 24, 2014, Robert Coleman was driving his 2001 Ford F-250 pickup eastbound on Highway 36 near County Road 112.

RESPONSE:

MNA admits that the Texas Department of Public Safety Fatality Report states that Robert Coleman was driving the Ford F-250 and was traveling eastbound on US-190 at the time of the accident.

4517897                                    5

REQUEST FOR ADMISSIONS NO. 2: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Robert Coleman is a resident of Spring, Texas, in Harris County.

RESPONSE:

Despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request.

REQUEST FOR ADMISSIONS NO. 3: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Robert Coleman was a resident of Spring, Texas, in Harris County on August 24, 2014.

RESPONSE:

Despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request.

REQUEST FOR ADMISSIONS NO. 4: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Mr. Coleman was traveling within the speed limit and within his lane when the tread detached from his left front tire on August 24, 2014.

RESPONSE:

Subject to and without waiving the following objections, MNA states that despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request. MNA further objects to this request on the grounds that it impermissibly calls for the premature disclosure of expert opinions and materials. Discovery regarding testifying experts is limited to a request for disclosure and depositions. Tex. R. Civ. Proc. 195.1.

REQUEST FOR ADMISSIONS NO. 5: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Mr. Coleman was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.

RESPONSE:

Subject to and without waiving the following objections, MNA states that despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to

4517897                                            6

admit or deny this request. MNA further objects to this request on the grounds that it impermissibly calls for the premature disclosure of expert opinions and materials. Discovery regarding testifying experts is limited to a request for disclosure and depositions. Tex. R. Civ. Proc. 195.1.

REQUEST FOR ADMISSIONS NO. 6: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Blayne Cook, a passenger in the pickup at the time of the crash, was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.

RESPONSE:

Subject to and without waiving the following objections, MNA states that despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request. MNA further objects to this request on the grounds that it impermissibly calls for the premature disclosure of expert opinions and materials. Discovery regarding testifying experts is limited to a request for disclosure and depositions. Tex. R. Civ. Proc. 195.1.

REQUEST FOR ADMISSIONS NO. 7: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Cameron Cook, a passenger in the pickup at the time of the crash, was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.

RESPONSE:

Subject to and without waiving the following objections, MNA states that despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request. MNA further objects to this request on the grounds that it impermissibly calls for the premature disclosure of expert opinions and materials. Discovery regarding testifying experts is limited to a request for disclosure and depositions. Tex. R. Civ. Proc. 195.1.

SuppR 192

REQUEST FOR ADMISSIONS NO. 8:  Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that Matthew Plum, a passenger in the pickup at the time of the crash, was wearing his seatbelt at the time of the crash he experienced on August 24, 2014.

RESPONSE:

Subject to and without waiving the following objections, MNA states that despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request.  MNA further objects to this request on the grounds that it impermissibly calls for the premature disclosure of expert opinions and materials.  Discovery regarding testifying experts is limited to a request for disclosure and depositions.  Tex. R. Civ. Proc. 195.1.

REQUEST FOR ADMISSIONS NO. 9:  Admit that all tires sold in the United States with DOT number BFW802110611 were placed in the stream of commerce by Michelin.

RESPONSE:

Admitted.

REQUEST FOR ADMISSIONS NO. 10:  Admit that all tires sold in the United States with DOT number BFW802110611 were designed by Michelin.

RESPONSE:

Admitted.

REQUEST FOR ADMISSIONS NO. 11:  Admit that all tires sold in the United States with DOT number BFW802110611 were made at Michelin's Fort Wayne tire plant.

RESPONSE:

Admitted.

SuppR 193

REQUEST FOR ADMISSIONS NO. 12: Admit that the designation "LT" in the size LT265/75R16 associated with the BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used on a light truck.

RESPONSE:

MNA denies this request as written. MNA admits that if a tire size begins with "LT" it is a light-truck metric size. MNA objects to this request as being vague and ambiguous in its use of the term "was foreseeably used".

REQUEST FOR ADMISSIONS NO. 13: Admit that the designation "Rugged Terrain" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used on rugged terrain.

RESPONSE:

Admitted.

REQUEST FOR ADMISSIONS NO. 14: Admit that the designation "T/A" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used for in situations where a traction advantage was required.

RESPONSE:

Denied. MNA objects to this request as being vague and ambiguous in its use of the term "situations where a traction advantage was required".

REQUEST FOR ADMISSIONS NO. 15: Admit that the designation "LRE" in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 indicates that the tire was foreseeably used for tasks requiring a heavy load range rating of E.

RESPONSE:

Denied. MNA objects to this request as being vague and ambiguous in its use of the term "was foreseeably used".

4517897   9

REQUEST FOR ADMISSIONS NO. 16: Admit that in accordance with the requirements of the National Traffic and Motor Vehicle Safety Act, Michelin has identified defects which relate to motor vehicle safety pursuant to NHTSA Recall Number 12T-019.

RESPONSE:

MNA objects to this request because it is overly broad and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. The tire in question was not at issue in NHTSA Recall Number 12T-019.

REQUEST FOR ADMISSIONS NO. 17: Admit that drivers who experience tread loss and/or rapid air loss resulting from tread belt separation" experience foreseen driving conditions that increase the risk of a vehicle crash.

RESPONSE:

Despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request at this time. The issue regarding the increased risk of a vehicle crash in this case is whether the alleged tread loss and/or rapid air loss in the tire in question should have caused a vehicle crash, which MNA denies, not whether a hypothetical tread loss and/or rapid air loss increases the risk of a vehicle crash in the abstract.

REQUEST FOR ADMISSIONS NO. 18: Admit that a defect that manifests in a tread separation is a defect which relates to motor vehicle safety.

RESPONSE:

Denied.

REQUEST FOR ADMISSIONS NO. 19: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the failed tire was cured during the first week of February in 2011.

RESPONSE:

MNA admits only that the tire in question was cured during the 6th week of 2011. Despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to further admit or deny this request at this time.

4517897                                    10

REQUEST FOR ADMISSIONS NO. 20: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the failed tire was assembled as a green tire as much as a week prior to the first week of February in 2011.

RESPONSE:

Despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request at this time.

REQUEST FOR ADMISSIONS NO. 21: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the components of the failed tire were created up to a week or more prior to assembly.

RESPONSE:

Despite a reasonable inquiry, the information known or easily obtainable is insufficient to enable MNA to admit or deny this request at this time.

REQUEST FOR ADMISSIONS NO. 22: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that it snowed in Fort Wayne, Indiana during the period beginning with the last week of January of 2011 and running through the end of the first week of February of 2011.

RESPONSE:

MNA admits that it does not have or maintain information indicating that it did or did not snow in Fort Wayne, Indiana during the last week of January of 2011 through the end of the first week of February 2011.

REQUEST FOR ADMISSIONS NO. 23: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that it rained in Fort Wayne, Indiana during the period beginning with the last week of January of 2011 and running through the end of the first week of February of 2011.

RESPONSE:

MNA admits that it does not have or maintain information indicating that it did or did not rain in Fort Wayne, Indiana during the last week of January of 2011 through the end of the first week of February 2011.

4517897                                          11

REQUEST FOR ADMISSIONS NO. 24: Admit that the tire building room at Michelin's Fort Wayne, Indiana tire plant is covered by a large flat roof.

RESPONSE:

Admitted.

REQUEST FOR ADMISSIONS NO. 25: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the roof on the Fort Wayne plant leaked when it rained in 2011.

RESPONSE:

MNA admits that at some point during 2011 the roof of the Fort Wayne plant leaked and was repaired. MNA further admits that it does not have or maintain information to determine the dates within the relevant scope that it rained in Fort Wayne, Indiana. To the extent this request seeks information outside the relevant scope, MNA objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 26: Admit Michelin has no knowledge, information, or belief formed after reasonable inquiry to dispute that the roof on the Fort Wayne plant leaked when it had melting snow on it in 2011.

RESPONSE:

MNA admits that at some point during 2011 the roof of the Fort Wayne plant leaked and was repaired. MNA further admits that it does not have or maintain information to determine the dates within the relevant scope that it snowed in Fort Wayne, Indiana. To the extent this request seeks information outside the relevant scope, MNA objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

4517897                                      12

REQUEST FOR ADMISSIONS NO. 27: Admit that according to information in Michelin's possession, Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed roof leaks.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 28: Admit that according to information in Michelin's possession, Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed puddled water.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 29: Admit that according to information in Michelin's possession, Michelin's employees and ex-employees working in the tire building and tire inspection rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the use of plastic sheeting to divert leaks.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not

4517897                                    13

reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 30: Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the use of rubber and rubber-coated components that had lost some of their tack prior to their use in the assembly of a green tire.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 31: Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the use of solvents in an attempt to restore the tack of rubber and rubber-coated components.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

4517897                                          14

REQUEST FOR ADMISSIONS NO. 32: Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the lax enforcement of standards to avoid misplacement and improper splicing of the steel belts.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 33: Admit that according to Michelin's employees and ex-employees working in the tire building and tire component preparation rooms at Michelin's Fort Wayne plant in 2011 eye-witnessed the lax enforcement of standards to avoid misplacement and improper splicing of rubber and rubber-coated components surround the steel belts.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 34: Admit that the quality control inspection process in the final finish department is Michelin's principal opportunity to identify defects in cured tires in order to scrap or repair those defective tires before they reach the consumer.

RESPONSE:

Denied.

4517897                                  15

REQUEST FOR ADMISSIONS NO. 35: Admit that according to Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 eye-witnessed the lax enforcement of standards.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 36: Admit that according to Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 eye-witnessed falsification of inspections.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

REQUEST FOR ADMISSIONS NO. 37: Admit that according to Michelin's employees and ex-employees working in the final finish room at Michelin's Fort Wayne, Indiana plant in 2011 eye-witnessed on-the-job sexual misconduct.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

4517897                                       16

REQUEST FOR ADMISSIONS NO. 38: Admit that Michelin has Aspect Classification documents which set forth some of the standards which Michelin has recognized.

RESPONSE:

Admitted. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 39: Admit that Michelin's Aspect Classification documents have annexes, glossaries, illustrations, photographs, and attachments with additional information and caveats pertaining to the standards which Michelin has recognized in the past.

RESPONSE:

MNA objects to the extent this request seeks or attempts to seek information that constitutes commercially sensitive, confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 40: Admit that Michelin has a Product Standards and Guidelines Manual for Required Tire Dimensional Tolerances which sets forth the standards which Michelin has recognized.

RESPONSE:

Denied.

4517897                                    17

REQUEST FOR ADMISSIONS NO. 41: Admit that Michelin has work procedures for the tire builders which set forth standards which Michelin has recognized.

RESPONSE:

MNA admits it has work procedures for tire builders. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 42: Admit that Michelin has training materials including videotapes and tests for the tire builders which set forth standards which Michelin has recognized.

RESPONSE:

MNA admits it has training materials for tire builders. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

SuppR 203

REQUEST FOR ADMISSIONS NO. 43: Admit that Michelin has work procedures for tire inspectors which set forth standards which Michelin has recognized.

RESPONSE:

MNA admits it has work procedures for tire inspectors. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 44: Admit that Michelin has training materials including videotapes and tests for tire inspectors which set forth standards which Michelin has recognized.

RESPONSE:

MNA admits it has training materials for tire inspectors. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

4517897                                    19

REQUEST FOR ADMISSIONS NO. 45: Admit that Michelin has reaction limits which set forth some of the standards which Michelin has recognized.

RESPONSE:

MNA admits it has green tire reaction limits in place at the Fort Wayne, Indiana plant. MNA objects to this request as being vague and ambiguous. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the plant, time period, components, and processes relevant to this action.

REQUEST FOR ADMISSIONS NO. 46: Admit that Michelin has product tolerance limits which set forth some of the standards which Michelin has recognized.

RESPONSE:

MNA admits it has tolerances in place at the Fort Wayne, Indiana plant. MNA objects to this request as being vague and ambiguous. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the plant, time period, components, and process relevant to this action.

SuppR 205

<u>REQUEST FOR ADMISSIONS NO. 47:</u> Admit that Michelin has possession of documents, testimony, and information which assert that quality control personnel falsified inspections at the Fort Wayne plant in 2011.

<u>RESPONSE:</u>

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

<u>REQUEST FOR ADMISSIONS NO. 48:</u> Admit that Michelin has possession of documents, testimony, and information which confirm on-the-job sexual misconduct at the Fort Wayne plant in 2011.

<u>RESPONSE:</u>

MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope. Furthermore, MNA objects to this request to the extent it seeks admission of the existence of information protected by the attorney-client and/or attorney work product privileges.

<u>REQUEST FOR ADMISSIONS NO. 49:</u> Admit that Michelin has possession of documents, testimony, and information which confirm that it has established a link between certain cured tire defects and their probable causes.

<u>RESPONSE:</u>

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not

SuppR 206

reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

MNA objects to this request as being vague and ambiguous. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the plant, time period, components, and process relevant to this action.

REQUEST FOR ADMISSIONS NO. 50: Admit that Michelin has possession of documents, testimony, and information which confirm that is has established a link between nonconformance to standards and tread separations.

RESPONSE:

Denied as stated. MNA objects to this request as improper because it asks MNA to admit or deny intervenors' characterization of deposition testimony contained in a document that speaks for itself. MNA further objects to this request because it is overly broad and not reasonably calculated to lead to the discovery of admissible evidence because it seeks admissions concerning deposition testimony from a case that involves a tire outside the relevant scope.

MNA objects to this request as being vague and ambiguous. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this

SuppR 207

request as being overly broad. Intervenors have failed to limit the scope of this request to the plant, time period, components, and process relevant to this action.

**REQUEST FOR ADMISSIONS NO. 51:** Admit that Michelin has work procedures for tire and tire component designers which set forth standards which Michelin has recognized.

**RESPONSE:**

MNA admits it has work procedures for tire designers. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

**REQUEST FOR ADMISSIONS NO. 52:** Admit that Michelin has training materials including videotapes for tire and tire component designers which set forth standards which Michelin has recognized.

**RESPONSE:**

MNA admits it has training materials for tire designers. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

4517897                                    23

REQUEST FOR ADMISSIONS NO. 53: Admit that Michelin has training materials including tests for tire and tire component designers which set forth standards which Michelin has recognized.

RESPONSE:

MNA admits it has training materials for tire designers. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 54: Admit that Michelin performs Failure Modes Analysis which address tread separation.

RESPONSE:

MNA admits that from time to time it conducts Failure Modes and Effects Analysis. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 55: Admit that Michelin performs Failure Effects Analysis which address tread separation.

RESPONSE:

MNA admits that from time to time it conducts Failure Modes and Effects Analysis. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 56: Admit that Michelin runs tire endurance tests and tread separation is not the typical failure mode for such test.

RESPONSE:

MNA admits it conducts tests of tires, including endurance tests. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA admits it conducts testing of tires. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

4517897                                           25

REQUEST FOR ADMISSIONS NO. 57:  Admit that Michelin runs tire endurance tests and tread separation is the typical failure mode for such test.

RESPONSE:

MNA admits it conducts tests of tires, including endurance tests.  MNA objects to this request as being vague and ambiguous.  MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.  MNA objects to this request as being overly broad.  Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 58:  Admit that Michelin runs tests with over deflected tires and tread separation is not the typical failure mode for such test tires.

RESPONSE:

MNA admits it conducts testing of tires, and from time to time tests tires in an overdeflected condition.  MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA.  Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information.  MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.  MNA objects to this request as being overly broad.  Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 59:  Admit that Michelin runs tests with over deflected tires and tread separation is the typical failure mode for such test tires.

RESPONSE:

MNA admits it conducts testing of tires, and from time to time tests tires in an overdeflected condition.  MNA objects to this request as being vague and ambiguous.  MNA objects to this request because it seeks information that is neither relevant to the subject matter of

4517897                                         26

this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 60: Admit that Michelin has adjustment documents with tire condition descriptions, condition lists, condition codes, and condition pictures and illustrations.

RESPONSE:

MNA admits that it that it has such documents applicable to tires in the relevant scope. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 61: Admit that Michelin has work procedures for tire adjustment center personnel which set forth standards which Michelin has recognized.

RESPONSE:

MNA admits that it has work procedures for tire adjustment center personnel. MNA objects to the extent this request seeks or attempts to seek trade secret, proprietary, or otherwise commercially confidential business information of MNA. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. MNA objects to this request because it seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence. MNA objects to this

4517897                                27

request as being overly broad. Intervenors have failed to limit the scope of this request to the time period relevant to this action.

REQUEST FOR ADMISSIONS NO. 62: Admit that on or before September 16, 2014, Michelin became aware of the potential for litigation concerning an August 24, 2014, crash reported to involve an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT No. BFW802110611 mounted on Robert Coleman's pickup.

RESPONSE:

MNA states that it received notice of the accident on or before September 16, 2014 and reasonably anticipated litigation on that date.

REQUEST FOR ADMISSIONS NO. 63: Admit that by September 16, 2014, Michelin could reasonably foresee litigation concerning an LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 mounted on Robert Coleman's pickup which crashed on August 24, 2014.

RESPONSE:

MNA states that it received notice of the accident on or before September 16, 2014 and reasonably anticipated litigation on that date.

REQUEST FOR ADMISSIONS NO. 64: Admit that on or before September 16, 2014, Michelin became aware of Robert Coleman's notice of anticipated litigation and request that Michelin preserve the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 for evidentiary purposes in that anticipated litigation.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in

4517897                                    28

question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 65: Admit that Michelin has made no efforts to preserve the condition of tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or

4517897 29

not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 66: Admit that Michelin has altered the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

SuppR 215

REQUEST FOR ADMISSIONS NO. 67: Admit that Michelin has made no efforts to document alterations to the tire building machines used to build 16 inch light truck tires at the Fort Wayne plant in 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 68: Admit that Michelin has made no efforts to preserve the condition of tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim

4517897                                    31

involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 69: Admit that Michelin has altered the tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in

4517897          32

SuppR 217

question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 70: Admit that Michelin has made no efforts to document alterations to the tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition"

SuppR 218

for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 71: Admit that Michelin has made no efforts to preserve the condition of the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 72: Admit that Michelin has altered the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires

4517897                                34

bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 73: Admit that Michelin has made no efforts to document alterations to the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or

4517897                                          35

SuppR 220

intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 74: Admit that no representative of Robert Coleman was present when Michelin altered the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

4517897                                    36

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 75: Admit that, in the time from September 16 of 2014 to the present, the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 have been altered by a person or persons whose identity has not been disclosed to Robert Coleman.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is

SuppR 222

overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 76: Admit that Michelin has made no efforts to preserve the condition of the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

SuppR 223

REQUEST FOR ADMISSIONS NO. 77: Admit that Michelin has altered the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 78: Admit that Michelin has made no efforts to document alterations to the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim

4517897                                        39

involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 79: Admit that no representative of Robert Coleman was present when Michelin altered the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in

4517897                                    40

question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 80: Admit that no representative of Robert Coleman was invited to attend when Michelin altered the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT 13FW802110611 at the Fort Wayne plant in the sixth week of 2011 in the time that has passed since September 16, 2014.

RESPONSE:

Admitted. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition"

4517897                                          41

for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 81: Admit that, in the time from September 16 of 2014 to the present, the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT 13FW802110611 at the Fort Wayne plant in the sixth week of 2011 have been altered by a person or persons whose identity has not been disclosed to Robert Coleman.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

4517897                                         42

SuppR 227

REQUEST FOR ADMISSIONS NO. 82: Admit Michelin currently has possession of the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611 at the Fort Wayne plant in the sixth week of 2011.

RESPONSE:

Admitted. MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

REQUEST FOR ADMISSIONS NO. 83: Admit Michelin currently has possession of the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFWS02110611 at the Fort Wayne plant in the sixth week of 2011.

RESPONSE:

Admitted. MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

SuppR 228

REQUEST FOR ADMISSIONS NO. 84: Admit that, during time period from February 2011 to the present, persons who are not employees of Michelin North America, Inc. have had access to Michelin's Fort Wayne plant which provided those persons an opportunity to see the first stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

SuppR 229

REQUEST FOR ADMISSIONS NO. 85: Admit that, during time period from February 2011 to the present, persons who are not employees of Michelin North America, Inc. have had access to Michelin's Fort Wayne plant which provided those persons an opportunity to see the second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

4517897                                    45

REQUEST FOR ADMISSIONS NO. 86: Admit that, during time period from February 2011 to the present, persons who are not employees of Michelin North America, Inc. have had access to Michelin's Fort Wayne plant which provided those persons an opportunity to see the final finish inspection process on the same inspection line as used to inspect LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires bearing DOT BFW802110611.

RESPONSE:

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

4517897                                      46

<u>REQUEST FOR ADMISSIONS NO. 87:</u>  Admit that in September of 2014 Robert Coleman proposed to Michelin an agreement by which Michelin's access to the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 mounted on Robert Coleman's pickup at the time of the crash should be comparable to Robert Coleman's access to Michelin's tire building machines used to build LT 265/75R16 BF Goodrich Rugged Terrain T/A tires in February of 2001 at Michelin's Fort Wayne plant.

<u>RESPONSE:</u>

MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

4517897                                          47

REQUEST FOR ADMISSIONS NO. 88: Admit that Michelin refuses to allow Robert Coleman to inspect the first and second stage tire building machines used to build LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire bearing DOT BFW802110611 in the sixth week of 2001 at Michelin's Fort Wayne plant regardless of the confidentiality and regardless of the limitations on access that Robert Coleman will agree to.

RESPONSE:

MNA objects to any inspection of any portion of the Fort Wayne plant by counsel for intervenors, based upon grounds set forth in response to intervenors' Request for Entry Upon Land, below. Furthermore, MNA denies this request as written. MNA acknowledges that, on or around September 16, 2014, it received a letter from Coleman's counsel providing notice of a potential claim involving the tire in question. However, due to the refusal of counsel for plaintiffs and/or intervenors to provide the tire in question to MNA for inspection under reasonable conditions, MNA was until recently unable to determine which tire building machines were used to build the tire in question. Subsequent to identifying the tire building machines used to build the tire in question, MNA has taken appropriate steps to document the condition of, and any changes to, the tire building machines.

MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case. MNA further objects to this request because it is overly broad and seeks information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

## RESPONSE TO INTERROGATORY

INTERROGATORY NO. 1: Please identify any entity which may be designated as "a responsible third party" as that term is used in section 33.004 of the Texas Civil Practice and Remedies Code by listing (a) the entities' name or names, (b) the entities' addresses and

SuppR 233

telephone numbers and other contact information, (c) the entities' registered agents for service if any, (d) the county of the entities' principal office in this state if any, (e) the states that the entities are believed to be "citizens" of as that word is used in 28 United States Code section 1332, (f) the duties which such entities are believed to have breached, (g) any acts and omissions and product defects which are believed to have breached those duties, and (h) the contentions about the entities which would confirm that the designation of those entities as a responsible third party would not be groundless to the best of the designating counsel's "knowledge, information, and belief formed after reasonable inquiry" as that phrase is used in Texas Rule of Civil Procedure 13.

RESPONSE:

Subject to and without waiving the following objections, MNA states that discovery is in its preliminary stages and it will supplement this response in accordance with the Texas Rules of Civil Procedure. In addition, MNA refers to its response to requests for disclosure and list of persons with knowledge of relevant facts, and any supplements thereto.

### RESPONSE TO REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1: Please produce all written or otherwise recorded statements (this includes audio-recordings, video-recordings, written statements, electronic communications, complaints, affidavits, depositions, and other testimony as well as another "witness statement" as that term is used in Texas Rule of Civil Procedure 192.3(h)) of any Michelin employee or ex-employee or agents or ex-agent who worked for or on behalf of Michelin at the Fort Wayne plant in 2011 which address any of the following issues: (a) leaks in the roof over the rooms where tire building or tire inspection occurred, (b) puddles on the floor in the rooms where tire building or tire inspection occurred, (c) the use of plastic sheeting to divert leaks in the roof over the rooms where tire building or tire inspection occurred, (d) allegations of sexual misconduct alleged to involve personnel whose job responsibilities included tire building or tire inspecting, (e) sexual harassment or discrimination claims of personnel whose job responsibilities included tire building or tire inspecting, (f) the falsification of inspections on inspection documentation, (g) allegations of insufficient time for employees to perform quality tire building or quality tire inspecting, (h) the use of out of specification tire components in the tire assembly processes, (i) the use of rubber or rubber-coated tire components which had lost some of their tackiness before being implemented in the tire assembly process, (j) the use of solvent in an attempt to restore tackiness to rubber or rubber-coated tire components which had lost some of their tackiness before being implemented in the tire assembly process, (k) trapped air in tires during the tire assembly or curing or inspection processes, (l) trapped moisture in tires during the tire assembly or curing or inspection processes, (m) voids in tires during the tire assembly or curing or inspection processes, (n) blows in tires during the tire assembly or curing or inspection processes, (o) separations between components in tires during the tire assembly or curing or inspection processes, (p) contamination in tires during the tire assembly or curing or inspection processes, (q) misplacement of tire components as noticed in the tire assembly or curing or inspection processes, (r) improper splicing of tire components as noticed in the tire

4517897                                    49

SuppR 234

assembly or curing or inspection processes, and (s) the failure of the cured tire inspection process to detect defects before tires were sold to customers.

RESPONSE:

MNA objects to this request because  have not identified the specific design or manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's design and manufacturing process, whether or not related to  claims in this case.

MNA objects to this request because it is overly broad, unduly burdensome, and seeks documents that are neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.  MNA further objects to the extent this request seeks or attempts to seek information that constitutes commercially sensitive, confidential business information of MNA.  Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information.

REQUEST FOR ENTRY UPON LAND:  Pursuant to Texas Rule of Civil Procedure 196.7, Robert Coleman requests to enter upon property; specifically, entry upon Michelin's tire plant in Woodburn, Indiana (located near Fort Wayne, Indiana; this plant is hereafter referred to as the "Fort Wayne plant"). In order to obtain substantive evidence of the manufacturing processes most similar to the first and second stage tire manufacturing processes used to assemble the failed LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tire at issue and to obtain substantive evidence of the proposed safer alternative design, Robert Coleman requests to visually inspect and videographically document the tire building machines at the plant subject to the following protocol and limitations:

Robert Coleman requests one hour of limited access to particular tire building machines at Continental's Mt. Vernon, Illinois facility at a mutually agreed time and date within 60 days from the date of this request. Robert Coleman requests that his only representatives allowed to attend the observation should be his attorneys, his tire failure analysis experts, and a videographer selected by Robert Coleman. Robert Coleman proposes that all who attend the observation should sign whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts. Robert Coleman proposes that each side should bear its own costs. Robert Coleman proposes that the observation should include the machine or machines used to

4517897

50

place the innerliner on the tire building dram and to assemble the belts and nylon reinforcement into the pre-cured tire (sometimes referred to as first and second stage tire building machines) on which LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011 at Michelin's Fort Wayne plant (or, in the alternative, observation of the most similar tire building machines to be identified by Michelin if the specific tire building machines on which LT265/75R16 BF Goodrich Rugged Terrain T/A. LRE tires were built in the 6th week of 2011 cannot be identified). Robert Coleman proposes that the observation should include visually inspecting and videotaping the machines while they are in use building light truck car tires, and the scope of the observation should not include any sampling or destructive testing and should include nothing more than a visual observation — including recording by videotape — and be limited to one hour of observation and videotaping the machines while they are in use. Robert Coleman proposes that the observation should include:

(a)     15 minutes of observation of the first stage tire building process conducted in a manner as near as is practical to the first stage tire building processes implemented in building LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(b)     15 minutes of observation of the second stage tire building process conducted in a manner as near as is practical to the second stage tire building processes implemented in LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant,

(c)     15 minutes of observation of the second stage tire building process where a jointless nylon strip spirally wound over the belts in at least two layers and covering a greater portion of the belt package as compared to the portion of the belt package covered by nylon in the LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 is being applied to a light truck car tire as similar as practical to LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires built in the 6th week of 2011 at Michelin's Fort Wayne plant, and

(d)     15 minutes of observation of the second stage tire building process where Filament at Zero is being applied to a light truck tire car tire as similar as practical to a LT265/75R16 BF Goodrich Rugged Terrain T/A LRE tires were built in the 6th week of 2011.

Robert Coleman proposes that the videotaping should occur while these machines are in normal use. Robert Coleman proposes that his counsel, his tire failure experts, and his videographer who would attend the observation should be identified within seven days of when the inspection protocol is agreed or ordered by the court and should present photographic identification in the form of a driver's license or similar government issues identification before entering the plant, and that all such attendees should wear visitor badges the entire time they are in the plant (if Michelin requests), should be accompanied and escorted by Michelin's personnel at all times they are in the plant (if Michelin requests), should wear hardhats and safety glasses and ear protection and steel toed boots during the observation (if Michelin requests), should not interrupt or interfere with the equipment or the normal operations of the plant or plant

4517897                                      51

employees, and should not attempt to speak with any plant personnel except for their escorts. Robert Coleman proposes that his representatives should not be allowed to videotape any other area of the plant except the tire building machines being observed and should not bring recording or photographing or videotaping devices other than the videographer's equipment to the observation. Robert Coleman proposes that Michelin should be allowed to take whatever steps it deems appropriate to limit access so that access includes only access to the particular machines and processes to be videotaped as set out above. Robert Coleman proposes that Michelin should be allowed to conduct its own videotaping of the inspection. Robert Coleman proposes that Michelin should be allowed to all videotapes should be copied and provided to the other side within 10 days after the observation of the tire building machines. Robert Coleman proposes that the videotapes as well as any documentation of the equipment and processes recorded during the inspection should be governed by whatever confidentiality requirements that Michelin should request provided that such confidentiality is consistent with Texas law and the information obtained can be had and videographically recorded for use in this case by Robert Coleman's counsel and his tire failure analysis experts.

In the alternative, if Michelin would prefer, Robert Coleman would agree to protocols based on the attached order. See Exhibit A and Exhibit B.

If Michelin refuses to allow the entry upon land as requested above, Robert Coleman requests that Michelin preserve and document the evidence by videotaping the same machines and the same processes without Robert Coleman or his representatives being present and further requests that Michelin file such videotapes under seal with the trial court as permitted pursuant Texas Rule of Civil Procedure 76a.

RESPONSE TO REQUEST FOR ENTRY UPON LAND:

MNA objects to the extent this request because it seeks information that constitutes the highly confidential and closely guarded trade secrets of MNA, which should not be divulged except under extraordinary circumstances. Intervenors have not demonstrated any need for these trade secrets. Pursuant to Rule 507 of the Texas Rules of Evidence, MNA asserts trade secret protection for such information. Furthermore, the requested inspection is overly broad, would impose an undue burden on MNA, and is not reasonably calculated to lead to the discovery of admissible evidence. MNA's trade secrets within the Fort Wayne, Indiana plant today have no bearing as to whether MNA manufactured a defective tire in 2011, and any information from

4517897                                              52

observing this machinery in 2015 would be both confusing and misleading if presented to a jury in this case.

Finally, MNA objects to this request because intervenors have not identified the specific manufacturing process that produced the defect alleged to be present in the tire in question. Accordingly, this request is nothing more than an impermissible "fishing expedition" for information generally related to every aspect of MNA's manufacturing process, whether or not related to intervenors' claims in this case.

4517897                              53

CAUSE NO. 2014-57952

KOLLYE KILPATRICK, Individually    §
as Heir at Law and Representative of the    §
Estate of BEVERLY ANN    §
KILPATRICK, Deceased; ERIC    §
KILPATRICK; and KAREN    §
KILPATRICK,    §
   §
       Plaintiffs,    §
   §
AND    §    **IN THE DISTRICT COURT OF**
   §
   §
ROBERT DWAYNE COLEMAN,    §
Individually, and KIMBERLY    §    **HARRIS COUNTY, TEXAS**
COLEMAN as Next Friend of    §
BLAYNE MICHAEL COOK,    §
CAMERON BAILEY COOK, minors,    §
Intervening Plaintiffs and Cross-    §    **152ND JUDICIAL DISTRICT**
Claimants,    §
   §
   §
vs.    §
   §
   §
MICHELIN NORTH AMERICA, INC.,    §
BF GOODRICH, ROBERT DWAYNE    §
COLEMAN,   

       Defendants.

**VERIFICATION OF MICHELIN NORTH AMERICA, INC.'S RESPONSES AND OBJECTIONS TO INTERVENING COLEMANS' FIRST REQUESTS FOR ADMISSION, INTERROGATORY, AND REQUESTS FOR PRODUCTION**

I, Traci Gudger, certify and declare that I have read Defendant Michelin North America, Inc.'s Responses and Objections to Intervening Colemans' First Requests for Admission, Interrogatory, and Requests for Production (the "Responses") and know its contents. I am authorized to make this verification for and on behalf of Michelin North America, Inc. ("MNA") and I make this verification for that reason. The Responses were prepared with the assistance and advice of employees of, and counsel for, MNA, upon whose assistance and advice I have

relied. The Responses, subject to inadvertent or undiscovered error, are based on and therefore necessarily limited by the records and information still in existence, presently recollected, and thus far discovered in the course of preparation of these responses. MNA reserves the right to change or supplement these responses, or to apply for relief to permit insertion of unintentionally omitted matters. Subject to the limitations set forth herein, I am informed and believe, and on that ground allege, that the matters stated in the Responses are true to the best of my knowledge, information and belief.

MICHELIN NORTH AMERICA, INC.

Traci Gudger

Dated January 15, 2015

SWORN TO AND SUBSCRIBED
Before Me This 15th Day Of January, 2015.

Notary Public

My Commission Expires: 11-16-17

- 2 -



FILE COPY

#9806
JBG
JS

AUSTIN BEAUMONT HOUSTON
www.germer.com

**KATHRYN M. LINDSAY**
PARALEGAL

**direct: (512) 482-3532**
klindsay@germer-austin.com

January 16, 2015

**VIA CERTIFIED MAIL, RRR**

John Gsanger
The Edwards Law Firm
802 N. Carancahua, Ste. 1400
Frost Bank Plaza
Corpus Christi, Texas 78401

Re: *Cause No. 2014-57952; Kollye Kilpatrick, Individually as Heir at Law and Representative of the Estate of Beverly Ann Kilpatrick, deceased; Eric Kilpatrick; and Karen Kilpatrick v. Michelin North America, Inc. and Robert Dwayne Coleman; In the 152nd Judicial District, Harris County, Texas.*

Dear Counsel:

Enclosed please find Michelin North America, Inc.'s Responses and Objections to Intervening Colemans' First Requests for Admission, Interrogatory, and Requests for Production to Defendant, Michelin North America, Inc.

Yours very truly,

Kathryn M. Lindsay
Paralegal

KML:lq
Enclosure

cc.: (w/encl.) (via regular mail)
Robert E. Ammons
Michael E. Bourland
Timothy D. "Tim" Riley

**GERMER BEAMAN & BROWN PLLC**
301 CONGRESS AVE, SUITE 1700 AUSTIN, TX 78701
PHONE: 512.472.0288 • FAX: 512.472.0721

JAN 2 0 2015

4517935

THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**

7014 1820 0001 3477 5824



U.S. POSTAGE >> PITNEY BOWES

ZIP 78701 $ 008.87
02 1W
0001365902 JAN 16 2015

# GERMER

ATTORNEYS AT LAW

## GERMER BEAMAN & BROWN PLLC

301 Congress Avenue, Suite 1700
Austin, Texas 78701

#86973

JAN 2 0 2015

John Gsanger
The Edwards Law Firm
802 N. Carancahua, Ste. 1400
Frost Bank Plaza
Corpus Christi, Texas 78401